UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Douglas A. Kelley, *in his capacity as the Trustee of the BMO Litigation Trust*,<br><br>Plaintiff,<br><br>v.<br><br>BMO Harris Bank N.A., *as successor to M&I Marshall and Ilsley Bank*,<br><br>Defendant. | Case No. 19-cv-1756 (WMW)<br><br>**ORDER** |

---

This matter is before the Court on Defendant BMO Harris Bank N.A.'s (BMO Harris) motion for a case-management conference and order. (Dkt. 89.) Plaintiff Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust (hereinafter, Kelley or the Trustee), opposes BMO Harris's motion. For the reasons addressed below, BMO Harris's motion is granted in part and denied in part.

## BACKGROUND

This bankruptcy matter arises from a Ponzi scheme orchestrated by Thomas J. Petters and his associates between 1994 and 2008. Petters was the owner, director, and CEO of Petters Company, Inc. (PCI). During the course of the Ponzi scheme, PCI obtained billions of dollars from investors through fraud, false pretenses, and misrepresentations about PCI's purported business. Billions of dollars were wired into and out of PCI's depository account at National City Bank, which was acquired by M&I Marshall and Ilsley Bank (M&I) in July 2001. BMO Harris is the successor to

M&I, and the claims at issue in this bankruptcy matter pertain to M&I's handling of PCI's account.

Kelley was appointed as the equity receiver for PCI on October 6, 2008. *See In re Petters Co.*, 401 B.R. 391, 398 (D. Minn. Bankr. 2009). Kelley filed for Chapter 11 bankruptcy relief on behalf of PCI and was appointed as the Chapter 11 Trustee. *Id.* at 414. The bankruptcy court confirmed PCI's Second Amended Plan of Chapter 11 Liquidation, which transferred certain assets, including the causes of action at issue here, to the BMO Litigation Trust.

The Trustee subsequently filed a complaint alleging that BMO Harris was complicit in the Ponzi scheme through its dealings with Petters, PCI, and PCI's account. The complaint alleges that BMO Harris failed to respond to irregularities as required by banking regulations that, together with other acts and omissions, legitimized and facilitated the Ponzi scheme. The bankruptcy court granted in part and denied in part BMO Harris's motion to dismiss on February 24, 2017. *In re Petters Co.*, 565 B.R. 154 (D. Minn. Bankr. 2017). Four claims remain: Count I alleges that BMO Harris violated the Minnesota Uniform Fiduciaries Act, Count II alleges that BMO Harris breached fiduciary duties it owed to PCI, Count III alleges that BMO Harris aided and abetted fraud against PCI, and Count IV alleges that BMO Harris aided and abetted the breach of fiduciary duties owed to PCI. *See id.*

Fact discovery ended in August 2018. BMO Harris moved for summary judgment on the Trustee's remaining four claims, arguing that the Trustee lacked standing and that

BMO Harris's *in pari delicto* defense precludes the Trustee from recovery. The bankruptcy court denied BMO Harris's motion for summary judgment on both grounds in a June 27, 2019 order. On July 2, 2019, the bankruptcy court transferred this matter to this Court for a jury trial.[1]

Subsequently, BMO Harris moved for leave to file an interlocutory appeal of the bankruptcy court's summary judgment order, which this Court denied in a March 13, 2020 Order. In doing so, this Court rejected BMO Harris's contention that the bankruptcy court improperly recharacterized creditor losses as harm to PCI. The Court observed that, under Minnesota law, when a corporation is unable to repay creditors because the corporation's assets have been fraudulently depleted, it is the corporation—not each individual creditor—that is directly harmed, and the legal claim belongs to the bankruptcy estate. *See In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1006 (8th Cir. 2007); *accord Greenpond S., LLC v. Gen. Elec. Cap. Corp.*, 886 N.W.2d 649, 657 (Minn. Ct. App. 2016) (observing that "the harm sustained by the Petters entities as a result of fraudulent withdrawals from their accounts of other lenders' funds was its insolvency and inability to repay its creditors"). BMO Harris sought leave to file a motion for reconsideration of this Court's decision, which the Court denied in April 2020.

---

[1] *See* Bankr. D. Minn. LR 5011-3 (providing that the bankruptcy court must transfer to the district court "any proceeding in which the court has determined that there is a right to trial by jury of the issues for which a jury trial has been timely demanded, and the parties have not consented to the bankruptcy judge conducting the jury trial").

The jury trial in this matter has been delayed multiple times as a result of the COVID-19 pandemic and the prioritization of criminal jury trials.[2] Currently, the Court has scheduled the jury trial in the matter to begin in October 2022. In anticipation of trial, BMO Harris filed the pending motion for a case-management conference and order. The Trustee opposes BMO Harris's motion.

## ANALYSIS

In any action, a district court may order the attorneys to appear for one or more pretrial conferences for purposes such as: "(1) expediting disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities; (4) improving the quality of the trial through more thorough preparation; and (5) facilitating settlement." Fed. R. Civ. P. 16(a). Under this District's Local Rules, a district court "may schedule a case-management conference at any time if the complexity of the case or other factors warrant such a conference." LR 16.4(a). In addition, a "party may request that a case-management conference be scheduled." LR 16.4(b). After a case-management conference, a district court may issue a case-management order.

---

[2]  Throughout most of 2020 and 2021, jury trials were suspended or strictly limited by the District of Minnesota's General Orders and COVID-19 protocols. Among other limitations, these General Orders and COVID-19 protocols permitted only one jury trial in each courthouse at any given time during most of 2020 and 2021. The Trustee estimates that this case can be fully tried within two and a half weeks, whereas BMO Harris estimates that the trial in this case will require six to eight weeks. And a trial in this matter likely will involve numerous witnesses and attorneys. As such, the nature of this case has impacted the Court's ability to schedule a jury trial that can be safely conducted in light of the pandemic.

4

LR 16.4(d). Whether to convene a case-management conference, however, is left to the discretion of the district court. LR 16.4, 1996 Advisory Committee's Note.

Here, BMO Harris requests a case-management conference and order to address three issues in advance of trial: (1) BMO Harris's contention that this Court must conduct a *de novo* review of the spoliation sanctions imposed by the bankruptcy court, including an evidentiary hearing; (2) BMO Harris's request to re-open fact discovery; and (3) setting deadlines for pretrial motions, including motions to exclude expert testimony. Because the parties have thoroughly addressed these matters in numerous written submissions, these issues can be resolved without convening a case-management conference. The Court addresses each issue in turn.

## I.     Review of Spoliation Sanctions

BMO Harris first contends that this Court must conduct a *de novo* review of the spoliation sanctions imposed by the bankruptcy court, including an evidentiary hearing. The Trustee counters that neither *de novo* review nor an evidentiary hearing is necessary.

In a July 1, 2019 order, the bankruptcy court found that BMO Harris intentionally destroyed and failed to preserve email backup tapes containing electronically stored information from before March 2005, and that BMO Harris did so in bad faith with the intent to deprive the Trustee of the use of this evidence. The bankruptcy court also found that BMO Harris's actions occurred after a duty to preserve relevant evidence had arisen and that the lost or destroyed evidence cannot be restored or replaced through additional discovery. Based on these findings, the bankruptcy court concluded that sanctions

5

against BMO Harris are warranted under Rules 37(e)(1) and 37(e)(2) of the Federal Rules of Civil Procedure. Specifically, the bankruptcy court granted the Trustee's request for three remedial sanctions: (1) requiring an adverse inference instruction at trial advising the jury that BMO Harris intentionally destroyed evidence that it knew was harmful, (2) permitting the Trustee to present evidence to the jury about BMO Harris's destruction of evidence, and (3) prohibiting BMO Harris from objecting to the introduction of any pre-March 2005 emails or documents produced from third parties. BMO Harris has appealed and objected to the bankruptcy court's order imposing these spoliation sanctions, and that issue remains under advisement with this Court.

BMO Harris contends that, in addition to the written submissions currently under advisement with the Court, a pretrial evidentiary hearing is necessary because this Court must review *de novo* the factual findings underlying the bankruptcy court's imposition of spoliation sanctions. According to BMO Harris, the bankruptcy court lacked authority to impose such sanctions and could only *recommend* the imposition of such sanctions, subject to this Court's *de novo* review.

Under Rule 37, Fed. R. Civ. P., federal courts have the authority to impose sanctions, including an adverse inference instruction, if a party fails to take reasonable steps to preserve electronically stored information that should have been preserved during or in anticipation of litigation and the information cannot be replaced through additional discovery. Fed. R. Civ. P. 37(e). This authority extends to bankruptcy court adversary proceedings. Fed. R. Bankr. P. 7037 (providing that Rule 37, Fed. R. Civ. P., "applies in

6

adversary proceedings" in bankruptcy court).  Federal courts also have inherent authority to impose sanctions against a party when that party destroys evidence that it knew or should have known is relevant to potential litigation and, in doing so, prejudices the opposing party.  *See Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993).  On appeal, such decisions are reviewed for an abuse of discretion both as to the sanction imposed *and* as to the factual basis for the sanction.  *Id.*

In bankruptcy proceedings, a district court typically sits as an appellate court and reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error.  *First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1136 (8th Cir. 2019); *In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005).  And a bankruptcy court's discovery orders and imposition of sanctions for discovery violations typically are reviewed for an abuse of discretion.  *Ritchie Special Credit Invs., Ltd. v. U.S. Tr.*, 620 F.3d 847, 853 (8th Cir. 2010); *In re O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003); *In re Spears*, 265 B.R. 219, 222 (W.D. Mo. 2001).  A "bankruptcy court abuses its discretion when its decision relies upon a clearly erroneous finding of fact or fails to apply the proper legal standard." *Ritchie*, 620 F.3d at 853.  The foregoing legal authorities demonstrate that *de novo* review of the bankruptcy court's spoliation sanctions in this case is unwarranted.  Rather, the bankruptcy court's spoliation sanctions are to be reviewed for an abuse of discretion.

BMO Harris seeks to avoid this conclusion by arguing that the bankruptcy court lacked authority to enter a final judgment or conduct a jury trial in this matter.  For this reason, BMO Harris contends, the bankruptcy court lacked authority to impose sanctions

that will impact the administration of trial. But BMO Harris cites no legal authority to support this argument.[3] It is true that matters of trial administration typically are within the authority and discretion of the court conducting trial. *See Blackorby v. BNSF Ry. Co.*, 849 F.3d 716, 720 (8th Cir. 2017). But the fact that this Court will have authority and discretion over the trial in this case does not establish that the bankruptcy court lacked the authority to impose discovery sanctions that will impact trial or that such sanctions necessarily are subject to *de novo* review.

Bankruptcy judges, like magistrate judges, often lack authority to issue final judgments or conduct jury trials. *See generally* 28 U.S.C. § 157 (governing scope of bankruptcy judge authority, including limited authority to conduct jury trials); 28 U.S.C. § 636 (governing scope of magistrate judge authority); Fed. R. Civ. P. 73 (providing limited authority for magistrate judges to conduct civil trials). Nonetheless, bankruptcy judges and magistrate judges routinely are authorized to oversee discovery and other pretrial matters. In the magistrate judge context, this authority includes deciding whether

---

[3]     BMO Harris relies on inapposite legal authority. In *In re Black Diamond Mining Co.*, the district court had previously referred the case to the bankruptcy court, but the bankruptcy court could not consider "petitioner's entire [forthcoming] spoliation motion *under the terms of this Court's referral*" order. *See* No. 13-145-ART, 2014 WL 549202, at *2 (E.D. Ky. Feb. 11, 2014) (emphasis added). As such, the district court granted a motion to partially withdraw the reference to the bankruptcy court and, in doing so, assumed authority over the forthcoming motion for spoliation sanctions. *See id.* That decision was unique to the circumstances presented in that case, including the scope of the referral order in that case. Those circumstances are not present here. The decision in *Black Diamond* demonstrates that the district court *in that case* reserved the issue of trial-related spoliation sanctions and later decided to partially withdraw the reference to the bankruptcy court as to that issue. But *Black Diamond* does *not* broadly establish that bankruptcy courts lack authority to impose discovery sanctions. As addressed herein, bankruptcy courts clearly have such authority.

to impose discovery sanctions that might impact trial. *See, e.g.*, *Hall v. Ramsey County*, 801 F.3d 912, 915 n.2 (8th Cir. 2015) (observing that the "magistrate judge issued an adverse inference order for the destruction of . . . video footage"); *Rosati v. Pine County*, 460 F. Supp. 3d 846, 857 (D. Minn. 2020) (observing that the magistrate judge decided whether to impose adverse inference discovery sanction); *Keller v. Pepsi Bottling Grp., Inc.*, No. 07-1473 (MJD/AJB), 2007 WL 9735622, at *4–6 (D. Minn. Aug. 27, 2007) (motion for adverse inference discovery sanction decided by magistrate judge). Here, the bankruptcy court identified similar examples in the bankruptcy context. *See, e.g.*, *In re Correra*, 589 B.R. 76, 135–37 (Bank. N.D. Tex. Aug. 21, 2018) (ordering production of documents or a showing of cause as to why an adverse inference sanction is not warranted); *In re Visicon S'holders Tr.*, 478 B.R. 292, 309 (Bankr. S.D. Ohio 2012) (drawing adverse inference against party for discovery violation); *In re Krause*, 367 B.R. 740, 771–72, 777 (Bankr. D. Kan. 2007) (considering an adverse inference sanction for spoliation but instead ordering partial default judgment); *In re Biocoastal Corp.*, 149 B.R. 212, 214 (Bankr. M.D. Fla. 1992) (observing that "failure of a party to provide evidence . . . peculiarly available to that party supports the inference that the truth would be damaging to the party"). Contrary to BMO Harris's arguments, the bankruptcy court had the authority to order spoliation sanctions even if those sanctions will impact trial.

In addition, bankruptcy judges and magistrate judges typically are afforded substantial deference as to discovery-related decisions—including the imposition of discovery sanctions—because those judges are most familiar with the pretrial

proceedings and the pretrial conduct of counsel. *See, e.g.*, *Meyer v. U.S. Bank Nat'l Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015) (observing that, when reviewing a sanctions determination, "substantial deference" is afforded to the judge who has "familiarity with the case and counsel involved"); *In re Young*, 789 F.3d 872, 882 (8th Cir. 2015) (observing that, when reviewing a bankruptcy court's imposition of sanctions, "deference should be accorded to the determinations and findings of courts on the front lines of litigation" (internal quotation marks omitted)); *Wright v. Sargent*, 869 F.2d 1175, 1176 & n.4 (8th Cir. 1989) (reviewing magistrate judge's imposition of dispositive sanction for abuse of discretion and observing that the magistrate judge's findings and credibility determinations are entitled to substantial deference). A bankruptcy court's imposition of sanctions ordinarily is reviewed for an abuse of discretion so as to give deference to the determination of the judge who is "best acquainted" with counsel's litigation practices and "best situated to determine when a sanction is warranted." *In re Yehud-Monosson USA, Inc.*, 472 B.R. 795, 807 (D. Minn. 2012) (internal quotation marks omitted). This abuse-of-discretion standard of review contradicts BMO Harris's contention that this Court must review the bankruptcy court's imposition of sanctions *de novo*.

Notably, an adverse inference instruction is a non-dispositive sanction, as courts in this District and elsewhere have recognized. *See, e.g.*, *Ragan v. Stafford*, No. 4:16-cv-4097, 2017 WL 4764620, at *5 (W.D. Ark. Oct. 20, 2017); *ADS Holdings, Inc. v. Fed. Ins. Co.*, No. 06-3715 ADM/AJB, 2008 WL 2042624, at *3 (D. Minn. May 13, 2008). Such non-dispositive decisions are not subject to *de novo* review, nor is the authority to

impose such sanctions reserved solely for the district court judge who will conduct the jury trial. *See ADS Holdings*, 2008 WL 2042624, at *3 (reviewing magistrate judge's decision to impose discovery sanctions, including adverse inference instruction, for clear error). BMO Harris identifies no legal authority suggesting that a discovery sanction is dispositive or otherwise subject to *de novo* review merely because it will impact trial.

In summary, the foregoing cases demonstrate that bankruptcy judges, like magistrate judges, have the authority to impose non-dispositive discovery sanctions that might impact trial even if those judges lack the authority to conduct the trial. These cases also demonstrate that such decisions are not subject to *de novo* review but instead are reviewed for an abuse of discretion. BMO Harris identifies no legal authority, and the Court is aware of none, that prohibits a federal judge who is overseeing the discovery process from imposing non-dispositive sanctions to remedy discovery violations.

Because BMO Harris's pending challenge to the bankruptcy court's imposition of spoliation sanctions is not subject to *de novo* review, a pretrial evidentiary hearing is unwarranted, and the Court will resolve this issue on the written submissions in a forthcoming order. Accordingly, BMO Harris's request for a pretrial evidentiary hearing as to this issue is denied.

## II.     Re-Opening Discovery

BMO Harris next requests that this Court re-open fact discovery to permit BMO Harris to take targeted additional discovery pertaining to losses sustained by third parties—namely, PCI's investors. The Trustee opposes this request.

A district court has jurisdiction over appeals from final judgments, orders, and decrees of the bankruptcy court within its judicial district. 28 U.S.C. § 158(a)(1). A district court also has jurisdiction over appeals from other interlocutory orders of the bankruptcy court, with leave of the court. *Id.* § 158(a)(3). Such appeals must be filed within 14 days after the entry of the judgment, order, or decree being appealed, "in the same manner as appeals in civil proceedings generally." *Id.* § 158(c)(2); *see also* Fed. R. Bankr. P. 8002(a)(1), 8004(a). A federal court lacks jurisdiction to review an appealable bankruptcy court order that is not timely appealed. *See In re Delta Eng'g Int'l, Inc.*, 270 F.3d 584, 586 (8th Cir. 2001) (affirming dismissal of untimely appeal from bankruptcy court order for lack of jurisdiction).

In September 2017, the bankruptcy court denied BMO Harris's motions to compel production of discovery pertaining to investor losses. In doing so, the bankruptcy court concluded that BMO Harris's discovery requests were overbroad and sought irrelevant evidence. Subsequently, fact discovery in this matter ended in August 2018. It is undisputed that BMO Harris did not appeal the bankruptcy court's September 2017 discovery orders.[4] BMO Harris now seeks limited additional discovery as to investor losses—the same discovery that the bankruptcy court found to be irrelevant—arguing that the bankruptcy court erroneously "prevented BMO from obtaining certain investor discovery." In effect, BMO Harris appears to be attempting to appeal the bankruptcy

---

[4]   Indeed, although BMO Harris appealed other bankruptcy court decisions, none of BMO Harris's notices of appeal identifies the bankruptcy court's September 2017 discovery orders as being the subject of any appeal.

12

court's September 2017 discovery orders more than two years after the deadline to appeal those orders. *See* Fed. R. Bankr. P. 8002(a)(1). Because BMO Harris did not file a timely or procedurally proper appeal of those orders, the bankruptcy court's September 2017 discovery orders are not properly before this Court for review. *See* 28 U.S.C. § 158(c); Fed. R. Bankr. P. 8002(a)(1), 8004(a); *In re Delta Eng'g*, 270 F.3d at 586. To the extent that BMO Harris seeks to challenge the bankruptcy court's discovery decisions, the request is denied as both untimely and procedurally improper.

BMO Harris contends that, despite its failure to appeal the bankruptcy court's discovery orders, this Court should exercise its authority to modify the discovery schedule for good cause pursuant to Federal Rule of Civil Procedure 16(b)(4). Significantly, BMO Harris has not filed a motion to amend the scheduling order but has instead filed letter requests to re-open discovery and referenced these requests in its motion for a case-management order. As BMO Harris has not properly moved to modify the scheduling order, denial of BMO Harris's request is warranted on this basis alone. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

Because BMO Harris has not filed a proper motion to modify the pretrial scheduling order, the Court construes BMO Harris's letters as requests for permission to file a motion to modify the pretrial scheduling order.[5] For the reasons addressed below, these requests are denied.

---

[5] BMO Harris acknowledges that no such motion has been filed. Indeed, in support of its motion for a case-management order, BMO Harris represents that it "is prepared to file a motion explaining in more detail why this discovery is necessary and appropriate."

A pretrial scheduling order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Adherence to the deadlines in a pretrial scheduling order are "critical to achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive determination of every action.' " *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (quoting Fed. R. Civ. P. 1). A "district court has broad discretion in establishing and enforcing the deadlines" in a pretrial scheduling order. *Id.*

A party that seeks to modify a scheduling order must demonstrate good cause to do so. Fed. R. Civ. P. 16(b)(4); LR 16.3(b)(1); *see also* Fed. R. Bankr. P. 7016(a) (providing that Rule 16, Fed. R. Civ. P., applies in bankruptcy court adversary proceedings). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (internal quotation marks omitted). Good cause under Rule 16(b)(4) may be shown by identifying a change in the law, newly discovered facts or another significant change in circumstance. *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). As a pretrial scheduling order is "a vehicle designed to streamline the flow of litigation through . . . crowded dockets," courts do not treat pretrial scheduling orders lightly "and will enforce them." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Even if the moving party makes the requisite good-cause showing, "the district court retains discretion as to whether to grant the motion" to amend the pretrial scheduling order. *Id.*

When deciding whether a party has demonstrated good cause to amend a pretrial scheduling order, a court's analysis under Rule 16(b)(4) focuses almost exclusively on the moving party's diligence. *See Sherman*, 532 F.3d at 717 ("Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order."). The "existence or degree of prejudice to the party opposing the modification and other factors may also affect the decision." *Bradford*, 249 F.3d at 809 (internal quotation marks omitted). A court need not address the prejudice factor, however, if the record clearly demonstrates that the moving party did not exercise sufficient diligence. *Id.*

When evaluating a party's diligence under Rule 16(b)(4), a district court may evaluate the purported "necessity for [the] modification." *Metro Produce Distribs., Inc. v. City of Minneapolis*, 473 F. Supp. 2d 955, 964 (D. Minn. 2007). Typically, when a litigant has a reasonable opportunity to develop an issue within the deadlines established by the pretrial scheduling order, the litigant's failure to do so demonstrates lack of diligence regardless of whether the failure resulted from a tactical decision or neglect. *See, e.g.*, *Albright v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) (observing that the counsel's busy work schedule did not excuse lack of diligence when plaintiff missed dispositive motion filing deadline); *Marmo*, 457 F.3d at 759–60 (observing that the plaintiff had "ample opportunity to develop her expert testimony on the causation issue" and her "tactical decision" as to this issue did not demonstrate good cause to amend the pretrial scheduling order).

15

Here, the bankruptcy court denied BMO Harris's motions to compel investor-related discovery in September 2017. If BMO Harris believed that investor-related discovery was both relevant and crucial to its defense, contrary to the bankruptcy court's decisions, BMO Harris could have sought leave to appeal the bankruptcy court's interlocutory discovery orders.[6] BMO Harris admittedly did not do so. Indeed, BMO Harris did not raise this issue again until *two and a half years later*, in an April 2, 2020 letter.[7] In the meantime, fact discovery ended; expert discovery ended; BMO Harris's summary-judgment motion was briefed, argued and denied; BMO Harris's attempt to appeal that decision was rejected; and this case became trial-ready and was transferred to this Court. These circumstances do not demonstrate diligence, they demonstrate a lack thereof.

BMO Harris contends that the additional investor-related discovery it now seeks became necessary later, in light of the bankruptcy court's June 2019 summary judgment order and this Court's March 2020 order. Those orders concluded that the Trustee's

---

[6] To the extent that the discovery BMO Harris now seeks is narrower or of a different character than the discovery that the bankruptcy court did not permit, the record does not reflect that BMO Harris diligently pursued such discovery.

[7] In that letter, BMO Harris represented that it "did not seek an appeal of those rulings at that time, given the limitations on interlocutory review of bankruptcy court rulings on non-dispositive discovery issues, BMO's continued belief that [the Trustee] did not have standing to assert claims for creditor losses, and the opportunity for litigation and review in the summary judgment context." These reasons for BMO Harris's failure to even *attempt* to appeal the bankruptcy court's discovery orders reflect tactical decisions, which are insufficient to demonstrate diligence. *See, e.g.*, *Marmo*, 457 F.3d at 759–60 (observing that a plaintiff's tactical decisions do not demonstrate good cause to amend a pretrial scheduling order).

claims against BMO Harris belong to the bankruptcy estate under Minnesota law because the claims involve direct harm to the debtor and only indirect harm to the creditors. Good cause to modify a scheduling order under Rule 16(b)(4) may be shown by identifying a significant change in circumstance. *Ellingsworth*, 949 F.3d at 1100. But BMO Harris has not done so here. The fact that the Trustee's claims survived summary judgment because the bankruptcy court rejected BMO Harris's arguments is not a change in circumstances, significant or otherwise. The claims and defenses asserted in this case did not change as a result of the bankruptcy court's summary judgment order, nor did those claims or defenses change as a result this Court's March 2020 order.

When deciding whether a party has demonstrated good cause to modify a pretrial scheduling order, a district court also may "consider the existence or degree of prejudice to the party opposing the modification." *Marmo*, 457 F.3d 759. In doing so, a district court should be mindful that adhering to the deadlines in a pretrial scheduling order is "critical to achieving the primary goal of the judiciary: to serve the just, speedy, and inexpensive determination of every action." *Id.* (internal quotation marks omitted). Here, BMO Harris seeks to modify a scheduling order that the bankruptcy court modified several times. And the purpose of BMO Harris's proposed modification is to re-open fact discovery, years after fact discovery and expert discovery ended, to obtain discovery about losses sustained by eight of PCI's investors. PCI's investors are not parties to this proceeding. Therefore, as the bankruptcy court observed, those investors' losses are not

relevant to the Trustee's alleged damages or to BMO Harris's defenses.[8]  Because the additional discovery BMO Harris seeks would be irrelevant, granting a motion to modify the pretrial schedule to re-open discovery would be futile.  As such, modifying the pretrial schedule would prejudice the Trustee by imposing unwarranted delay and expense.

Moreover, a "district court has broad discretion in establishing and enforcing the deadlines" in a pretrial scheduling order.  *Marmo*, 457 F.3d at 759.  As such, even if the moving party makes the requisite good-cause showing under Rule 16(b)(4), a district court retains discretion as to whether to grant a motion to modify the pretrial schedule.  *Bradford*, 249 F.3d at 809.  Here, even if BMO Harris could establish good cause under Rule 16(b)(4), the Court would exercise its broad discretion and deny any motion to re-open fact discovery for the reasons addressed throughout this Order.  In the Court's judgment, modifying the pretrial schedule to re-open fact discovery would not advance "the primary goal of the judiciary: to serve the just, speedy, and inexpensive determination of every action."  *Marmo*, 457 F.3d at 759 (internal quotation marks omitted).

---

[8]     BMO Harris continues to assert that "investor losses will be part of the case" because of the bankruptcy court's summary judgment decision.  But this assertion is contrary to the record.  Indeed, this Court rejected this argument in its March 2020 order, observing that "when a corporation's assets are fraudulently depleted, rendering the corporation unable to repay creditors, it is the corporation—not the creditors—that is directly harmed, and the claim belongs to the bankruptcy estate."  As the Court explained, losses sustained by PCI's investors are incidental to the Trustee's claims, which involve direct harm to PCI.

In summary, a motion to modify the pretrial scheduling order would be futile, as BMO Harris has not demonstrated the requisite good cause, both because BMO Harris failed to act diligently and because modifying the pretrial schedule to permit BMO Harris to pursue irrelevant discovery would prejudice the Trustee. Therefore, BMO Harris's requests for permission to file a motion to modify the pretrial scheduling order are denied.

### III. Pretrial Motion Deadlines

BMO Harris also seeks guidance as to filing additional pretrial motions, including motions to exclude expert testimony and motions in limine. The Trustee also anticipates filing such motions. The parties shall adhere to the deadlines and requirements set forth below and in the forthcoming trial notice and final pretrial order.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant BMO Harris Bank N.A.'s motion for a case-management conference and order, (Dkt. 89), is **GRANTED IN PART AND DENIED IN PART** as follows:

1. BMO Harris's request for a case-management conference is **DENIED**.

2. BMO Harris's request for a pretrial evidentiary hearing as to its pending challenge to the bankruptcy court's imposition of spoliation sanctions is **DENIED**. The Court will resolve this issue on the written submissions in a forthcoming order.

3. BMO Harris's requests for permission to file a motion to modify the pretrial scheduling order to re-open discovery are **DENIED**.

4. The following deadlines and requirements apply to the parties' forthcoming motions to exclude expert testimony:

 a. No later than **July 1, 2022**, the parties each shall file **one** memorandum of law, together with the corresponding motions and supporting documents required by Local Rule 7.1(c)(1).

 b. No later than **July 22, 2022**, the parties each shall file **one** response memorandum of law, together with any supporting documents permitted by Local Rule 7.1(c).

 c. No later than **July 29, 2022**, the parties each shall file **one** reply memorandum of law, together with any supporting documents permitted by Local Rule 7.1(c).

 d. The Court will take these motions under advisement on the written submissions.

5. All other pretrial deadlines and requirements will be addressed in a forthcoming trial notice and final pretrial order.

6. The parties shall immediately contact the chambers of United States Magistrate Judge David T. Schultz to schedule a pretrial settlement conference to occur in September 2022.


Dated: June 1, 2022                           s/Wilhelmina M. Wright
                                              Wilhelmina M. Wright
                                              United States District Judge