UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Douglas A. Kelley, *in his capacity as the Trustee of the BMO Litigation Trust*,

　　　　　　　　　Plaintiff,

v.

BMO Harris Bank N.A., *as successor to M&I Marshall and Ilsley Bank*,

　　　　　　　　　Defendant.

Case No. 19-cv-1756 (WMW)

**ORDER ON
MOTIONS IN LIMINE**

---

This matter is before the Court on motions in limine filed by Plaintiff Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust (hereinafter, Kelley or the Trustee), and Defendant BMO Harris Bank N.A. (BMO Harris).  (Dkts. 176, 194, 198, 202, 204.)  For the reasons addressed below, the parties' motions are granted in part and denied in part.

## BACKGROUND

This matter arises from a Ponzi scheme orchestrated by Thomas J. Petters and his associates between 1994 and 2008.  Petters was the owner, director and CEO of Petters Company, Inc. (PCI).  During the course of the Ponzi scheme, PCI obtained billions of dollars from investors through fraud, false pretenses and misrepresentations about PCI's purported business.  Billions of dollars were wired into and out of PCI's depository account at National City Bank, which was acquired by M&I Marshall and Ilsley Bank

(M&I) in July 2001.  BMO Harris is the successor to M&I, and the claims at issue in this bankruptcy matter pertain to M&I's handling of PCI's account.

In the underlying fraud action, the district court appointed Kelley as the equity receiver for PCI in an October 6, 2008 Order.  *See United States v. Petters*, No. 08-SC-5348 (ADM/JSM), 2008 WL 4614996, at *3 (D. Minn. Oct. 6, 2008).  Kelley filed for Chapter 11 bankruptcy relief on behalf of PCI and was appointed as the Chapter 11 Trustee.  *In re Petters Co.*, 401 B.R. 391, 415 (D. Minn. Bankr. 2009).  The bankruptcy court confirmed PCI's Second Amended Plan of Chapter 11 Liquidation, which transferred certain assets, including the causes of action at issue here, to the BMO Litigation Trust.

The Trustee subsequently commenced this adversary proceeding alleging that BMO Harris was complicit in the Ponzi scheme through its dealings with Petters, PCI and PCI's account.   The Trustee alleges that BMO Harris failed to respond to irregularities as required by banking regulations that, together with other acts and omissions, legitimized and facilitated the Ponzi scheme.  Four of the Trustee's claims remain unresolved:  Count I alleges that BMO Harris violated the Minnesota Uniform Fiduciaries Act, Count II alleges that BMO Harris breached fiduciary duties it owed to PCI, Count III alleges that BMO Harris aided and abetted fraud against PCI, and Count IV alleges that BMO Harris aided and abetted the breach of fiduciary duties owed to PCI.  The parties now move for an order admitting or excluding certain evidence at trial.

## ANALYSIS

### I.      Plaintiff's Motions in Limine

The Trustee moves for an order (1) excluding evidence of investor complicity in the underlying fraudulent conduct; (2) excluding evidence of recoveries, offsets and reductions obtained by PCI and PCI's creditors; (3) admitting evidence of the criminal convictions in the underlying fraud action; and (4) excluding evidence of fraud investigations conducted by the federal government.  The Court addresses each motion in turn.

#### A.      Investor Complicity

The Trustee seeks an order excluding evidence of investor complicity in the underlying fraudulent conduct, arguing that such evidence is irrelevant and its probative value, if any, is substantially outweighed by the risks of unfair prejudice, confusing the issues, misleading the jury or causing undue delay.  *See* Fed. R. Evid. 402, 403.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

To prove his breach-of-fiduciary-duty claim, the Trustee must prove that BMO Harris was the proximate cause of the Trustee's damages. *See State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 887 (Minn. 2006) (elements of negligence claim); *Padco, Inc. v. Kinney & Lange*, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989) (recognizing that negligence and breach-of-fiduciary-duty claims involve the same elements). To prove proximate causation, the Trustee must establish that BMO Harris's negligent conduct was "a substantial factor in bringing about the injury." *Staub as Tr. of Weeks v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 620 (Minn. 2021). "There may be more than one substantial factor—in other words, more than one proximate cause—that contributes to an injury." *Id.* at 621. Similarly, to prove his aiding-and-abetting claims, the Trustee must prove that BMO Harris "substantially assist[ed] or encourage[d] the primary tortfeasor in the achievement of the breach." *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999) (internal quotation marks omitted). "Factors such as the relationship between the defendant and the primary tortfeasor, the nature of the primary tortfeasor's activity, the nature of the assistance provided by the defendant, and the defendant's state of mind all come into play." *Id.* at 188.

As addressed in this Court's *Daubert* order, even if BMO Harris could demonstrate that PCI's investors were complicit in the fraud and, thus, a proximate cause of the Trustee's injuries, this fact would not make it less probable that BMO Harris was a proximate cause of the Trustee's injuries. *Staub*, 964 N.W.2d at 621 (recognizing that there may be "more than one proximate cause . . . that contributes to an injury").

Similarly, whether third parties assisted the primary tortfeasor has no bearing on whether BMO Harris provided substantial assistance, because the substantial-assistance element of an aiding-and-abetting claim pertains to the conduct of the defendant and the defendant's relationship with the primary tortfeasor. *Witzman*, 601 N.W.2d at 188. For these reasons, evidence of investor complicity in the underlying fraudulent conduct has no relevance as to causation. Moreover, any minimal probative value of this evidence is substantially outweighed by the danger that such evidence will unfairly prejudice the Trustee, confuse the issues, mislead the jury and waste time. *See* Fed. R. Evid. 403.

BMO Harris argues that evidence of investor complicity is relevant to damages because any promissory notes between PCI and complicit investors could be void and unenforceable, or because the Trustee could have asserted an *in pari delicto* defense against complicit creditors. This argument is flawed for at least three reasons. First, whether a contract is void due to illegality or fraud is an affirmative defense that belongs to the parties to the allegedly void contract and is waived if not asserted. *See* Minn. R. Civ. P. 8.03 (providing that fraud and illegality are affirmative defenses); *Fedie v. Mid-Century Ins. Co.*, 631 N.W.2d 815, 821–22 (Minn. Ct. App. 2001) (observing that "an affirmative defense must be pleaded specifically and the failure to do so results in a waiver of the defense"). Here, BMO Harris provides no legal authority suggesting that it has standing in this case to assert a defense against PCI's creditors on behalf of PCI pertaining to agreements to which BMO Harris was not a party. To the extent that any such defense existed, it belonged to PCI, which could have asserted the defense against

creditors, and any failure by PCI to do so would have waived the defense.  Second, to the extent that BMO Harris was a party in interest to the bankruptcy proceedings, BMO Harris had the opportunity to challenge the amounts PCI owed to its creditors during the bankruptcy proceedings.  *See* 11 U.S.C. § 502(a).  Third, even if BMO Harris were authorized to raise a defense on behalf of PCI in this case, whether a contract is void "is an issue of law."  *Kelley as Tr. for PCI Liquidating Tr. v. Boosalis*, 974 F.3d 884, 894 (8th Cir. 2020) (citing *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 92 (Minn. 2006)).  Because the jury lacks the authority to decide an issue of law, evidence pertaining to this issue has no relevance and risks confusing the issues or misleading the jury.  *See* Fed. R. Evid. 401, 403.

BMO Harris also argues that investor complicity is relevant because the collateral-source rule permits offsets for payments by joint tortfeasors.  Under the collateral-source rule, "a payment by another tortfeasor of an amount for which he is liable jointly with the defendant" has the effect of reducing the defendant's liability.  *Restatement (Second) of Torts* § 920A, cmt. a.  But PCI's investors are not parties to this action, joint liability is not at issue in this case and BMO Harris has not provided a legal basis for determining the liability of non-parties in their absence.  Moreover, the collateral-source rule "does not differentiate between the nature of the [collateral] benefits, so long as they did not come from the defendant or a person acting for [the defendant]."  *Id.* at cmt. b.  Here, there is no allegation or evidence suggesting that PCI's investors acted on behalf of BMO Harris when negotiating PCI's debts.

Finally, BMO Harris argues that it must be permitted to rebut the Trustee's evidence that M&I knew that PCI's investors had been misled and assisted PCI in misleading investors by presenting evidence that PCI's investors were *not* misled. If the Trustee presents evidence that M&I possessed certain knowledge or engaged in certain conduct, BMO Harris may, of course, *directly* rebut such evidence.[1] Such rebuttal evidence may be admissible even if the evidence *indirectly* suggests information about the knowledge of PCI's investors. But if, for example, the Trustee presents evidence establishing that M&I ignored or turned a blind eye to suspicious activity and "red flags" indicating that fraud was occurring, the fact that some investors may not have been misled by the suspicious activity has no bearing on M&I's knowledge or culpability. At issue here is the knowledge, state of mind and conduct of M&I. The knowledge and culpability of PCI's investors has no relevance as to these issues. Notably, for this same reason, evidence or argument offered solely to establish that PCI's investors were *innocent* has no relevance. And any minimal probative value of such evidence is substantially outweighed by the danger that such evidence will cause unfair prejudice, confuse the issues, mislead the jury and waste time. *See* Fed. R. Evid. 403.

Accordingly, the Court grants the Trustee's motion to exclude evidence of investor complicity in the underlying fraudulent conduct.

---

[1]  For instance, if the Trustee presents evidence that M&I knew that a PCI investor had been misled or that M&I intended to mislead an investor, BMO Harris may offer rebuttal evidence demonstrating that M&I did *not* possess such knowledge or intent. But the knowledge, state of mind or motive of the investor has no bearing on the knowledge or state of mind of M&I.

### B.      Recoveries, Offsets and Reductions

The Trustee seeks an order excluding evidence of recoveries, offsets and reductions obtained by PCI and PCI's creditors, arguing that such evidence is irrelevant.

As this Court previously concluded, under Minnesota law, when a corporation is unable to repay creditors because the corporation's assets have been fraudulently depleted, it is the corporation—not each individual creditor—that is directly harmed, and the legal claim belongs to the bankruptcy estate. *See In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1006 (8th Cir. 2007); *accord Greenpond S., LLC v. Gen. Elec. Cap. Corp.*, 886 N.W.2d 649, 657 (Minn. Ct. App. 2016). Any recovery by the Trustee in this case is to compensate the bankruptcy estate for direct harm suffered by PCI. And the collection of estate assets is distinct from the process of distributing the estate assets. *See In re Emerald Casino, Inc.*, 530 B.R. 44, 235 (N.D. Ill. 2014), *vacated in part on other grounds*, 867 F.3d 743 (7th Cir. 2017). A bankruptcy trustee's recovery "has nothing to do with identifying who gets how much when the estate distributes [the estate's] assets." *Id.* (quoting *In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1396 (7th Cir. 1996)). As such, recoveries made by PCI's creditors, who are not parties to this lawsuit, have no relevance as to the Trustee's alleged damages.

In addition, the collateral-source rule impacts the relevance of evidence that the Trustee recovered money from other sources or mitigated PCI's damages through favorable settlements with creditors. Under the collateral-source rule, a plaintiff may recover damages from a tortfeasor even if "the plaintiff has received money or services in

reparation of the injury from a source other than the tortfeasor," because a "benefit conferred on the injured person from [a] collateral source is not credited against the tortfeasor's liability." *Swanson v. Brewster*, 784 N.W.2d 264, 268 (Minn. 2010) (internal quotation marks omitted).  This rule recognizes that it is the "tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives." *Duluth Steam Coop. Ass'n v. Ringsred*, 519 N.W.2d 215, 217 (Minn. Ct. App. 1994) (quoting *Restatement (Second) of Torts* § 920A(2) (1979)).  The "central justification" for the collateral-source rule "is that a tortfeasor, as a wrongdoer who caused a particular harm, should not benefit from a tort plaintiff's ability to secure other compensation." *Swanson*, 784 N.W.2d at 269 n.7; *accord McDermott, Inc. v. AmClyde*, 511 U.S. 202, 219 (1994).

As addressed in this Court's *Daubert* order, the collateral-source rule "recognize[s] that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *McDermott*, 511 U.S. at 219; *accord Swanson*, 784 N.W.2d at 269 (recognizing that "under the common-law collateral-source rule a tort plaintiff may receive more than the actual compensation amount—essentially a 'double recovery'—because the tortfeasor must pay the entire compensation amount regardless of other compensation sources").  Although an "injured party's net loss may have been reduced" by payments or benefits conferred by other sources, "a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor." *See Restatement (Second) of Torts* § 920A cmt. b (recognizing that "there may be a double

9

compensation for a part of the plaintiff's injury").  Moreover, "[b]ecause settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, [settlement amounts] will rarely match exactly the amounts a trier of fact would have set."  *McDermott*, 511 U.S. at 219–20 (observing that "settlements frequently result in the plaintiff's getting more than he would have been entitled to at trial" and a plaintiff's "good fortune in striking a favorable bargain" through settlement does not reduce a tortfeasor's liability).  For these reasons, reducing the Trustee's damages based on settlements the Trustee negotiated with third parties would be improper and would not accurately reflect BMO Harris's alleged liability.  The collateral-source rule permits the Trustee to recover the full amount of harm allegedly caused by BMO Harris *even if* the Trustee has secured compensation from other sources. As such, to the extent that the Trustee may have mitigated PCI's damages by reaching favorable settlements with PCI's creditors or obtaining compensation from collateral sources, the Trustee is entitled to reap the benefit of those recoveries, not BMO Harris. Evidence of recoveries, offsets and reductions obtained by PCI is, therefore, irrelevant.

BMO Harris argues that, even under the collateral-source rule, its liability should be reduced based on payments made by Petters, his criminal co-defendants and complicit PCI investors.  Under the collateral-source rule, a payment is credited against a tortfeasor's liability if the payment was made by the tortfeasor or someone acting on the tortfeasor's behalf, which is not the circumstance presented here.  *See Restatement (Second) of Torts* § 920A(1).  In addition, a payment is credited against a tortfeasor's

liability if the payment was "made by another who is, or believes he is, subject to the same tort liability." *Id.* But Petters and his criminal co-defendants are not parties to this action, their tort liability is not at issue in this case and their tort liability was not at issue in their criminal prosecutions. BMO Harris has not identified a legal basis for adjudicating the existence or scope of tort liability as to individuals or entities who are not parties to this case and have no opportunity to defend themselves. Nor has BMO Harris demonstrated that it would be appropriate to infer the existence or scope of tort liability from the criminal convictions of Petters and his co-defendants, given that criminal liability and tort liability are distinct. Similarly, PCI's investors are not parties to this action and BMO Harris has identified no basis for adjudicating the existence or scope of their tort liability in their absence. And payments that Petters and other third parties may have previously made, such as through restitution or in connection with fraudulent transfers, pertain to distinct legal theories and distinct harms. Moreover, to the extent that BMO Harris believes that it may be entitled to a reduction based on collateral-source payments, the appropriate procedure is for BMO Harris to seek such a reduction after trial. *See, e.g.*, *Clark v. Burlington N., Inc.*, 726 F.2d 448, 449–50 (8th Cir. 1984); *Swanson*, 784 N.W.2d at 269.

Accordingly, the Court grants the Trustee's motion to exclude evidence of recoveries, offsets and reductions obtained by PCI and PCI's creditors.

### C.     Criminal Convictions

The Trustee seeks an order admitting evidence of the criminal convictions in the underlying fraud action—namely, the felony convictions of Petters and his co-defendants, as well as the plea agreements entered by Petters's co-defendants.[2]   According to the Trustee, such evidence is admissible under Rules 803(22) and 807 of the Federal Rules of Evidence.

Here, because the Trustee alleges that BMO Harris aided and abetted the fraudulent conduct of Petters and his criminal co-defendants, those criminal convictions and the facts underlying those convictions are relevant.   *See* Fed. R. Evid. 401. Moreover, relevant evidence includes evidence providing the context in which the alleged conduct occurred.   *See United States v. Morrison*, 748 F.3d 811, 812 (8th Cir. 2014) (observing that relevant evidence "includes evidence providing the context in which the crime occurred, i.e. the *res gestae*" (internal quotation marks omitted)); *Century '21' Shows v. Owens*, 400 F.2d 603, 610 (8th Cir. 1968) (affirming admission of evidence "as part of the res gestae" of automobile accident because "the jury should be given a full picture of the collision" (internal quotation marks omitted)).   As such, evidence of the criminal convictions of Petters and his co-defendants is admissible as long as a hearsay exception to such out-of-court statements applies.

---

[2]     At the pretrial hearing, the parties indicated that they may come to an agreement as to this issue.  The Court provided the parties two days to do so.  That deadline has passed, and the Trustee has neither withdrawn this motion nor notified the Court that the dispute has been resolved.  As such, the Court resolves the motion as addressed herein.

A statement is hearsay if it was made out of court and is "offer[ed] in evidence to prove the truth of the matter asserted in the statement."   Fed. R. Evid. 801(a), (c). "Evidence of a final judgment of conviction" is not excluded by the rule against hearsay if, as relevant here, the judgment was entered after a trial or a guilty plea, the conviction involved a crime punishable by imprisonment for more than one year, and "the evidence is admitted to prove any fact essential to the judgment."   Fed. R. Evid. 803(22); *accord Embaye v. Minneapolis Police Dep't*, No. 14-cv-2896 (PJS/TNL), 2016 WL 3960374, at *8 (D. Minn. June 22, 2016) (concluding that the plaintiff's "past guilty plea and the record of his plea hearing" are admissible under Rule 803(22)), *report and recommendation adopted by* 2016 WL 3962867 (D. Minn. July 21, 2016).

When determining whether a fact was essential to a judgment of conviction, a district court should "(1) examine the record of the antecedent case to determine the issues decided by the judgment; (2) in [the court's] instructions to the jury reconstruct that case in the manner and to the extent [the court] deems necessary to acquaint the jury fully with the issues determined therein; and (3) explain the scope and effect of the former judgment on the case at trial."   *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 572 (1951).   "The court may, in the interest of clarity, so inform the jury at the time the judgment in the prior action is offered in evidence," or the court "may so instruct at a later time if . . . the ends of justice will be served."   *Id.*

Here, the Trustee seeks to offer in evidence the criminal convictions of Petters and his co-defendants—namely, PCI, Deanna Coleman, and Robert White—to prove facts

pertaining to the fraudulent conduct underlying those convictions. Both the Trustee and BMO Harris have submitted proposed jury instructions that "reconstruct" the relevant aspects of the underlying criminal case and "acquaint the jury" with the issues determined therein. *See id.* The parties' proposed jury instructions, which are substantially similar, are based on certified copies of the jury verdict in Petters's criminal trial, the plea agreements entered by PCI and Coleman and the transcript of White's guilty plea hearing. Based on the foregoing evidence, the Court concludes that the following jury instruction will acquaint the jury with the essential fact issues determined in the criminal case and explain the scope and effect of those convictions on this case:

> The parties introduced into evidence the criminal convictions of PCI, Thomas Petters, Deanna Coleman, and Robert White. Under the Federal Rules of Evidence, evidence of a final judgment of conviction can be used to prove any fact essential to the judgment. I am instructing you that the following facts were essential to those convictions. In other words, you may infer that, in finding PCI, Petters, Coleman, and White guilty, the following facts were admitted to by those criminal defendants or proven beyond a reasonable doubt:

>> Through September 2008, Thomas J. Petters was the owner, director, and CEO of Petters Company, Inc. ("PCI"), and Deanna Coleman and Robert White were corporate officers of PCI. During that time, Petters, Coleman and White used PCI to operate a criminal scheme to defraud investors, also known as a Ponzi scheme. Specifically, PCI obtained billions of dollars in money and property based on false statements to investors that PCI was purchasing consumer electronic goods from two supplier companies and then selling those goods to big-box retailers. In connection with this scheme,

> Petters, Coleman, and White used fake purchase orders, invoices, and other documents to fraudulently induce investors to loan money to PCI. But rather than using the loan proceeds to purchase consumer goods for sale to retailers, Petters and PCI used the funds to, among other things, make lulling payments to investors and to pay themselves. In connection with the fraud, Petters or his co-conspirators caused money to be transferred to and from PCI's bank accounts.

In the interest of clarity, consistent with the Supreme Court's guidance in *Emich Motors*, the Court will provide the foregoing instruction to the jury when the judgments of conviction are introduced in evidence. *See id.*

The Trustee also seeks an order admitting in evidence portions of Coleman's, White's, and PCI's plea agreements. But a "plea agreement cannot be offered into evidence to prove the truth of the matters asserted in that plea agreement," because such evidence is hearsay. *Hartford Fire Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 780 (D. Minn. 2010). And a plea agreement is not admissible under the hearsay exception for judgments of conviction because a plea agreement is not a final judgment. *Id.* at 781. "A judgment is the act of a court, while a plea is the act of a defendant, and Fed. R. Evid. 803(22) covers only judgments, not pleas." *Id.* Indeed, the plea agreements and plea hearing transcripts presented here include far more information than the "fact[s] essential to the judgment." Fed. R. Evid. 803(22). These documents include numerous facts that may provide context for the underlying offenses but were not *essential* to the convictions. And the plea agreements and plea hearing transcript contain stipulations between the

criminal defendant and the government, such as waivers of rights, details pertaining to cooperation and assistance with the government's investigation, applicable statutory penalties, anticipated calculations under the United States Sentencing Guidelines and other details and recommendations pertaining to sentencing. These hearsay statements are not admissible under the judgment-of-conviction exception to the hearsay rule and have little, if any, relevance in this case. Moreover, any minimal probative value of this evidence is substantially outweighed by the danger that such evidence will confuse or mislead the jury, waste time or needlessly present cumulative evidence.[3] *See* Fed. R. Evid. 403.

Accordingly, the Court grants in part and denies in part the Trustee's motion to admit evidence of the criminal convictions in the underlying fraud action. The judgments of conviction and facts essential to those convictions, as summarized in the jury instruction provided herein, are admissible. The plea agreements and plea hearing transcripts are inadmissible as addressed herein.

### D. Government Investigations

The Trustee seeks an order excluding evidence of fraud investigations conducted by the federal government, arguing that such evidence is irrelevant and its probative value, if any, is substantially outweighed by the risks of unfair prejudice, confusing the issues, or misleading the jury. *See* Fed. R. Evid. 402, 403.

---

[3]     Indeed, both parties include Coleman on their witness lists as someone who will provide testimony about the underlying Ponzi scheme.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Here, M&I's state of mind, knowledge and conduct are relevant to the Trustee's claims.  But the state of mind, knowledge and conduct of third-party investigators have no apparent relevance.  As addressed in this Court's *Daubert* order, the knowledge or mental state of one person or entity has little or no probative value as to the knowledge or mental state of another person or entity.  M&I did not have the same knowledge or motivations as federal investigators.  Indeed, federal investigators likely lacked access to the same information as M&I and vice versa.  As such, evidence that the FBI or other federal investigators did not detect PCI's fraudulent conduct or declined to investigate potentially suspicious activity has no bearing on whether M&I knew about PCI's fraudulent conduct or should have investigated suspicious activity.  Moreover, the out-of-court statements of federal investigators, to the extent that such statements are offered for the truth of the matter asserted, involve hearsay to which no apparent exception applies.

Moreover, any minimal probative value of this evidence is substantially outweighed by the danger that such evidence will unfairly prejudice the Trustee, confuse the issues or mislead the jury.  *See* Fed. R. Evid. 403.  These dangers would be amplified by the undue weight that the jury might give to the conclusions of official federal investigators, whose judgment the jury might substitute for its own.  *Cf. United States v. Ramos*, 852 F.3d 747, 756 (8th Cir. 2017) (recognizing that a jury might give undue

weight to the findings or conclusions of a government authority that reflect "indicia of official reliability" (internal quotation marks omitted)).  It is solely the jury's role to draw inferences from the circumstantial evidence pertaining to M&I's knowledge and state of mind, and permitting the jury to consider the inferences that federal investigators independently drew from the same or similar evidence would usurp the jury's role.

BMO Harris contends that some evidence pertaining to the federal investigations is relevant to show that M&I worked diligently with federal officials, thereby rebutting the Trustee's evidence that M&I ignored or turned a blind eye to fraudulent activity. Such rebuttal evidence may be admissible, even if it indirectly pertains to federal investigations, to the extent that such evidence is otherwise admissible and is sufficiently probative of M&I's knowledge, state of mind or conduct.[4]  And other closely related evidence may be admissible to provide reasonable context to the jury.  *See Morrison*, 748 F.3d at 812; *Owens*, 400 F.2d at 610.  But any evidence pertaining to prior federal investigations will be inadmissible at trial absent a showing of both relevance and probative value that is not substantially outweighed by the dangers of unfair prejudice, confusion or misleading the jury.

---

[4]     Indeed, the Trustee contends that the Court should not exclude *all* evidence of prior federal investigations, asserting that the Trustee "intends to offer into evidence certain documents relating to" those federal investigations.  The Court will not allow either party to use an evidentiary ruling as both a sword and a shield, and the Court will apply evidentiary rules and rulings equally to both parties.  As such, the Trustee cannot seek the exclusion of evidence that may be unfavorable to his position while simultaneously seeking exceptions for similar evidence that might be favorable to him.  If either party seeks to introduce discrete evidence pertaining to prior federal investigations, the offering party must demonstrate the relevance and admissibility of the evidence, and the Court will address any disputes in the context of trial.

Accordingly, the Court grants in part and denies in part the Trustee's motion to exclude evidence of prior federal investigations. Inadmissible hearsay and evidence that solely or primarily pertains to federal investigators' knowledge, state of mind, conduct, findings or conclusions is inadmissible. Such evidence includes but is not limited to the notes of federal investigators and statements by federal investigators referencing M&I's innocence or culpability or vouching for the appropriateness of M&I's conduct. But both parties will have the opportunity to seek admission of evidence pertaining to prior federal investigation *if* such evidence is relevant to and sufficiently probative of M&I's knowledge, state of mind or conduct, and the Court will provide an appropriate limiting instruction as to such evidence.

## II.     Defendant's Motions in Limine

BMO Harris moves for an order (1) excluding evidence pertaining to a prior settlement reached between BMO Harris and the United States Department of Justice; (2) excluding evidence and argument that M&I owed or breached a duty of disclosure to PCI's investors; (3) excluding evidence and argument pertaining to an unrelated civil lawsuit in Wisconsin state court; and (4) excluding evidence and argument pertaining to Bank of Montreal's financial condition. The Court addresses each motion in turn.

### A.     Prior Settlement

BMO Harris seeks an order excluding evidence pertaining to a prior settlement reached between BMO Harris and the United States Department of Justice. In response, the Trustee represents that he does not intend to offer any such evidence in light of the

Court's *Daubert* order, because the intended purpose of this evidence was to rebut evidence that the Court has excluded.  The Court agrees.  Evidence pertaining to whether M&I or its employees faced criminal prosecution is irrelevant and inadmissible.  *See* Fed. R. Evid. 402, 403.  The same is true of evidence pertaining to whether M&I or its employees were otherwise deemed culpable or not culpable by federal investigators or other third parties.  Accordingly, BMO Harris's motion is denied as moot.

### B.      Duty of Disclosure

BMO Harris seeks an order excluding evidence and argument that M&I owed or breached a duty of disclosure to PCI's investors, arguing that such evidence is irrelevant and its probative value, if any, is substantially outweighed by the risks of unfair prejudice, confusing the issues, misleading the jury or wasting time.  *See* Fed. R. Evid. 402, 403.

As the bankruptcy court and this Court have concluded, the Trustee's claims arise from injuries to PCI based on duties that BMO Harris owed to PCI.  *See Senior Cottages*, 482 F.3d at 1005–06.  Consistent with this conclusion, the bankruptcy court dismissed the Trustee's claims arising from duties that BMO Harris allegedly owed directly to PCI's investors.  Whether or to what extent BMO Harris owed any duties to PCI's investors has no relevance to the Trustee's remaining claims.  Moreover, any minimal probative value of this evidence is substantially outweighed by the danger that such evidence will unfairly prejudice BMO Harris, confuse the issues, mislead the jury and waste time.  *See* Fed. R. Evid. 403.  As such, any evidence or argument that directly pertains to duties that BMO Harris allegedly owed to PCI's investors is inadmissible.

Notably, however, BMO Harris has not identified any particular evidence that the Trustee intends to offer at trial about duties BMO Harris owed to PCI's investors. Instead, BMO Harris references prior arguments the Trustee made at earlier stages of this litigation.  In response, the Trustee represents that at trial he merely intends to present circumstantial evidence pertaining to BMO Harris's mental state, including willful blindness.  According to the Trustee, such evidence includes testimony and exhibits reflecting that M&I employees who managed PCI's account knew PCI's purported business model, that PCI's account activity was inconsistent with that purported business model, and that M&I entered into sham Deposit Account Control Agreements intended to mislead investors.  Such evidence is relevant to M&I's knowledge, state of mind and conduct, even though such evidence also may indirectly suggest that BMO Harris breached duties to investors.  Moreover, this evidence provides relevant context and is part of the *res gestae* of the alleged misconduct.  *See Morrison*, 748 F.3d at 812 (observing that relevant evidence "includes evidence providing the context in which the crime occurred, i.e. the *res gestae*" (internal quotation marks omitted)); *Owens*, 400 F.2d at 610 (affirming admission of evidence "as part of the res gestae" of automobile accident because "the jury should be given a full picture of the collision" (internal quotation marks omitted)).  Because the probative value of such evidence might outweigh the risks of unfair prejudice, confusing the issues, misleading the jury or wasting time, the Court will not categorically exclude such evidence.  The Court will rule on any particular objections to specific items of evidence if such disputes arise in the context of trial.

Accordingly, the Court grants in part and denies in part BMO Harris's motion to exclude evidence and argument that M&I owed or breached a duty of disclosure to PCI's investors.

### C.   Wisconsin Lawsuit

BMO Harris seeks an order excluding evidence and argument pertaining to sanctions imposed against BMO Harris in an unrelated lawsuit in Wisconsin state court. In response, the Trustee contends that this issue is moot because he does not intend to proffer any such evidence at trial in light of the Court's September 29, 2022 Order. Indeed, as the Court previously held, the conduct and credibility of BMO Harris's counsel during this litigation has minimal relevance to the adverse inference issue. The conduct and credibility of BMO Harris or its counsel in an unrelated lawsuit has even less relevance and, therefore, the Trustee has no basis to proffer such evidence at trial.

At the pretrial hearing, the Trustee asserted that he will not present evidence of the Wisconsin lawsuit because BMO Harris's intent when destroying evidence has been established and, therefore, the jury will not be asked to decide whether BMO Harris has an innocent explanation for its destruction of evidence. This argument warrants additional clarification because, as addressed below, the Trustee is mistaken about the scope of evidence that may be relevant to the adverse inference issue.

Any adverse inference instruction, mandatory or permissive, requires a threshold finding that the evidence was destroyed with the intent to deprive an opposing party of the evidence. *See* Fed. R. Civ. P. 37(e)(2). But as this Court recognized in its September

29, 2022 Order, even after this threshold intent requirement has been established, a sanctioned party should be permitted to "put on some evidence" about the policies and circumstances that "affected the destruction of the requested records as an innocent explanation for its conduct." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 750 (8th Cir. 2004). Although a court need not permit a complete retrial of the sanctions issue, the jury must be presented with "sufficient information on which to base a rational decision of whether to apply the adverse inference." *Id.* (recognizing that an "adverse inference that the missing evidence is harmful can be rebutted by an adequate explanation of the reason for non-production" (internal quotation marks omitted)). As such, *both* parties will be permitted to present *limited* evidence that pertains to the circumstances surrounding BMO Harris's destruction of email backup tapes, including evidence suggesting or refuting an innocent explanation.

BMO Harris's conduct in an unrelated Wisconsin lawsuit remains outside the limited scope of such evidence, however. Thus, the Trustee is correct that he has no basis to proffer such evidence, albeit not for the reasons he advanced at the pretrial hearing. Because the Trustee will not proffer the evidence that BMO Harris seeks to exclude, BMO Harris's motion is denied as moot.

### D.     Financial Condition

BMO Harris seeks an order excluding evidence and argument pertaining to the financial condition of BMO Harris's parent company, Bank of Montreal. According to BMO Harris, such evidence is irrelevant and its probative value, if any, is substantially

outweighed by the risks of unfair prejudice and misleading the jury. *See* Fed. R. Evid. 402, 403.

It is undisputed that the financial condition of BMO Harris is relevant to the issue of punitive damages. *See* Minn. Stat. § 549.20, subdiv. 3; *GN Danavox, Inc. v. Starkey Lab'ys, Inc.*, 476 N.W.2d 172, 177 (Minn. Ct. App. 1991). Here, the disputed exhibits contain information relevant to the financial condition of both BMO Harris *and* its parent company, Bank of Montreal. As such, these exhibits are not wholly inadmissible. Rather, the Court must determine whether these exhibits must be redacted to exclude irrelevant or unfairly prejudicial information pertaining to Bank of Montreal.

According to the Trustee, even if these exhibits only contained information specific to Bank of Montreal, the exhibits would be relevant and admissible because "Bank of Montreal has the power to control and affect the profits of [BMO Harris] through its decision making." The financial condition of a parent company may be relevant to the issue of punitive damages if the parent entity exercised sufficient control over the subsidiary entity. *See Molenaar v. United Cattle Co.*, 553 N.W.2d 424, 430 (Minn. Ct. App. 1996) (evaluating evidence pertaining to relevant punitive-damages factors under Minnesota law, including evidence regarding parent entity); *see also E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 556 (8th Cir. 1998) (evaluating evidence of defendant's financial condition, including defendant's parent entity, using analogous punitive-damages factors under Missouri law). Here, the Trustee presents evidence that Bank of Montreal consolidates BMO Harris's financial performance with its own when

reporting to investors and that Bank of Montreal owns "100% of the outstanding voting shares" of BMO Harris. The evidence suggests that Bank of Montreal exercises financial decision making and allocates capital on an enterprise-wide basis. Moreover, BMO Harris's damages expert relies on consolidated financial information when attempting to minimize the percentage of income generated by PCI's account. Because the financial condition of Bank of Montreal might be relevant to punitive damages, and the probative value of such evidence might outweigh the risks of unfair prejudice and confusing the jury, the Court will not categorically exclude such evidence. The Court will rule on any particular objections to specific items of evidence as those disputes arise in the context of trial.

Accordingly, the Court denies BMO Harris's motion to exclude evidence and argument pertaining to the financial condition of BMO Harris's parent company, Bank of Montreal.

## III.    Deposition Designation Procedures

The parties have filed several charts that include deposition designations, counter-designations and objections. It is possible that some of these designations and objections have been mooted or otherwise impacted by the Court's ruling in this Order and prior orders. Accordingly, the parties shall abide by the following procedure to address the use of deposition testimony at trial:

1. The parties shall meet and confer before the start of trial to narrow the scope of each party's respective deposition designations and objections in light of the Court's rulings and to resolve as many objections as possible by agreement.

2. At least 48 hours before a party intends to use deposition testimony at trial, that party must provide the Court and opposing counsel, via both email and ECF, a full copy of the deposition transcript from which deposition testimony will be offered, a brief explanation as to the purpose for which the testimony will be offered and how the testimony will be presented (*e.g.*, by video), and a list of all outstanding objections and the basis for each objection.

3. The deposition transcript provided to the Court and opposing counsel must be annotated using color-coded highlighting to reflect Plaintiff's designations, Defendant's designations, and any outstanding objections, with a brief description of the basis for each objection reflected in the margin alongside the objected-to lines of testimony.

## IV.   Miscellaneous Issues

The parties raised two additional issues at the October 6, 2022 pretrial hearing, which the Court briefly addresses now.

First, with respect to jury selection, the Court intends to empanel twelve jurors and no alternates.  *See* Fed. R. Civ. P. 48(a) (providing that a "jury must begin with at least 6 and no more than 12 members").  Each juror will participate in the verdict unless excused by the Court for good cause during trial or deliberation.  *See id.*; Fed. R. Civ. P. 47(c).

Second, no later than 7:00 p.m. each day, counsel must email opposing counsel a list of the trial exhibits that likely will be offered in evidence the following day, and counsel must confer in a good-faith effort to resolve any anticipated objections to those exhibits. The purpose of this requirement is to provide the parties with an opportunity to identify and resolve imminent evidentiary disputes, alert the Court as to any unresolved disputes in advance of each day's proceedings, and promptly resolve such disputes without unnecessarily disrupting the flow of trial or wasting the jury's time. Accordingly, this notification requirement does *not* apply to (1) exhibits that have been previously admitted in evidence by stipulation of the parties at the start of trial, (2) exhibits that have been previously admitted in evidence by the Court during trial, or (3) exhibits intended to be used solely for impeachment purposes. But this notification requirement applies to any other unadmitted exhibits that a party reasonably anticipates that it will offer in evidence the next day.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.      Plaintiff's motion to exclude evidence of investor complicity, (Dkt. 176), is **GRANTED**.

2.      Plaintiff's motion to exclude evidence of recoveries, offsets and reductions, (Dkt. 176), is **GRANTED**.

3.      Plaintiff's motion to admit evidence of criminal convictions, (Dkt. 176), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

4.      Plaintiff's motion to exclude evidence of fraud investigations, (Dkt. 176), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

5.      Defendant's motion to exclude settlement evidence, (Dkt. 194), is **DENIED AS MOOT**.

6.      Defendant's motion to exclude evidence of duties owed to investors, (Dkt. 198), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

7.      Defendant's motion to exclude evidence pertaining to an unrelated lawsuit in Wisconsin state court, (Dkt. 202), is **DENIED AS MOOT**.

8.      Defendant's motion to exclude evidence pertaining to Bank of Montreal's financial condition, (Dkt. 204), is **DENIED**.


Dated:  October 9, 2022                               s/Wilhelmina M. Wright
                                                      Wilhelmina M. Wright
                                                      United States District Judge