# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust, | Case No.: 0:19-cv-01756-WMW |
| | Hon. Wilhelmina M. Wright |
| Plaintiff, | |
| vs. | **Memorandum in Support of Plaintiff Douglas A. Kelley's Motion for Judgment as a Matter of Law on Defendant's Affirmative Defenses** |
| BMO Harris Bank N.A., as successor to M&I Marshall and Ilsley Bank, | |
| Defendant. | |

# Table of Contents

Introduction ...................................................................................................... 1

Argument ......................................................................................................... 1

I.    JMOL should enter on affirmative defenses that have already
      been rejected by the Court. ................................................................ 1

II.   JMOL should enter on BMO's affirmative defenses that are legal
      doctrines rather that affirmative defenses .......................................... 2

III.  JMOL should enter on alleged affirmative defenses that are not
      affirmative defenses but rather elements of Plaintiff's claim. ........... 3

IV.   JMOL should enter on waived defenses ............................................. 3

V.    JMOL should enter on Defense No. 3. ............................................... 4

VI.   JMOL should enter on Defense No. 5. ............................................... 7

VII.  JMOL should enter on Defense No. 22 ............................................ 10

VIII. JMOL should enter on the Thirtieth Defense .................................. 17

IX.   Judgment should enter on the equitable defenses under Rule 52 .......... 17

X.    JMOL should enter JMOL on Defense No. 23 .................................. 20

Conclusion ..................................................................................................... 20

## Introduction

The Court should enter judgment as a matter of law (JMOL) on all of BMO's non-equitable affirmative defenses under Fed. R. Civ. P. 50. No reasonable jury could conclude that those defenses have merit. The Court should also enter judgment on all of BMO's equitable defenses under Fed. R. Civ. P. 52, because it has heard the evidence and can conclude that those defenses have no merit.

## Argument

### I.    JMOL should enter on affirmative defenses that have already been rejected by the Court.

The Court should enter judgment on certain affirmative defenses that the Court has already rejected but not yet formally dismissed from the case. For example, BMO's first defense is *in pari delicto*. The Bankruptcy Court ruled that this defense is inapplicable and this Court found that BMO has not demonstrated a substantial ground for difference of opinion on this issue.[1]

BMO also has asserted affirmative defenses that Plaintiff lacks standing (second defense) and lacks of statutory or contractual authority to bring the claims (twenty-eighth defense). The bankruptcy court rejected BMO's standing

---

[1] Dkt. 70 at 12-14.

arguments, and this Court found that there was no substantial grounds for difference of opinion on this issue as well.[2]

BMO asserts set off as its twenty-sixth defense, claiming that the Plaintiff's claims are "subject to reduction or extinguishment based on amounts recovered from other parties." This theory has been rejected by the Court several times, including in its Order on Motions in Limine.[3] Similarly, the fifteenth defense is failure to mitigate. Since the only action that the Trustee could take to mitigate is to pursue other parties for offsets, this defense is closely related to the defense of offsets and is without merit for the same reasons as the twenty-six defense.

## II.    JMOL should enter on BMO's affirmative defenses that are legal doctrines rather that affirmative defenses.

BMO has asserted various affirmative defenses that are not affirmative defenses at all, but rather legal doctrines that have no application here. The Court should dismiss these. They are: 1) Failure to State a Claim (Fourth Defense); 2) Claim Preclusion/Issue Preclusion (Fourteenth Defense); 3) Failure to Plead Fraud with Particularity (Seventeenth Defense); 4) Federal Preemption (Eighteenth Defense); 5) Judicial Estoppel (Twenty-Fifth Defense); and 6) Claims already dismissed (Twenty-Ninth Defense).

---

[2] *Id.* at 5-12.

[3] Dkt. 241, at 8-11.

### III.    JMOL should enter on alleged affirmative defenses that are not affirmative defenses but rather elements of Plaintiff's claim.

In order to prove its case, Plaintiff must prove certain elements of its causes of action. In its Answer, BMO has stated that Plaintiff cannot meet certain of those elements and cast those as affirmative defenses. These are not cognizable affirmative defenses. The following defenses should be dismissed because they fall into this category and will do nothing more than generate confusion: 1) Sixth Defense – Lack of Proximate Cause; 2) Eighth Defense – Lack of Harm, Injury, or Damages; 3) Nineteenth Defense – Penalties, Attorneys fees, and Costs Unavailable; 4) Twentieth Defense – Good Faith; 5) Twenty-Fourth Defense – Speculative Damages; and 6) Twenty-Seventh Defense - Imputation.

### IV.    JMOL should enter on waived defenses.

Plaintiff's seventh defense is contractual limitation on liability. To the extent that defense is different from the contractual limitations period, it has been waived because BMO failed to include any proposed jury instructions for this defense.[4]  Similarly, Plaintiff's twenty-first defense is impossibility. This defense was also excluded from BMO's proposed jury instructions. Moreover, BMO has never articulated how or why this defense applies, and it appears

---

[4] *See* Dkt. 201.

inapplicable on its face. Both of these defenses have been waived and should be removed from the case.

## V.    JMOL should enter on Defense No. 3.

BMO's third affirmative defense is UCC preemption. BMO's principal argument is that the wire transfer provisions from Article 4A of the UCC preempt the claims. This is incorrect.

Article 4A is designed to be the "exclusive means of determining the rights, duties and liabilities of the affected parties in any situation *covered by particular provisions of the Article.*"[5] It provides that resorting to "principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent* with those stated in the Article."[6]

The sections of Article 4A that BMO has cited pertain to the wire transfer process itself. These include provisions relating to the issuance and acceptance of payment orders and governs the authorization or verification of payment orders (Minn. Stat. § 336.4A-202), the process for refunding an unauthorized or unenforceable payment order (Minn. Stat. § 336.4A-204(a)), and the liability and duty of a receiving bank regarding an unaccepted payment order (Minn. Stat. § 336.4A-212).

---

[5] Minn. Stat. § 336.4A-102 cmt. (emphasis added).

[6] *Id.* (emphasis added).

Plaintiff's claims are not displaced because the claims do not require a determination of the rights, duties, and liabilities of the parties as to authorized or unauthorized payment orders or the mechanics of the payment order process as described in those sections.[7] The nature of the Plaintiff's claims and the duties and obligations asserted fall outside of the wire transfer process.[8]

Moreover, even if Plaintiff's claims here are determined to implicate the wire transfer process, the U.C.C. would not prevent those claims. The Minnesota Court of Appeals has opined that "principles of law and equity may be applied to disputes relating to funds transfers so long as those principles do not create

---

[7] *See Koss Corp. v. Am. Ex. Co.*, 233 Ariz. 4 (Ariz. Ct. App. 2013) ("[T]he actions of the parties involved in a funds transfer that implicate the transaction itself are exclusively governed by Article 4A," but the "U.C.C. does not necessarily preempt claims based on additional actions that occur *outside* the funds transfer process or exceed the allocation of liability under Article 4A provided the application of other law is not inconsistent with Article 4A").

[8] BMO also cites the statute of repose in Article 4A, Minn. Stat. §336.4A-505. This statue illustrates how far removed the scope of Article 4A is from the causes of action asserted here. This section only precludes a customer from making untimely assertions that a bank is not entitled to retain a payment where "a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order…"

rights, duties, or liabilities inconsistent with those stated in the Article."[9] In *Hedged Inv. Partners*, the court held that the breach of contract and breach of fiduciary duty claims relating to a series of wire transfers did not create inconsistent—but, instead, additional—rights, duties, or liabilities. The court held that the contractual responsibilities, including the contractual fiduciary duties, were *not* displaced by Article 4A.[10] Similarly, even if Plaintiff's claims could be deemed to implicate the wire transfer process, which they don't, Plaintiff's claims of fraud, fiduciary duties, MUFA, and aiding and abetting concern additional, rather than inconsistent, duties and liabilities.

Additionally, Article 4A does not preempt a state law claim where, as here, it is based on a theory that the beneficiary bank accepted funds that it knew were fraudulently obtained.[11]

---

[9] *Hedged Inv. Partners, L.P. v. Norwest Bank Minn., N.A.*, 578 N.W.2d 765, 771 (Minn. Ct. App. 1998); *see also* Minn. Stat. Ann. § 336.1-103 ("[u]nless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including . . . the law relative to capacity to contract, principal and agent, estoppel, **fraud**, misrepresentation, duress, coercion, mistake, bankruptcy. . . supplement its provisions.").

[10] *Id.*

[11] *See Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1276, 1279 (11th Cir. 2003) ("It could hardly have been the intent of the drafters to enable a party to succeed in engaging in fraudulent activity, so long as it complied with the provisions of Article 4A."); *see also Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 749 n.3 (N.C. 2012) (quoting *Regions Bank*)).

Defendant's authority to the contrary is unavailing. *ReAmerica, S.A. v. Wells Fargo Bank Int'l*,[12] is distinguishable because the parties entered into a wire transfer agreement stating that the parties' rights and obligations were governed by Article 4A; the Plaintiff asserted a wrongful debit claim that fell plainly within the language of Article 4A; and the common law negligence claim was based on facts specifically addressed in the particular provisions of Article 4A. *Impulse Trading, Inc. v. Norwest Bank Minn., N.A.*,[13] asserted a U.C.C. claim, lacked the benefit of any Minnesota case considering the issue of U.C.C. Article 4A preemption (noting that there was only one decision on the issue nationwide at the time) and asserted common law claims different from those here. This Court, in contrast, has the benefit of persuasive authority of the Minnesota Court of Appeals in *Hedged Inv. Partners*, and should follow its rule and enter judgment for the Plaintiff on this count.[14]

## VI.    JMOL should enter on Defense No. 5.

BMO's Fifth Defense is based upon the statute of limitations.

---

[12] 577 F.3d 102, 106-07 (2d Cir. 2009).

[13] 907 F. Supp. 1284, 1287–88 (D. Minn. 1995).

[14] BMO also asserts UCC preemption concerning checks. The checks are *de minimus* compared to the billions and billions of dollars of wire transfers. To the extent they are relevant, the Plaintiff relies upon the arguments asserted in its opposition to BMO's JMOL.

The Trustee's claims for violation of the Minnesota Uniform Fiduciaries Act, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty have a six-year statute of limitations. This means the Trustee must have commenced his lawsuit asserting these claims within six years of the date the claims accrued. The Trustee's lawsuit was commenced when Defendant Bank was served with the summons on November 15, 2012. Each of these claims accrued when the relevant facts supporting each element of the claim came into existence, including damages. The facts supporting the element of damages come into existence when some non-speculative, compensable damage has occurred as a result of Defendant Bank's wrongful acts.[15]

Here, the Court has ruled that the Trustee's damages are measured by the amount investors were owed at the time of the Bankruptcy filing, which occurred in October, 2008.[16] Moreover, Mr. Martens testified that no investors lost money until the promissory notes that were executed in December 5, 2007

---

[15] Minn. Stat. § 541.05 (six-year statute of limitations); Minn. R. Civ. P. 3.01 (service of summons commences action); Acknowledgement of Service, dated Nov. 15, 2012, Case No. 12-04288 (Bankr. D. Minn.), ECO No. 3, filed Nov. 16, 2012; *Partners v. Hillstrom*, No. 27-CV-20-7507, 2020 WL 13269218, at *13 (Minn. Dist. Ct. Nov. 13, 2020) (limitations period for aiding and abetting same as underlying tort); *Hansen v. U. S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327-30 (Minn. 2019) (accrual); *cf. Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 916 N.W.2d 491, 496 (Minn. 2018) (accrual when operative facts come into existence).

[16] Bankruptcy Court File No. 08-45257.

came due.[17] Accordingly, the statute of limitations for these causes of action could not possibly have passed before the claim was filed.

The Trustee's claim for aiding and abetting fraud has a six-year statute of limitations. This means the Trustee must have commenced its lawsuit asserting a claim for aiding and abetting fraud within six years of the date the claim accrued. The Trustee's lawsuit was commenced when Defendant Bank was served with the summons on November 15, 2012. The Plaintiff's claim for aiding and abetting fraud accrued when the Plaintiff discovered, or by reasonable diligence should have discovered, the facts necessary to support the claim. Reasonable diligence requires a party to investigate when it is aware of facts that might constitute

---

[17] Tr. 2453:11-17; Tr. 3239:11-16 (BMO expert admitting that all investors were paid or rolled their notes).

possible cause of action for aiding and abetting fraud. But a party is under no duty to investigate a fraud that it has no reason to suspect.[18]

Here, the trustee was not even appointed until 2008, so he certainly had no reason to suspect fraud before then. Thus, the statute of limitations for aiding and abetting fraud could not passed before filing either.[19]

## VII.    JMOL should enter on Defense No. 22.

BMO's Defense No. 22 asserts that the claims are barred because the action was not filed before the expiration of limitations periods stated in applicable contracts. BMO has offered evidence of two such contracts – the Depository agreement and the Wire Transfer agreement.

---

[18] Minn. Stat. § 541.05 (six-year statute of limitations); Minn. R. Civ. P. 3.01 (service of summons commences action); *Partners v. Hillstrom*, No. 27-CV-20-7507, 2020 WL 13269218, at *13 (Minn. Dist. Ct. Nov. 13, 2020) (limitations period for aiding and abetting same as underlying tort); *Toombs v. Daniels,* 361 N.W.2d 801, 809 (Minn. 1985) (accrual when facts constituting fraud discovered or should have been discovered); *Blue Cross & Blue Shield of N. Carolina v. Rite Aid Corp.*, 519 F. Supp. 3d 522, 547 (D. Minn. 2021) (same); *Cmty. Fin. Grp., Inc. v. Main St. Otsego, LLC*, No. A19-1805, 2020 WL 5107290, at *4 (Minn. Ct. App. Aug. 31, 2020) (citing Minn. Stat. § 541.05, subd. 1(6)(accrual when plaintiff discovers the facts necessary to support claim); *Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 685 (Minn. Ct. App. 2010) (duty to investigate when aware but not when no reason to suspect); *TCF Nat. Bank v. Mkt. Intel., Inc.*, 812 F.3d 701, 707–08 (8th Cir. 2016) (plaintiff's burden on reasonable diligence); Acknowledgement of Service, dated Nov. 15, 2012, Case No. 12-04288 (Bankr. D. Minn.), ECO No. 3, filed Nov. 16, 2012.

[19] Moreover, he could not have discovered the facts supporting damages until less than six years before the case was filed for the same reasons as those set forth in the preceding paragraph.

The Depository Agreement provides:

> that the Depositor agrees to timely review all account statements and to notify the Bank within 30 days of the date the Bank mailed or made statements or items available to the Depositor of any unauthorized or missing signature or alteration on a check, or within 60 days in the case of unauthorized or missing endorsements, improper charges or other account problems. Depositor is precluded from commencing legal action against Bank unless Depositor has given Bank notice as provided above and also initiated legal action within 180 days after Bank mailed or made statements or items available to Depositor. Notwithstanding these limitations, for certain claims relating to a substitute check you may have a longer period under applicable law to notify us of a claim or to commence a legal action or an arbitration proceeding against us.[20]

It is the Court's duty to interpret the agreement and to determine whether the agreement is unenforceable.[21]

The provision only applies to claims that the Trustee has not asserted here, namely claims based on unauthorized or missing signatures or alterations on a check, unauthorized or missing endorsements, improper bank charges, or other similar account problems. This is the unambiguous reading of the provision,

---

[20] DX10014.

[21] *See Medtronic, Inc. v. Hedemark*, No. A08-0987, 2009 WL 511760, *3 (Minn. Ct. App. March 3, 2009) ("The enforceability of a contract provision presents a question of law . . . ."); *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 92, 93 (Minn. 2006) (whether enforcement of contract would be contrary to public policy was question of law).

which must be strictly construed against the party invoking it, *i.e.*, against Defendant.[22] The structure and plain language of the provision support this conclusion: The paragraph containing the limitations period concerns the account problems listed above, and requires the Depositor to give notice to the Bank of these account problems. The limitations period clause precludes commencing legal action unless notice "as provided above" is given. This, coupled with the fact that the limitations period is found in the paragraph relating to the account problems listed above, demonstrates that the limitations period only applies to claims based on these account problems. The Trustee, however, asserts no claims based on these account problems.

Even if the provision did apply to the Trustee's claims, which it doesn't, the the provision is irrelevant, unenforceable, and void. The Depository Agreement is irrelevant because it was executed in 2008, after the conduct giving rise to Plaintiff's claims. The provision is thus of no effect as to any claims or conduct prior to 2008.

The Depository Agreement is also unenforceable and void for several reasons. First, because the depository agreement was entered into between PCI and Defendant for the purpose of perpetrating a fraud on investors in addition to

---

[22] *Olmsted Med. Ctr. v. Cont'l Cas. Co.*, No. CV 21-1309 (MJD/BRT), 2022 WL 126336, at *4 (D. Minn. Jan. 13, 2022).

PCI, it is void on public policy grounds.[23] Second, if the Court were to find that the Depository Agreement could apply to claims based on fraudulent and other conduct that occurred prior to the Agreement's existence (it should not), it would nevertheless be unreasonable because fraud claims accrue upon *discovery* of the facts constituting the fraud, yet the provision bars claims that *occurred* more than 180 days before bringing suit. The underlying fraud only came to light in 2008, and the Trustee was appointed thereafter. Thus, the contractual limitations period would bar the aiding and abetting fraud claim before Plaintiff could even discover its existence, and in doing so impermissibly alter the accrual date for Plaintiff's claim.[24] Finally, the contractual provision does not apply to the MUFA claim, because a party cannot limit its liability under the Uniform Fiduciaries Act

---

[23] *Torpey v. Murray*, 101 N.W. 609, 610 (Minn. 1904); *Horbach v. Coyle*, 2 F.2d 702, 706, 707 (8th Cir. 1924).

[24] *Digital Angel Corp. v. Corporativo SCM, S.A. de C.V.,* No. CIV. 05-1060 ADM/JJG, 2006 WL 1228859, at *4 (D. Minn. May 8, 2006) (finding clause did not apply to fraud in inducement claim because it was unreasonable insofar as it "essentially bar[red] any cause of action that *occurred* more than two years ago, meaning that Defendant's cause of action could be barred long before Defendant even discovers its existence").

by contract.[25] In light of the foregoing, judgment should enter on this defense to

the extent it relates to the Depository Agreement.

The Wire Transfer agreement provides as follows:

> Customer agrees to notify Bank of any unauthorized payment order
> or amended payment order, any payment to a beneficiary not
> intended by Customer, any payment in an amount greater than the
> amount intended by Customer and any payment order duplicative
> of a payment order previously sent by the Customer, along with the
> relevant facts relating to the error, within 20 days after the Customer
> receives notice from Bank that the payment order was accepted by
> Bank or that an Account was debited with respect to the order. The
> Customer shall be liable to the Bank for any loss Bank incurs as a
> result of the Customer's failure to discover the error and notify
> Bank. This duly on the part of the Customer to discover errors and
> notify the Bank shall also apply to amendments to payment orders.
> Bank shall not be liable for indirect, incidental, or consequential
> damages, including loss of earnings, or attorneys' fees. All claims
> arising by reason of any transfer must be submitted to Bank in
> writing within one year after the Customer received notification
> from Bank identifying the order. Any claims not so submitted shall
> be void.[26]

This provision only applies to claims that the Trustee has not asserted

here, namely claims concerning transfer errors such as payment or amended

payment orders by an unauthorized person as defined in the Agreement, paying

the wrong beneficiary, paying an amount greater than ordered, and paying one

---

[25] *Master Chem. Corp. v. Inkrott*, 55 Ohio St. 3d 23, 28 563 N.E.2d 26, 31 (1990)
(bank cannot absolve itself of protections provided by the Uniform Fiduciaries
Act).

[26] P 356.

order twice. This is the fairest reading of the provision, which must be strictly construed against the party invoking it, *i.e.*, against Defendant.[27] The structure and plain language of the provision support this conclusion: Although the contractual limitation provision refers to "[a]ll claims arising by reason of any transfer," the paragraph containing the limitations period concerns the transfer errors listed above. And the paragraph repeatedly refers to transfer errors.[28] This demonstrates that the limitations period applies to claims and transfers concerning transfer errors of the variety listed in the paragraph.[29] The Trustee, however, asserts no claims based on these transfer errors. Moreover, even if the provision were construed broadly to mean "any claims," even those unrelated to the specified transfer errors, this provision is still inapplicable, because Plaintiff's claims do not arise by reason of a transfer. It is not the fact of Defendant's transfers that gives rise to Plaintiff's claims, but instead Defendant's actions and

---

[27] *Olmsted Med. Ctr. v. Cont'l Cas. Co.*, No. CV 21-1309 (MJD/BRT), 2022 WL 126336, at *4 (D. Minn. Jan. 13, 2022).

[28] *See* ¶ 8 ("facts relating to the error"; "failure to discover the error"; "duty . . . to discover errors").

[29] *See* 11 Williston on Contracts § 32:10 (4th ed.) (specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate); *Wayne v. MasterShield, Inc.*, 597 N.W.2d 917, 920 (Minn. Ct. App. 1999) (applying principal to "any person" language).

inactions that have resulted in Defendant breaching fiduciary duties, violating

MUFA, and knowingly providing substantial assistance to others in committing

fraud and breaches of fiduciary duty.

Even if the provision did apply to the Trustee's claims, which it does not,

the provision is unenforceable and void for several reasons. First, because the

wire transfer agreement was entered into between PCI and Defendant for the

purpose of perpetrating a fraud on investors in addition to PCI, it is void on

public policy grounds.[30] Second, it is unreasonable because fraud claims accrue

upon *discovery* of the facts constituting the fraud, yet the provision bars claims

that *occurred* more than one year before bringing suit. The underlying fraud only

came to light in 2008, and the Trustee was appointed thereafter. Thus, the

contractual limitations period would bar the aiding and abetting fraud claim

long before Plaintiff could even discover its existence, and in doing so

impermissibly alter the accrual date for Plaintiff's claim.[31] Finally, the contractual

---

[30] *Torpey v. Murray*, 101 N.W. 609, 610 (Minn. 1904); *Horbach v. Coyle*, 2 F.2d 702, 706, 707 (8th Cir. 1924).

[31] *Digital Angel Corp. v. Corporativo SCM, S.A. de C.V.,* No. CIV. 05-1060 ADM/JJG, 2006 WL 1228859, at *4 (D. Minn. May 8, 2006) (finding clause did not apply to fraud in inducement claim because it was unreasonable insofar as it "essentially bar[red] any cause of action that *occurred* more than two years ago, meaning that Defendant's cause of action could be barred long before Defendant even discovers its existence").

provision does not apply to the MUFA claim, because a party cannot limit its liability under the Uniform Fiduciaries Act by contract.[32] In light of the foregoing, judgment should enter on this defense to the extent it relates to the Wire Transfer Agreement as well.

## VIII.  JMOL should enter on the Thirtieth Defense.

The thirtieth defense is a catch-all provision where BMO reserves the right to assert other defenses. Since none have been identified, this defense should be dismissed.

## IX.    Judgment should enter on the equitable defenses under Rule 52.

BMO asserts the following defenses: 1) ninth defense (unclean hands); 2) tenth defense (laches); 3) eleventh defense (equitable estoppel); 4) twelfth defense (waiver); 5) thirteenth defense (acquiescence); and 6) sixteenth defense (unjust enrichment). These are equitable defenses.[33] Determination of equitable defenses is a matter for the Court.[34] Under Fed. R. Civ. P. 52, the Court can enter judgment

---

[32] *Master Chem. Corp. v. Inkrott*, 55 Ohio St. 3d 23, 28 563 N.E.2d 26, 31 (1990) (bank cannot absolve itself of protections provided by the Uniform Fiduciaries Act).

[33] *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 343 (8th Cir. 2018); *Schumacher v. Swanson*, No. A16-1224, 2017 WL 1436078, at *4 (Minn. Ct. App. Apr. 24, 2017); *Christopherson v. Alpha Serv. Indus., Inc.*, No. A19-0064, 2019 WL 6461303, at *4 (Minn. Ct. App. Dec. 2, 2019).

[34] *Sturgis*, 908 F.3d at 343.

on non-jury issues once taking of the evidence has concluded.

The Court's ruling that the *in pari delicto* defense does not apply "in light of PCI's status as a receivership entity"[35] also precludes the application of the these other equitable defenses. These defenses do not apply here because Plaintiff's appointment as a receiver eliminated PCI as a target for BMO's equitable defenses.

As the Court has held, "when a receiver has been appointed for a corporation, the wrongdoer (the corporation) is removed from the picture and, hence, *in pari delicto* does not apply."[36] In so holding, the Court relied on Minnesota Supreme Court cases explaining that this principle negates *all* equitable defenses that may be asserted against a receivership entity.[37] Under that authority, "when an act has been done in fraud of the rights of the creditors of the insolvent corporation the receiver may sue for their benefit, even though the defense set up might be valid as against the corporation itself."[38] Indeed, the

---

[35] Order Denying BMO Appeal, ECF 70 at 12.

[36] ECF 70 at 12 (quoting *Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1129 (D. Minn. 2012)).

[37] *Id.* (citing *German Am. Fin. Corp. v. Merchants & Mfrs. State Bank of Minneapolis*, 225 N.W. 891, 893 (Minn. 1929), and *Magnusson v. Am. Allied Ins. Co.*, 189 N.W.2d 28, 33 (Minn. 1971)).

[38] *German Am. Fin. Corp.*, 225 N.W. at 893.

Supreme Court in *Magnusson* applied this principle to reject an equitable defense based on the insolvent corporation's consent: "Even assuming that this defense would be available against [the corporation], it cannot constitute a defense against the receiver in this case. The receiver represents the rights of creditors and is not bound by the fraudulent acts of a former officer of the corporation."[39] As the Ninth Circuit put it, summarizing a similar principle of California law, "[e]quitable defenses are inapplicable against a receiver because a receiver is acting for third parties and was not privy to the insolvent institution's inequitable conduct."[40] Whatever equitable defenses BMO may have had against PCI evaporated the moment this Court appointed Plaintiff as a receiver.

Even if these defenses were available against Plaintiff, they cannot overcome the established principle that PCI cannot itself be charged with knowledge of—and thus could not acquiesce, consent to, ratify, or waive objection to—the fraudulent acts of its principals.[41] As federal courts have recognized in other contexts, "the knowledge and effect of the Ponzi scheme principal's fraudulent transfers may not be attributed to his robotic corporate

---

[39] 189 N.W.2d at 33; *see also Bonhiver v. Graff*, 248 N.W.2d 291, 296 (Minn. 1976).

[40] *S.E.C. v. Am. Capital Investments, Inc.*, 99 F.3d 1146, 1996 WL 608527, at *4 (9th Cir. 1996) (citation omitted).

[41] *See Steigerwalt*, 244 N.W. at 414.

tools, or prevent a receiver from suing on behalf of those entities."[42]

Moreover, these defenses are designed to apply to a party. PCI is not a party to this case, and its knowledge and conduct are not relevant to these affirmative defenses.

Because BMO has offered no relevant evidence relating to the conduct of the Trustee, judgment should enter on these affirmative defenses.

## X.     JMOL should enter JMOL on Defense No. 23.

BMO's Defense No. 23 is consent and ratification. Although not an equitable defense, the principles cited in the cases discussed in the prior section should apply here, namely that: 1) the Trustee is not bound by the fraudulent acts of a former officer of the corporation; and 2) the Trustee cannot itself be charged with knowledge of—and thus could not consent to —the fraudulent acts of its principals. Since BMO has not offered any evidence that the *Trustee* knowingly consented or ratified BMO's conduct, judgment should enter on this claim.

## Conclusion

For the reasons set forth herein, Plaintiff's motion should be granted.

---

[42] *See Janvey v. Democratic Sen. Campaign Comm., Inc.*, 712 F.3d 185, 192 (5th Cir. 2013) (citing *Scholes v. Lehmann*, 56 F.3d 750, 753-55 (7th Cir. 1995)).

Respectfully submitted,

Dated: October 28, 2022                    By: */s/ Michael A. Collyard*
                                           Michael A. Collyard (#302569)
                                           David E. Marder (*admitted pro hac vice*)
                                           Peter C. Ihrig (#0390392)
                                           Morgia D. Holmes (*admitted pro hac vice*)
                                           ROBINS KAPLAN LLP
                                           800 LaSalle Avenue, Suite 2800
                                           Minneapolis, MN 55402–2015
                                           Telephone: 612.349.8500
                                           Facsimile: 612.339.4181
                                           mcollyard@robinskaplan.com
                                           dmarder@robinskaplan.com
                                           pihrig@robinskaplan.com
                                           mholmes@robinskaplan.com

                                           Joseph W. Anthony (#2872)
                                           Joseph R. Richie (#400615)
                                           Ryan M. Lawrence (#399135)
                                           ANTHONY OSTLUND LOUWAGIE
                                           DRESSEN BOYLAN P.A.
                                           90 South 7th Street, Suite 3600
                                           Minneapolis, MN 55402
                                           Telephone: 612.349.6969
                                           Facsimile: 612.349.6996
                                           janthony@anthonyostlund.com
                                           jrichie@anthonyostlund.com
                                           rlawrence@anthonyostlund.com

                                           ***Counsel for Plaintiff***