UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust,

    Plaintiff,

v.

BMO Harris Bank N.A., as successor to M&I Marshall and Ilsley Bank,

    Defendant.

Case No.: 0:19-cv-01756-WMW

Hon. Wilhelmina M. Wright

**MEMORANDUM OF LAW IN SUPPORT OF
BMO HARRIS BANK N.A.'S RENEWED RULE 50(a) MOTION FOR
JUDGMENT AS A MATTER OF LAW**

# TABLE OF CONTENTS

                                                                **Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.     THE ACTUAL-KNOWLEDGE CLAIMS FAIL AS A MATTER OF LAW ................................................................................................................ 2

II.    THE MUFA BAD-FAITH CLAIM ALSO FAILS AS A MATTER OF LAW ................................................................................................................ 3

III.   THE BREACH-OF-FIDUCIARY-DUTY CLAIM FAILS BECAUSE M&I DID NOT BREACH ANY FIDUCIARY DUTY TO PCI ............................ 4

IV.   THE EVIDENCE DOES NOT ENTITLE PLAINTIFF TO PUNITIVE DAMAGES ....................................................................................................... 4

V.    ADDITIONAL GROUNDS WARRANT JUDGMENT FOR BMO HARRIS ........................................................................................................... 5

CONCLUSION ........................................................................................................ 10

i

Defendant BMO Harris Bank N.A. ("BMO Harris"), as successor to M&I Marshall and Ilsley Bank ("M&I"), submits this memorandum in support of its Renewed Rule 50(a) Motion for Judgment as a Matter of Law.

## INTRODUCTION

BMO Harris's original Rule 50(a) motion and brief (Docs. 288, 289) showed that the trial evidence at the close of Plaintiff's case was legally insufficient to support any of Plaintiff's claims and also established several of BMO Harris's defenses. Now that both sides have rested, the grounds for entering judgment in BMO Harris's favor are even stronger. Nothing introduced since Plaintiff rested defeats any of the original Rule 50(a) arguments for judgment, which BMO Harris incorporates by reference into this brief. And the new evidence adds significant support to those arguments.

With that new evidence, it is even more apparent that judgment should be entered for BMO Harris on the aiding-and-abetting and MUFA claims that require "actual knowledge," Counts III, IV, and (in part) I. The same is true for the "bad faith" MUFA claim under Count I, given that the new evidence—and a judicial admission by Plaintiff's counsel—confirms the honesty of M&I employees. Witnesses also confirmed that M&I did not breach any fiduciary duties to PCI under the DACAs, defeating Count II. And there is now even more evidence that M&I never acted with the malicious and deliberate disregard for PCI's rights required for punitive damages. Beyond that, the new evidence further supports BMO Harris's other arguments for judgment, which remain unrebutted.

Judgment as a matter of law should be entered for BMO Harris.

1

# ARGUMENT

## I. THE ACTUAL-KNOWLEDGE CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff asserts three claims that require proof that an M&I employee *actually knew* that PCI management was engaged in frauds or breaches of fiduciary duties: the aiding-abetting claims of Counts III and IV and the MUFA actual-knowledge claim in Count I.[1] As BMO Harris's initial Rule 50(a) brief detailed, Plaintiff cannot prevail on any of those claims.[2] Plaintiff admitted that he does not contend that any M&I employee had actual knowledge of such misconduct.[3] And there is no evidence that could support a finding of actual knowledge in any event.[4]

Now, even more evidence of M&I's unawareness of PCI-management wrongdoing has come to light. That evidence includes testimony from Deanna Coleman that, to keep M&I in the dark, she lied to M&I personnel when they asked questions.[5] It also includes more unrebutted denials of knowledge and suspicion by M&I employees.[6] Judgment for BMO is warranted on all actual-knowledge claims.

---

[1] Doc. 188 at 11 (Trial Br.); *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714-15 (8th Cir. 2019); Minn. Stat. § 520.08.
[2] Doc. 289 at 6-8 (JMOL Br.).
[3] 10/20/22 Tr. 1951:2-5.
[4] Doc. 289 at 6 n.11 (JMOL Br.).
[5] 10/26/22 Tr. 2798:15-2799:25.
[6] 10/25/22 Tr. 2658:3-2659:1, 2677:20-22, 2680:20-23 (Crain); 10/27/22 Tr. 3060:16-21 (Maltsch); *see also* 10/28/22 Tr. 3421:4-7 (Grice saw no evidence that M&I had information that there would be direct retailer payments).

## II.    THE MUFA BAD-FAITH CLAIM ALSO FAILS AS A MATTER OF LAW.

The other MUFA claim in Count I requires Plaintiff to show that an M&I employee knew facts that made processing transfers out of the PCI Account bad faith.[7] As BMO Harris's initial Rule 50(a) brief described, Plaintiff cannot make that showing because there is no evidence that any M&I employee acted dishonestly.[8] There continues to be no such evidence. And, now, Deanna Coleman has testified that PCI did not receive special treatment from M&I, something Jeanne Crain and Charles Grice confirmed.[9] Indeed, questioning by Plaintiff's counsel during BMO Harris's case confirms that Plaintiff continues to pursue a negligence theory of liability—what M&I could or should have done—that cannot establish bad faith.

In addition, Plaintiff's counsel successfully objected to Fed. R. Evid. 608 character-for-truthfulness testimony from Ms. Crain about Chris Flynn by representing that Mr. Flynn's "honesty or his character for truthfulness has not been put at issue."[10] As a result, fundamental principles of judicial estoppel now preclude Plaintiff from contending that Mr. Flynn acted dishonestly.[11] Judgment for BMO on the MUFA bad-faith claim is proper.

---

[7]   Doc. 188 at 11 (Trial Br.); Minn. Stat. § 520.08.
[8]   Doc. 289 at 8-9 (JMOL Br.); *see Rheinberger v. First Nat'l Bank of St. Paul*, 150 N.W.2d 37, 40-42 (Minn. 1967) ("Bad faith does not exist if the bank was acting honestly.").
[9]   10/26/22 Tr. 2801:5-10, 2822:11-16, 2863:14-16 (Coleman); 10/25/22 Tr. 2678:3-24 (Crain); 10/28/22 Tr. 3446:24-3447:5 (Grice).
[10]  10/25/22 Tr. 2612:7-2614:2 (Crain).
[11]  *Gustafson v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 29 F.4th 406, 410-411 (8th Cir. 2022) ("Whenever a party takes a position in a legal proceeding and succeeds in maintaining that position, the doctrine of judicial estoppel operates to prevent that party from later assuming a contrary position.").

### III. THE BREACH-OF-FIDUCIARY-DUTY CLAIM FAILS BECAUSE M&I DID NOT BREACH ANY FIDUCIARY DUTY TO PCI.

As for the breach-of-fiduciary-duty claim in Count II, it requires Plaintiff to prove that M&I breached a fiduciary duty arising out of the DACAs.[12] As BMO Harris's initial Rule 50(a) brief showed, M&I cannot be liable for breaching any DACA-related duty because there is no evidence that those duties ever arose.[13] The triggering events for those duties—receipt of a transaction list for the Palm Beach DACA and receipt of transaction proceeds for the Ritchie and Interlachen DACAs—never occurred.[14] Additional evidence from BMO Harris's case confirms that fact.[15] Judgment for BMO on Count II thus continues to be appropriate.

### IV. THE EVIDENCE DOES NOT ENTITLE PLAINTIFF TO PUNITIVE DAMAGES.

To obtain punitive damages, Plaintiff (among other things) must present clear and convincing evidence that M&I acted in malicious and deliberate disregard of PCI's rights and must satisfy the statutory requirements for corporate principal liability. As BMO Harris's initial Rule 50(a) brief demonstrated, Plaintiff has done neither of those things.[16] The evidence introduced both before Plaintiff closed and afterward shows that M&I actively sought ways to prevent any dangers associated with its services, which refutes the

---

[12] Doc. 188 at 11 (Trial Br.); Doc. 4-14 at 9-10, 15-16 (MTD Order); Doc. 201 at 179-81, 189-91 (Jury Instr.).
[13] Doc. 289 at 9-10 (JMOL Br.).
[14] *Id.* at 10 & nn. 20-21.
[15] 10/25/22 Tr. 2607:21-2612:1 (Crain testimony about need for and lack of transaction list under Palm Beach DACA); 10/26/22 Tr. 2807:21-2808:2 (Coleman testimony about not providing instructions triggering M&I duties to transfer funds).
[16] Doc. 289 at 10-12 (JMOL Br.).

required state of mind.[17] Likewise, there remains no evidence that that M&I (or BMO Harris) authorized any culpable conduct, that M&I deliberately disregarded a high probability that any M&I employee was unfit, or that any act warranting punitive damages was done, ratified, or approved by a managerial employee with policymaking authority.[18]

## V. ADDITIONAL GROUNDS WARRANT JUDGMENT FOR BMO HARRIS.

BMO Harris's original Rule 50(a) brief details many other grounds for entering judgment as a matter of law in favor of BMO Harris.[19] The evidence introduced since the close of Plaintiff's case does much to strengthen and nothing to weaken those grounds. BMO Harris thus renews each of its original Rule 50(a) arguments based on the entire trial record, incorporates those arguments into this brief by reference, and respectfully submits that each warrants judgment as a matter of law for BMO Harris based on the entire trial record. In the interest of brevity and to avoid unnecessary briefing, BMO Harris does not specifically detail each argument in this brief, but concisely highlights some of the additional evidence introduced since Plaintiff closed that strengthens the argument for judgment as a matter of law.

**Aiding-and-Abetting Claims.** Among the additional reasons that Plaintiff's aiding-and-abetting claims (Counts III and IV) fail as a matter of law is the absence of evidence showing substantial assistance or proximate causation. The evidence does not show an

---

[17] *Id.* at 11 & n.25; 10/27/22 Tr. 2999:24-3000:13, 3025:8-3027:5 (Maltsch describing efforts to enhance BSA/AML program); 10/28/22 Tr. 3358:15-22, 3372:11-3373:22, 3377:22-3378:8 (Grice doing same).
[18] Doc. 289 at 12 (JMOL Br.).
[19] Doc. 289 at 13-42 (JMOL Br.).

affirmative step by M&I, taken with knowledge of a wrongful purpose, that caused the tortious actions of PCI management and the purported harm to PCI.[20] Indeed, during BMO Harris's case, additional evidence came in refuting substantial assistance and causation.

Deanna Coleman, Jeanne Crain, and Charles Grice affirmed that PCI did not receive special treatment from M&I.[21] Those witnesses also offered testimony about the greater disclosures that come with establishing a lending relationship or otherwise adding services and products, which confirm that no bank employee with knowledge of the wrongdoing by PCI management would have tried to establish a lending or otherwise broader relationship with PCI (which M&I employees did).[22] And several witnesses confirmed that M&I and its employees had no financial incentive to aid PCI-management misconduct.[23]

Beyond that, Karl Jarek explained that PCI's fraud, insolvency, and inability to repay debtors started well before PCI began banking with M&I.[24] Jarek and Coleman likewise confirmed PCI's opportunity and ability to use other banks for the fraud.[25] Coleman further acknowledged that, if M&I bankers had asked questions, she would have

---

[20] Doc. 289 at 14-19 (JMOL Br.); *Varga v. U.S. Bank Nat'l Ass'n*, 952 F. Supp. 2d 850, 859-61 (D. Minn. 2013), *aff'd*, 764 F.3d 833 (8th Cir. 2014).
[21] 10/26/22 Tr. 2801:5-10, 2822:11-16, 2863:14-16 (Coleman); 10/25/22 Tr. 2678:3-24 (Crain); 10/28/22 Tr. 3446:24-3447:5 (Grice).
[22] 10/26/22 Tr. 2805:20-25, 2806:11-19 (Coleman); 10/25/22 Tr. 2574:13-23 (Crain); 10/28/22 Tr. 3444:20-3446:7 (Grice); Doc. 289 at 13 n.46 (JMOL Br.).
[23] 10/25/22 Tr. 2555:6-24, 2567:12-14, 2574:2-5, 2634:4-9 (Crain); 10/26/22 Tr. 2791:7-19 (Coleman); 10/27/22 Tr. 3159:12-18, 3201:9-3207:4 (Jarek) ; 10/28/22 Tr. 3447:6-3448:10 (Grice).
[24] 10/27/22 Tr. 3169:5-3172:13; *see also* 10/26/22 Tr. 2784:20-2785:1, 2855:6-8 (Coleman: fraud started by 1994).
[25] 10/27/22 Tr. 3185:13-3191:6 (Jarek); 10/26/22 Tr. 2792:22-25, 2822:8-2823:13, 2855:9-11 (Coleman).

lied to them.[26] And Sandy Indahl explained how PCI management could tell plausible lies about why payments into the PCI Account came from Enchanted and Nationwide rather than retailers.[27] All of this evidence further establishes that nothing M&I did amounted to substantial assistance or proximate cause.[28]

**Breach-of-Fiduciary-Duty Claim.** One of the additional reasons Plaintiff's breach-of-fiduciary-duty claim (Count II) fails is that there is no evidence that M&I owed PCI any fiduciary duties arising out of the DACAs. All of M&I's duties under the agreements were ministerial, non-discretionary, and otherwise inconsistent with an M&I-PCI fiduciary relationship.[29] Further support for that conclusion comes from Jeanne Crain's testimony. She confirmed that M&I's duty under the Palm Beach DACA was simply to follow the agreement's directions for moving money upon receipt of a transaction list.[30] And she described the indemnification provision of the Palm Beach DACA, which is contrary to a fiduciary relationship.[31]

Another of the additional grounds for judgment on the breach-of-fiduciary-duty claim is Plaintiff's failure to prove causation, in at least two respects. First, Plaintiff's basic theory that M&I should have asked PCI for transaction lists not only necessarily implies the lack of a fiduciary relationship (because PCI, not M&I, had more information) but also

---

[26] 10/26/22 Tr. 2798:15-2799:25, 2859:2-2860:12.
[27] 10/27/22 Tr. 3275:19-3276:18, 3282:6-14.
[28] *See, e.g.*, *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715-20 (8th Cir. 2019); *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 839-43 (8th Cir. 2014).
[29] Doc. 289 at 22-25 (JMOL Br.).
[30] 10/25/22 Tr. at 2600:13-25.
[31] 10/25/22 Tr. at 2605:9-25, 2608:4-2611:2; *Fillmore E. BS Fin. Sub. LLC v. Capmark Bank*, No. 11-cv-4491, 2013 WL 1294519, at *14 (S.D.N.Y. Mar. 30, 2013).

7

defeats any claim of causation in light of Deanna Coleman's testimony that if M&I had asked for transaction lists, she would have simply made them up.[32]

Second, Plaintiff has failed to prove that a breach of DACA duties by M&I caused PCI any damages, given (a) what PCI already owed investors by the time of the first DACA (February 2008), and (b) the lack of evidence that PCI's debts to Palm Beach, Ritchie, or Interlachen increased after the DACAs.[33] Karl Jarek's testimony provides more support for those arguments by confirming that PCI owed billions before February 2008 and that Palm Beach was a net winner over the last nine months of the Ponzi scheme.[34] Jarek also gave unrebutted testimony that payments to PCI insiders after February 2008 were $0.[35]

**Contractual Limitations Period.** BMO Harris's initial Rule 50(a) brief showed that provisions in Deposit Account and Wire Transfer Agreements between PCI and M&I required that any suit like this one be brought long before Plaintiff commenced this action, warranting judgment for BMO Harris.[36] Testimony from Deanna Coleman supports that argument by confirming PCI's receipt of bank statements every month and the fact that Coleman never raised an objection about wire or other transactions.[37]

**Statute of Limitations.** BMO Harris's original Rule 50(a) motion showed that the six-year statutes of limitations applicable to Plaintiff's claims bar liability for conduct

---

[32] 10/26/22 Tr. 2862:20-22.
[33] Doc. 289 at 25-26 (JMOL Br.).
[34] 10/27/22 Tr. 3173:3-13, 3180:2-3181:8.
[35] 10/27/22 Tr. at 3215:22-3216:6.
[36] Doc. 289 at 26-28 (JMOL Br.).
[37] 10/26/22 Tr. 2824:24-2828:3.

8

predating November 2006.[38] Further support for that conclusion comes from Karl Jarek's testimony that PCI's inability to repay creditors—the purported harm to PCI—occurred throughout the Ponzi scheme as PCI's unpayable debt to investors grew.[39] That testimony thus refutes Plaintiff's argument that damages did not occur, and his claim thus did not accrue, until the Ponzi scheme collapsed in 2008.[40]

**Compensatory Damages.** Plaintiff's damages expert, Ted Martens, testified to a damages figure of $1,925,748,160, but he provided inadequate factual support for it.[41] Among the factual deficiencies in Mr. Martens's damages testimony is his failure to provide any factual basis for the jury to conclude that his damages figure measures harm to PCI. To be sure, he said that the figure reflects what PCI owed eight creditors.[42] But he never explained, as a factual matter, how an unrepaid loan is injury to the borrower (as opposed to the lender).[43] Now, Karl Jarek has explained that "as a basic accounting premise, a loan that's on the books of PCI that isn't repaid is not a measure of harm because PCI still had use of the cash and it just hasn't repaid the loan."[44]

Another factual deficiency of Mr. Martens's testimony is that he makes no effort to tie his damages figure to any wrongful conduct by M&I. Stated differently, Mr. Martens simply cumulates net cash losses over the 2002-2008 period without offering any factual

---

[38] Doc. 289 at 29-30 (JMOL Br.).
[39] 10/27/22 Tr. 3171:21-3174:22, 3177:7-3179:15.
[40] *See Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019).
[41] Doc. 289 at 34-35 (JMOL Br.); *see also id.* at 41-42.
[42] 10/24/22 Tr. 2459:18-20, 2460:15-2461:1, 2462:3-7.
[43] 10/24/22 Tr. 2452:9-2453:10, 2454:20-25, 2459:11-17.
[44] 10/27/22 Tr. 3212:4-20.

9

explanation for how those losses arose from any M&I misconduct.[45] Mr. Jarek has now offered unrebutted testimony explaining why there is no causal connection, from a forensic accounting perspective, between Mr. Martens's damages figure (or any other damages figure) and anything done by M&I.[46]

In short, the jury does not have a factual basis to award any damages, let alone $1.9 billion. Accordingly, judgment should be entered for BMO Harris.

## CONCLUSION

For the foregoing reasons and those stated in its original Rule 50(a) motion and brief, BMO Harris respectfully asks that the Court enter judgment for BMO Harris as a matter of law.

---

[45] 10/24/22 Tr. 2459:18-20, 2460:15-2461:1, 2462:3-7. Mr. Martens says "substantially all" of the $1.9 billion went through the PCI Account (*id.* at 2521:10-13), but that vague observation does not connect the purported damages to any liability-creating conduct.
[46] 10/27/22 Tr. 3183:3-3191:18, 3200:21-3201:6.

Dated: October 29, 2022                    Respectfully submitted,

/s/ Keith S. Moheban
Keith S. Moheban (#216380)
Adine S. Momoh (#390085)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
keith.moheban@stinson.com
adine.momoh@stinson.com

John Gleeson (*pro hac vice*)
Michael Schaper (*pro hac vice*)
Susan Reagan Gittes (*pro hac vice*)
Morgan Davis (*pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6389
jgleeson@debevoise.com
mschaper@debevoise.com
srgittes@debevoise.com
mdavis@debevoise.com

Donald B. Verrilli, Jr. (*pro hac vice*)
Elaine J. Goldenberg (*pro hac vice*)
Brendan B. Gants (*pro hac vice*)
MUNGER TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, DC 20004
Telephone: (202) 220-1100
donald.verrilli@mto.com
elaine.goldenberg@mto.com
brendan.gants@mto.com

Lucia Nale (*pro hac vice*)
Joshua D. Yount (*pro hac vice*)
Thomas V. Panoff (*pro hac vice*)
Christopher S. Comstock (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
lnale@mayerbrown.com
jdyount@mayerbrown.com
tpanoff@mayerbrown.com
ccomstock@mayerbrown.com

**ATTORNEYS FOR BMO HARRIS BANK N.A., AS SUCCESSOR TO M&I MARSHALL & ILSLEY BANK**

Richard A. Spehr (*pro hac vice*)
Gina M. Parlovecchio (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2578
rspehr@mayerbrown.com
gparlovecchio@mayerbrown.com


11
