# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust,<br><br>  Plaintiff,<br><br>vs.<br><br>BMO Harris Bank N.A., as successor to M&I Marshall and Ilsley Bank,<br><br>  Defendant. | Case No.: 0:19-cv-01756-WMW<br><br>Hon. Wilhelmina M. Wright<br><br>**Memorandum in Opposition to BMO Harris N.A.'s Renewed Rule 50(a) Motion for Judgment as a Matter of Law** |

**Introduction**

Plaintiff already responded to BMO's original Motion for Judgment as a matter of law ("JMOL"). In its Memorandum in Opposition to that JMOL, Dkt 313 ("Plaintiff's Memo"), Plaintiff showed that there is a legally sufficient evidentiary basis for its claims. BMO has now filed a "renewed" JMOL motion and Memorandum, Dkt 321 ("BMO Memo"), but those papers do little more than identify additional evidence that allegedly contradicts the evidence the Trustee relied upon in Plaintiff's Memo. This changes nothing, because the relevant standards require the Court to assume that all conflicts in the evidence are resolved in Plaintiff's favor. The renewed Motion should be denied.

**Argument**

**I.    BMO cannot obtain JMOL by relying on evidence that allegedly contradicts the evidence recited in Plaintiff's Memo or that merely presents a jury question.**

To defeat BMO's motions, Plaintiff merely needs to establish that a reasonable jury would have a legally sufficient evidentiary basis to find for it. The Trustee recited that evidentiary basis in Plaintiff's Memo. BMO cannot question that basis by reciting proof that, in its view, establishes the opposite of the proof set forth in Plaintiff's Memo. When considering a JMOL, the Court should resolve all contradictions in the evidence in Plaintiff's the favor. The court must assume "all conflicts were resolved in [plaintiff's] favor, assum[e] all facts [plaintiff's] evidence tended prove, and giv[e] [plaintiff] the benefit of all

1

favorable inferences that reasonably may be drawn from the proven facts." *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1002 (8th Cir. 2000).

Below is a list of BMO's newly cited evidence. Each piece of evidence is followed by an explanation of how it is contradicted by the Plaintiff's proof, which proves that BMO's newly cited evidence is nothing more than a legally insufficient attempt to contradict Plaintiff's evidence:

- **M&I employees' denials of knowledge and testimony allegedly refuting the required state of mind for punitive damages (BMO Memo at 2, 4-5).** <u>Contradicted by</u>: Evidence of knowledge and state of mind relating to punitive damages in §§ I(C)(1) and XI of Plantiff's Memo.[1]

- **Testimony that PCI did not get special treatment (BMO Memo at 3, 6).** <u>Contradicted by:</u> Evidence of atypical activity on p. 22-23 of Plaintiff's Memo, including the sham DACA.

- **Testimony that no bank employee with knowledge would have tried to establish a lending relationship with PCI, which M&I employees did try to do (BMO Memo at 6).** <u>Contradicted by:</u> Evidence that Flynn never tried to loan money to PCI to fund the purchases of electronics on p. 11 of Plaintiff's Memo.

---

[1] Plaintiff previously refuted BMO's other rehashed arguments about punitive damages in § XI of Plaintiff's Memo.

- **BMO had no financial incentive to aid PCI (BMO Memo at 6).**

Contradicted by: Evidence of that PCI was an important, profitable client for the bank, and that BMO's employees were motivated to assist Petters to cross-sell and obtain lucrative additional business from his related companies, as recited on p. 32 of Plaintiff's Memo. *See also* P-2 and P-26.

- **PCI's ability to use other banks (BMO Memo at 6).** Contradicted by: Evidence from Ms. Coleman that PCI searched ten years to find a "bank that PCI could work with" (Tr. 2854:4-14.)

BMO also points to testimony that PCI could tell "plausible lies" about why payments in the Account came from Enchanted and Nationwide (BMO Memo at 7). However, what is plausible is a quintessential jury question. *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 610 F. Supp. 2d 998, 1006 n.2 (D. Minn. 2009) (plausibility was question for jury).

Finally, BMO cites testimony from Coleman that she lied or would have lied to M&I employees (BMO Memo at 2, 6-7.) A bank cannot justify turning a blind eye on the theory that their customer would have lied. As plaintiff has shown repeatedly, a bank's responsibility is to ferret out fraud since "fraudsters are not going to … tell them there's a fraud going on." (Tr. 2387:14-2388:5.)

**II.   BMO's argument under Fed. R. Evid. 608 is wrong.**

BMO presents a tortured argument that Plaintiff is judicially estopped

3

from contending Christopher Flynn acted dishonestly for purposes of MUFA because Plaintiff successfully objected to BMO's attempt to elicit rehabilitative character evidence regarding Flynn. (BMO Memo at 3.) Even assuming judicial estoppel could be triggered by a sustained objection at trial, that doctrine cannot possibly apply here because Plaintiff's arguments for excluding the character evidence are not "clearly inconsistent" with the MUFA bad-faith claims. *Smith v. AS America, Inc.*, 829 F.3d 616, 624 (8th Cir. 2016) ("clearly convincing" standard).[2]

Counsel's statements cannot be viewed in a vacuum, but through the prism of Fed. R. Evid. 608(a)'s rule regarding *character* evidence, which was the basis for the objection. "[A] useful test employed by the courts [for determining application of Rule 608] is whether the questioning attacks the veracity of the witness's account of the facts in the specific case before the court or attacks the witness's veracity in general." *United States v. Martinez*, 923 F.3d 806, 816 (10th Cir. 2019). Plaintiff's counsel's argument was directed to that test, arguing that the questions regarding editing the MiContacts document did not put at issue

---

[2] The Court must also consider whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled and whether the party asserting inconsistent positions would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id; New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

4

Flynn's honesty or character for truthfulness. (Tr. 2613:7-12.) Thus, counsel's comments could only be interpreted as making arguments about whether the Plaintiff crossed the line for allowing truthful character testimony and not a broad statement regarding Plaintiff's MUFA claim or whether Flynn was generally honest.

Counsel's comments *could not possibly* have been directed to whether Plaintiff alleges that Flynn's conduct satisfies the bad faith standard under MUFA, since the right to present evidence of truthful character under Rule 608 does not depend on whether the underlying claim involves honesty or not. As the Eighth Circuit has held, even the existence of an allegation of material misrepresentations does not entitle the accused party to introduce rehabilitative character evidence like that excluded in this case. *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1203 (8th Cir. 2015).

In sum, viewed in context of the Rule 608 standards, counsel could only have been arguing that eliciting testimony about a specific act (editing a document) was not the type of character attack that opens the door to evidence of truthful character, and could not have been arguing more generally that Plaintiff does not assert that Flynn acted in "bad faith" during the relevant time period (a term that BMO equates with dishonesty). Given the allegations in this case, that would be preposterous. Even if counsel, against all reason, made that assertion

5

(which he did not) there would be no reason to enter judgment because Plaintiff is not required to prove dishonesty under MUFA. Under modern case law, indifference can constitute bad faith under MUFA where the defendant recklessly disregards or is purposely oblivious to known facts suggesting impropriety. *McCartney v. Richfield Bank & Trust Co.*, No. CX-00-1466, 2001 WL 436154, at *4 n.2 (Minn. Ct. App. May 1, 2001).

### III. BMO's assertions regarding the Palm Beach DACA are incorrect.

BMO asserts that the triggering events under the DACA, such as the receipt of a transaction list for the Palm Beach DACA, never occurred and cites additional evidence in support. Plaintiff admits that BMO never received the transaction list, and in fact relies upon this fact as part of its assertions of willful blindness/bad faith, so BMO's evidence adds nothing. Moreover, BMO's assertion that there were "triggering events" for its duties is false. Plaintiff already established that the DACA imposed general fiduciary duties with regard to the funds in the account, and the Bankruptcy Court has so held. (Plaintiff's Memo, at 28.) Ms. Crain's self-serving testimony, which contradicts the Court's conclusion and the DACA language itself, should be disregarded. Moreover, Coleman's speculative testimony about what she would have done if asked for a transaction list (BMO Memo at 7) should not be credited and does not disprove causation because BMO's duties were not limited to the list.

6

**IV.     BMO misstates the evidence regarding insolvency and investor losses.**

BMO repeatedly attempts to defeat Plaintiff's claims by conflating PCI's insolvency with its inability to repay investors. (BMO Memo at 6, 8, 9.) The testimony of both Jarek and Martens (Plaintiff's expert) reveals the fallacy of BMO's argument. Jarek testified that PCI was insolvent—*i.e.*, its liabilities exceeded its assets—by at least 1996. (Tr. 3169:10-23.) He then equated insolvency with an inability to repay investors, and applied the date of PCI's insolvency as the date PCI was unable to pay its debt. (*Id.*) Jarek's leap from insolvency to an inability to pay, however, is unsupported by the record: First, insolvency, in the context of a Ponzi scheme, does not equal the inability to pay investors. As Martens explained, an entity used as the vehicle for perpetrating a Ponzi scheme with no other business purpose is insolvent by its very nature and pays old investors with new investor money. (Tr. 2452:15-2453:10, 2476:3-2477:1.) Thus, employing traditional business valuation concepts like insolvency to PCI is of no value. (Tr. 2476:3-2477:1.) Second, despite claiming PCI could not repay investors starting prior to 2002, Jarek conceded that, until the Ponzi scheme imploded in 2008, PCI paid its lenders back (except for those who rolled their loans). (Tr. 3239:11-3240:23; Tr. 3243:12-3244:4.) Martens confirmed that investors with promissory notes with start dates prior to December 5, 2007 were repaid.

(Tr. 2453:11-21.)[3]

Although entirely specious, Jarek's conflation of insolvency with PCI's inability to repay debts figures prominently in several of BMO's arguments. First, BMO contends that there is no causation for Plaintiff's aiding and abetting claims because, by Jarek's definition, PCI was unable to repay investors prior to opening the PCI Account with M&I. (BMO Memo at 6.) As discussed above, however, PCI was able to, and did in fact, repay creditors up until the Ponzi scheme broke down in 2008. Thus, Jarek's testimony does not establish the absence of causation.[4]

BMO also argues, for statute of limitations purposes, that the damages occurred—and the claim accrued—from the time of PCI's insolvency because that was when, according to Jarek, PCI could not pay back investors. (BMO

---

[3] Even if Jarek's opinion that PCI was unable to pay creditors starting prior to 2002 could be credited (it cannot), it would at most create conflicting expert testimony, which should not be adjudicated on JMOL. *See Adams v. Toyota Motor Corp.*, 867 F.3d 903, 918 (8th Cir. 2017), *as corrected* (Aug. 14, 2017) (finding "questions of conflicting [expert] evidence must be left for the jury's determination" and court should not re-weigh the evidence).

[4] BMO also attacks causation for Plaintiff's breach of fiduciary claim, arguing PCI owed billions prior to the execution of the DACAs in 2008 and Palm Beach was a net winner over the final nine months of the Ponzi scheme. BMO Memo at 8. This argument is erroneous because Jarek's calculations of losses at each year's end deducted repayments for older investments from investors' new investments. (Tr. at 3253:9-3254:22, 3256:17-3257:1.) Even if this methodology were proper (it is not), it would merely be another battle of the experts. *See* n.3 *supra*.

8

Memo at 7.) Again, this argument fails because even Jarek admits that investors with notes with start dates prior to December 5, 2007 *were* repaid (unless they agreed to extend their due dates, which would obviate the need to repay until the new due date). There could have been no injury to PCI (and thus no accrual of the claims) until those investors who were actually due funds couldn't be repaid, which did not occur until the post-December 5, 2007 notes came due.

Finally, on the issue of compensatory damages, BMO cites Jarek's testimony that an unpaid loan on PCI's books is not a measure of harm because PCI still had use of the funds. (BMO Memo at 9.) Because the Court has ruled that PCI's inability to repay creditors is the proper measure of damages, this testimony is irrelevant. (Daubert Order, ECF No. 214 at 45-55.)

## V. BMO relies upon the wrong damages theory

BMO asserts various spurious damages-related arguments. For example, BMO relies upon testimony by its expert that payments to insiders after February 2008 were $0. This is completely irrelevant to the damages measure approved by the Court multiple times, and most recently in the Daubert Order, ECF No. 214. BMO also contends that Mr. Marten's testimony was somehow improper because he did not explain why there is a causal connection between the damages he calculated and how those losses arose from any BMO misconduct. He did not do so because he wasn't asked to; his testimony was limited to calculating the

9

damages in the manner prescribed in the Court's order that sets forth the proper measure of recovery. A damages expert need not opine on causation. "Proof of causation often comes from fact witnesses, and it is appropriate for expert witnesses to assume causation will be established and then proceed to calculate the damages." *Gaedeke Holdings VII, Ltd v. Baker*, No. CIV-11-649-M, 2015 WL 11570978, at *3 (W.D. Okla. Nov. 30, 2015). Here, the other testimony establishes causation, including evidence that the FBI would have "shown up on the bank's doorstep" if it had not turned a blind eye and exposed the scheme, and the evidence from other witnesses on how fast the government reacted when Ms. Coleman exposed it. (Tr. 1853:15-1854:5; 2389:25-2390:9; 2785:2-4, 2813:14-24.)

## VI. Evidence regarding the contractual limitations period is irrelevant.

Plaintiff has already established how the contractual limitations clauses are void and unenforceable, and cannot bar the claims when properly construed. (Plaintiff's Memo, Section VI). Therefore, whether Ms. Coleman raised objections about the transactions in the account (BMO Memo at 8) is irrelevant.

## Conclusion

For the reasons set forth herein, BMO's motion should be denied.

Respectfully submitted,

Dated: October 31, 2022            By: */s/ Michael A. Collyard*
                                   Michael A. Collyard (#302569)
                                   David E. Marder (*admitted pro hac vice*)
                                   Peter C. Ihrig (#0390392)
                                   Morgia D. Holmes (*admitted pro hac vice*)
                                   ROBINS KAPLAN LLP
                                   800 LaSalle Avenue, Suite 2800
                                   Minneapolis, MN 55402–2015
                                   Telephone: 612.349.8500
                                   Facsimile: 612.339.4181
                                   mcollyard@robinskaplan.com
                                   dmarder@robinskaplan.com
                                   pihrig@robinskaplan.com
                                   mholmes@robinskaplan.com

                                   Joseph W. Anthony (#2872)
                                   Joseph R. Richie (#400615)
                                   Ryan M. Lawrence (#399135)
                                   ANTHONY OSTLUND LOUWAGIE
                                   DRESSEN BOYLAN P.A.
                                   90 South 7th Street, Suite 3600
                                   Minneapolis, MN 55402
                                   Telephone: 612.349.6969
                                   Facsimile: 612.349.6996
                                   janthony@anthonyostlund.com
                                   jrichie@anthonyostlund.com
                                   rlawrence@anthonyostlund.com

                                   *Counsel for Plaintiff*

11