UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Douglas A. Kelley, *in his capacity as*
*the Trustee of the BMO Litigation Trust*,

Plaintiff,

v.

BMO Harris Bank N.A., *as successor*
*to M&I Marshall and Ilsley Bank*,

Defendant.

Case No. 19-cv-1756 (WMW)

**FINAL JURY**
**INSTRUCTIONS**

---

# JURY INSTRUCTION 1

Members of the jury, the instructions I gave at the beginning of the trial and during the trial are still in effect. Now I will give you additional instructions.

You must follow all of my instructions—the ones I gave you earlier, as well as those I give you now. Do not single out some instructions and ignore others, because they are all important. This is true even though I will not repeat some of the instructions I gave you at the beginning of or during the trial.

In the jury room, you will have copies of the instructions I am about to give you now. Remember, you have to follow all instructions, no matter when I give them, whether or not you have written copies.

# JURY INSTRUCTION 2

BMO Harris Bank N.A. (BMO) is a corporation, and M&I Marshall and Ilsley Bank (M&I) and Petters Company, Inc. (PCI) were corporations. A corporation is entitled to the same fair trial as a private individual. All litigants, including corporations and other organizations, stand equal before the law, and are to be treated as equals in a court of justice.

A corporation acts only through its agents or employees, and any agent or employee of a corporation binds the corporation when acting within the scope of his or her duties as an employee of the corporation.

As a general rule, when corporations merge, the surviving corporation takes on the obligations of the non-surviving corporation. You have been told or seen evidence that M&I merged into the Harris Bank N.A. to form BMO Harris Bank N.A.  Therefore, as a result of this merger, BMO is responsible for all of M&I's liabilities.

# JURY INSTRUCTION 3

When I use the word "evidence," I mean the testimony of witnesses, documents and other things I received as exhibits, facts that I told you the parties have agreed are true and any other facts that I told you to accept as true. Some things are not evidence. I will tell you now what is not evidence:

1. Lawyers' statements, arguments, questions and comments are not evidence.

2. Documents or other things that might have been in court or were talked about, but that I did not receive as exhibits, are not evidence.

3. Objections are not evidence. Lawyers have a right—and sometimes a duty—to object when they believe something should not be a part of the trial. Do not be influenced one way or the other by objections. If I sustained a lawyer's objection to a question or an exhibit, that means the law does not allow you to consider that information.  When that happens, you have to ignore the question or the exhibit, and you must not try to guess what the information might have been.

4. Testimony and exhibits that I struck from the record, or told you to disregard, are not evidence, and you must not consider them.

5. Anything you saw or heard about this case outside the courtroom is not evidence, and you must not consider it.

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." You should not be concerned with those terms, as the law makes no distinction between the weight to be given to direct and circumstantial evidence.

# JURY INSTRUCTION 4

Certain charts, graphics and summaries have been shown to you but not admitted into evidence in order to help explain the facts disclosed by the books, records, or other underlying evidence in the case. Those charts, graphics and summaries are used for convenience. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts, graphics and summaries and decide the facts from the books, records or other underlying evidence.

Certain summaries and charts were admitted in evidence as Exhibits 703, 705, 706, 713, 40495 and 50928. You may use those summaries and charts as evidence, even if the underlying documents and records are not here. However, the accuracy of those summaries and charts has been challenged. It is for you to decide how much weight, if any, you will give to them. In making that decision, you should consider all of the testimony you heard about the way they were prepared.

# JURY INSTRUCTION 5

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

You may consider a witness's intelligence; the opportunity the witness had to see or hear the things testified about; a witness's memory, knowledge, education and experience; any reasons a witness might have for testifying a certain way; how a witness acted while testifying; whether a witness said something different at another time; whether a witness's testimony sounded reasonable; and whether or to what extent a witness's testimony is consistent with other evidence you believe.

In deciding whether to believe a witness, remember that people sometimes hear or see things differently and sometimes forget things. You will have to decide whether a contradiction is an innocent misrecollection, or a lapse of memory, or an intentional falsehood. That may depend on whether it has to do with an important fact or only a small detail.

## JURY INSTRUCTION 6

You have heard testimony from experts—Catherine Ghiglieri, Theodore Martens, Karl Jarek and Charles Grice—who testified to opinions and the reasons for the opinions. This opinion testimony is allowed because of the education or experience of these witnesses.

You should judge this opinion testimony just as you would any other testimony. You may accept it or reject it and give it the weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all other evidence in this case.

# JURY INSTRUCTION 7

You have seen and heard evidence pertaining to examinations conducted by the Federal Reserve Bank of Chicago.  This evidence may be considered by you only for the purpose of evaluating the accuracy and credibility of the opinions and testimony of Catherine Ghiglieri and Charles Grice.  This evidence may not be considered for any other purpose.

## JURY INSTRUCTION 8

You have heard evidence that a witness—Deanna Coleman, also referred to as Deanna Munson—has been convicted of crimes. You may use that evidence to help you decide whether to believe the witness and how much weight to give her testimony.

## JURY INSTRUCTION 9

You have heard evidence that BMO destroyed email backup tapes that should have been preserved. You may, but are not required to, assume that the contents of the destroyed email backup tapes would have been adverse, or detrimental, to BMO.

## JURY INSTRUCTION 10

The burden is on the plaintiff in a civil action, such as this, to prove every essential element of his claims by the greater weight of the evidence. If the proof should fail to establish any essential element of a claim by the greater weight of the evidence in the case, the jury should find for the defendant as to that claim.

At the same time, the burden is on the defendant to prove every essential element of its affirmative defenses by the greater weight of the evidence. If the proof should fail to establish any essential element of an affirmative defense by the greater weight of the evidence in the case, the jury should find for the plaintiff as to that affirmative defense.

You must decide whether certain facts have been proved by the greater weight of the evidence. A fact has been proved by the greater weight of the evidence, if you find that it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable.

You have probably heard the phrase "proof beyond a reasonable doubt." That is a stricter standard than "more likely true than not true." It applies in criminal cases, but not in this civil case; it does not apply here.

# JURY INSTRUCTION 11

Let me now turn to the four claims asserted by Plaintiff Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust, in this case and what he must prove to prevail on each of them.  In order to prevail on any claim, Plaintiff must prove each of the elements of that claim by the greater weight of the evidence.

Plaintiff Kelley is what is known as a Litigation Trustee, and he is here bringing claims for harm that he alleges was done to PCI by BMO. Plaintiff alleges four claims, or "counts," against BMO:

> *Count I*: Violation of the Minnesota Uniform Fiduciaries Act (MUFA), Minnesota Statutes § 520.08

> *Count II*: Breach of Fiduciary Duty

> *Count III*: Aiding and Abetting Fraud

> *Count IV*: Aiding and Abetting Breach of Fiduciary Duty

In response to Plaintiff's claims, BMO asserts affirmative defenses to liability: statute of limitations, consent and ratification.  I will now instruct you as to the legal elements of each  claim and each affirmative defense.

# JURY INSTRUCTION 12

In Count I, Plaintiff claims that BMO violated the Minnesota Uniform Fiduciaries Act. To satisfy his burden of proof as to this claim, Plaintiff must prove, with respect to each individual transfer that he alleges violated this law, the following four elements:

*First*, M&I knew it was dealing with a fiduciary of PCI who was empowered to wire funds from the PCI Account or write a check against the PCI Account;

*Second*, M&I allowed a PCI fiduciary to wire funds from the PCI Account or write a check against the PCI Account;

*Third*, by wiring funds from the PCI Account or writing a check against the PCI Account, the PCI fiduciary breached a fiduciary duty owed to PCI; and

*Fourth*, either M&I had actual knowledge that the PCI fiduciary was committing a breach of an obligation as a fiduciary in completing a specific wire transfer or writing a specific check, or M&I had knowledge of such facts so that M&I's action in wiring the funds or paying the check amounted to bad faith.

# JURY INSTRUCTION 13

The following instructions apply to Count I:

*Fiduciary*

A "fiduciary" includes a trustee under any trust, expressed, implied, resulting or constructive, an executor, an administrator, a guardian, a conservator, a curator, a receiver, a trustee in bankruptcy, an assignee for the benefit of creditors, a partner, an agent, an officer of any corporation public or private, a public officer, or any other person acting in a fiduciary capacity for any person, trust or estate.

Here, the parties have agreed that Tom Petters, Deanna Coleman and Robert White each had a fiduciary duty to PCI. You may accept these fiduciary duties as proven.

*Breach of Fiduciary Duty*

A fiduciary breaches his or her fiduciary duty if the fiduciary fails to act in the best interests of the principal and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

*Knowledge*

Knowledge may be proven by direct or circumstantial evidence.

*Bad Faith*

An act done with dishonesty of belief, purpose or motive constitutes bad faith. An act that is done honestly, even if it was done negligently, cannot support a finding of bad faith.

# JURY INSTRUCTION 14

In Count II, Plaintiff claims that M&I breached a fiduciary duty, which Plaintiff alleges M&I owed to PCI as a result of the Deposit Account Control Agreements and Deposit Account Management Agreement about which you heard evidence in this case.  To satisfy his burden of proof as to this claim, Plaintiff must prove the following three elements:

*First*,  M&I owed a fiduciary duty to PCI;

*Second*, M&I breached that fiduciary duty; and

*Third*, M&I's breach of that fiduciary duty proximately caused harm to PCI.

# JURY INSTRUCTION 15

The following instructions apply to Count II:

*Fiduciary Duty*:

A bank owes its depositor a fiduciary duty if a bank and its depositor have what is known as a "special relationship." A party seeking to establish the existence of a special relationship must prove that:

(1) a bank knew or had reason to know that its depositor was placing a high level of trust and confidence in the bank and relying on the bank to counsel and inform it;

(2) a depositor in fact placed a high level of confidence in its bank, which resulted in the bank exercising superiority and influence over the depositor;

(3) a bank and its depositor had a confidential relationship and the bank had greater access to relevant facts and legal resources than the depositor; or

(4) a bank and its depositor had different levels of business experience and the bank invited the depositor to place its confidence in the bank.

*Breach of Fiduciary Duty*:

A fiduciary breaches its fiduciary duties if the fiduciary fails to act in the best interests of the principal and with the care an ordinarily prudent person or entity in a like position would exercise under similar circumstances.

*Proximate Cause*:

A proximate cause is a cause that has a substantial part in bringing about the alleged harm. There may be more than one proximate cause that contributes to a harm.

16

# JURY INSTRUCTION 16

In Count III, Plaintiff claims that M&I aided and abetted fraud by providing substantial assistance to Tom Petters, Deanna Coleman and/or Robert White with knowledge of their fraud.  To satisfy his burden of proof as to this claim, Plaintiff must prove the following four elements:

*First*, that Tom Petters, Deanna Coleman and/or Robert White committed a fraud that caused harm to PCI;

*Second*, that M&I knew that the conduct of Tom Petters, Deanna Coleman and/or Robert White constituted a fraud;

*Third*, that M&I substantially assisted or encouraged Tom Petters, Deanna Coleman and/or Robert White in committing the fraud; and

*Fourth*, that M&I's substantial assistance or encouragement was a proximate cause of PCI's harm.

# JURY INSTRUCTION 17

The following instructions apply to Count III:

*Fraud*

Fraud occurs if an individual (1) falsely represents a past or present material fact to another person or entity; (2) at the time the representation was made, the individual knew that his or her representation of the material fact was false; (3) the individual made the false representation with the intent that the other person or entity would rely on it; (4) the other person or entity reasonably relied and acted on the false representation; and (5) the other person or entity was harmed as a result of relying on the false representation.

The parties have introduced into evidence the criminal convictions of PCI, Thomas Petters, Deanna Coleman and Robert White.  Under the Federal Rules of Evidence, evidence of a final judgment of conviction can be used to prove any fact essential to the judgment. I am instructing you that the following facts were essential to those convictions. In other words, you may infer that, when finding Petters, Coleman and White guilty, the following facts were either admitted to by those criminal defendants or proven beyond a reasonable doubt:

Through September 2008, Thomas J. Petters was the owner, director and CEO of Petters Company, Inc. ("PCI"), and Deanna Coleman and Robert White were corporate officers of PCI. During that time, Petters, Coleman and White used PCI to operate a criminal scheme to defraud investors, also known as a Ponzi scheme. Specifically, PCI obtained billions of dollars in money and property based on false statements to investors that PCI was purchasing consumer

electronic goods from two supplier companies and then selling those goods to big-box retailers. In connection with this scheme, Petters, Coleman and White used fake purchase orders, invoices and other documents to fraudulently induce investors to loan money to PCI. But rather than using the loan proceeds to purchase consumer goods for sale to retailers, Petters and PCI used the funds to, among other things, make lulling payments to investors and to pay themselves. In connection with the fraud, Petters or his co-conspirators caused money to be transferred to and from PCI's bank accounts.

*Material Fact*

A fact is "material" if it would have influenced the other person's judgment or decision had the other person known about it. An omission of a material fact is treated as a misrepresentation when the person who omitted the material fact had a fiduciary duty to the person from whom it was omitted. Here, Petters, Coleman and White had a fiduciary duty to the creditors.

*Knowledge*

Knowledge may be proven by direct or circumstantial evidence.

*Substantial Assistance*

"Substantial assistance" is an affirmative step that is a substantial factor in bringing about an end result.

*Knowledge and Substantial Assistance Evaluated in Tandem*

For aiding-and-abetting claims, knowledge and substantial assistance are evaluated in tandem. Therefore, the stronger the evidence of a person or entity's general awareness of fraud, the less

evidence of that person's or entity's substantial assistance is required. Similarly, the stronger the evidence of a person or entity's substantial assistance, the less evidence of general awareness is required.

*Proximate Cause*

A proximate cause is a cause that had a substantial part in bringing about the harm at issue. There may be more than one proximate cause that contributes to a harm.

# JURY INSTRUCTION 18

Count IV alleges that M&I aided and abetted a breach of fiduciary duty.  To satisfy his burden of proof as to this claim, Plaintiff must prove the following four elements:

*First*, that Tom Petters, Deanna Coleman or Robert White breached a fiduciary duty they owed to PCI;

*Second*, that M&I knew that the conduct of Tom Petters, Deanna Coleman or Robert White constituted a breach of fiduciary duty to PCI;

*Third*, that M&I substantially assisted or encouraged Tom Petters, Deanna Coleman or Robert White in committing their breach of a fiduciary duty owed to PCI; and

*Fourth*, that M&I's substantial assistance or encouragement was a proximate cause of PCI's harm.

# JURY INSTRUCTION 19

The following instructions apply to Count IV:

*Fiduciary Duty*

Here, the parties agree that Tom Petters, Deanna Coleman and Robert White each had a fiduciary duty to PCI. You may accept these fiduciary duties as proven.

*Breach of Fiduciary Duty*

A fiduciary breaches his or her fiduciary duty if the fiduciary fails to act in the best interests of the principal and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

*Knowledge*

Knowledge may be proven by direct or circumstantial evidence.

*Substantial Assistance*

"Substantial assistance" is an affirmative step that is a substantial factor in bringing about an end result.

*Knowledge and Substantial Assistance Evaluated in Tandem*

For aiding-and-abetting claims, knowledge and substantial assistance are evaluated in tandem. Therefore, the stronger the evidence of a person's or entity's general awareness of breach of fiduciary duty, the less evidence of that person's or entity's substantial assistance is required. Similarly, the stronger the evidence of substantial assistance, the less evidence of general awareness is required.

*Proximate Cause*

A proximate cause is a cause that had a substantial part in bringing about the harm at issue. There may be more than one proximate cause that contributes to a harm.

# JURY INSTRUCTION 20

BMO's first affirmative defense alleges that Plaintiff's claims are barred by the statute of limitations.  Your verdict must be for BMO and against Plaintiff on any counts for which you find that BMO has proved this affirmative  defense by the greater weight of the evidence.

Plaintiff's claims have a six-year statute of limitations. This means that such claims must be brought within six years of the date the claims accrued. This lawsuit commenced on November 15, 2012.  Plaintiff's claims accrued when the relevant facts supporting each element came into existence, including damages.   Facts supporting damages exist when some non-speculative, compensable harm occurs.

You must decide for each of Plaintiff's claims whether BMO has proven by the greater weight of the evidence that the claim accrued more than six years before November 15, 2012.

If you find that BMO has proven that a claim accrued more than six years before November 15, 2012, you must also determine whether any actions by M&I or BMO suspended the statute of limitations for that claim.  In order to find any such suspension of the statute of limitations, Plaintiff must prove by the greater weight of the evidence:

> *First*, that fraudulent or intentional concealment of the facts establishing a claim occurred.  If you find such concealment, Plaintiff must also prove that the concealment was affirmative, unless you find that the concealment occurred in a fiduciary relationship.

> *Second*, that the concealment was not and could not have been discovered by Plaintiff, exercising reasonable diligence, until within six years of November 15, 2012.

> *Third*, that the concealment was not the result of Plaintiff's own negligence.

If you find that Plaintiff has proved suspension of the statute of limitations, then BMO has not proved its statute-of-limitations defense.

24

# JURY INSTRUCTION 21

BMO's second affirmative defense alleges that Plaintiff's claims are barred by consent or ratification.  Your verdict must be for BMO and against Plaintiff on any counts for which you find that BMO has proved this defense by the greater weight of the evidence.

*Consent*

Consent occurs when someone, having full knowledge of all material facts related to an otherwise unauthorized act, expressly or implicitly agrees to the act.

*Ratification*

Ratification occurs when someone, having full knowledge of all material facts related to an otherwise unauthorized act, approves or affirms the act.

*Full Knowledge of Material Facts*

A person or entity cannot be charged with full knowledge of the material facts related to an otherwise unauthorized act based on the knowledge of someone acting to defraud that person or entity.

## JURY INSTRUCTION 22

I will now instruct you on the issue of compensatory damages.

The fact that I am about to instruct you as to the proper measure of damages should not be considered as suggesting any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance in the event that you find in favor of Plaintiff from the greater weight of the evidence in the case in accordance with the other instructions.

## JURY INSTRUCTION 23

Questions 5 and 6 in the verdict form are the damages questions. If your verdict is for Plaintiff and against BMO on any count, you must decide what damages to award. When you decide damages, do not consider the possible effect of your answers to other questions.

The term "damages" means a sum of money that will fairly and adequately compensate PCI for any harm.

A party asking for damages must prove the nature, extent, duration and consequences of the alleged harm. You must not decide damages based on speculation or guess.

## JURY INSTRUCTION 24

Plaintiff may not recover compensatory damages twice under two different counts in the same case for the same harm. Therefore, if you find that Plaintiff is entitled to a verdict on more than one of its counts, you should take care to avoid awarding duplicative damages.

# JURY INSTRUCTION 25

If your verdict is for Plaintiff and against BMO on any count, and if you find that there is clear and convincing evidence that BMO acted with deliberate disregard for the rights or safety of others, then you can award Plaintiff additional damages. These "punitive damages" are intended to punish BMO and discourage others from behaving in a similar way. Punitive damages may not be used to punish BMO for harm to persons other than PCI in this case, however.

The evidence must convince you that BMO acted with deliberate disregard for the rights of others. You must have a firm belief, or be convinced there is a high probability, that BMO acted this way.

*Clear and Convincing Evidence*

Clear and convincing evidence means that the thing to be proved is highly probable or reasonably certain. Clear and convincing evidence requires a higher degree of persuasion than the greater weight of the evidence.

*Deliberate Disregard*

Deliberate disregard means that BMO:

1. Knew about facts or intentionally ignored facts that created a high probability of harm to the rights or safety of others; and

2. Deliberately acted with

   a. conscious or intentional disregard; or

   b. indifference to the high probability of harm to the rights or of others.

# JURY INSTRUCTION 26

When considering punitive damages, you may award punitive damages against a principal because of an act done by an agent of that principal only if:

1. The principal authorized the performance of the act and the manner in which the act was performed;

2. The agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit;

3. The agent was employed in a managerial capacity with authority to establish policy and make planning-level decisions for the principal and was acting in the scope of that employment; or

4. The principal or a managerial agent of the principal, described in clause 3 above, ratified or approved the act while knowing of its character and probable consequences.

# JURY INSTRUCTION 27

If you decide to award punitive damages, consider, among other things, the following factors:

1. The seriousness of the hazard to the public that may have been or was caused by any misconduct by M&I;

2. The profit M&I made as a result of the misconduct;

3. The length of time of the misconduct and if M&I hid it;

4. The amount M&I knew about the hazard and of its danger;

5. The attitude and conduct of M&I when the misconduct was discovered;

6. The number and level of employees involved in causing or hiding the misconduct;

7. The financial state of BMO; and

8. The total effect of other punishment likely to be imposed on BMO as a result of the misconduct. This includes compensatory and punitive damage awards to PCI and other persons.

# JURY INSTRUCTION 28

There are rules you must follow when you go to the jury room to deliberate and return with your verdict.

*First*, you will select a foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, your verdict must be the unanimous decision of all jurors. Therefore, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement, if you can do this without going against what you believe to be true.

Each of you must come to your own decision, but only after you have considered all the evidence, discussed the evidence fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your mind if the discussion persuades you that you should. But, do not come to a decision just because other jurors think it is right, or just to reach a unanimous verdict. Remember you are not for or against any party. You are judges – judges of the facts. Your only job is to study the evidence and decide what is true.

*Third,* during your deliberations, including during any recess taken during deliberations, you must not, directly or indirectly, communicate with or provide any information to anyone by any means or by any medium, about anything relating to this case, until I accept your verdict and discharge you from further service in this case.

*Fourth,* as stated in my instructions at the beginning of the trial, you may not in any manner seek out or receive any information about the case from any source other than the evidence received by the court and the law of the case I have provided to you.

You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision

may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

*Fifth,* if you need to communicate with me during your deliberations, send me a note signed by one or more of you. Give the note to the court security officer and I will answer you as soon as I can, either in writing or here in court. While you are deliberating, do not tell anyone—including me—how many jurors are voting for any side.

*Sixth*, nothing I have said or done was meant to suggest what I think your verdict should be. The verdict is entirely up to you.

*Finally*, the verdict form is your written decision in this case. You will take this form to the jury room, and when you have all agreed on the verdict, your foreperson will fill in the form, sign and date it and tell the court security officer that you are ready to return to the courtroom. I will read the verdict form to you now.