```
                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA

-----------------------------------------------------------
                                )
 Douglas A. Kelley, in his      )  File No. 19-cv-1756
 capacity as the Trustee of the )          (WMW)
 BMO Litigation Trust,          )
                                )
         Plaintiff,             )  St. Paul, Minnesota
                                )  November 8, 2022
 vs.                            )  9:47 a.m.
                                )
 BMO Harris Bank N.A., as       )
 successor to M&I Marshall and  )
 Ilsley Bank,                   )
                                )
         Defendant.             )
                                )
-----------------------------------------------------------




           BEFORE THE HONORABLE WILHELMINA M. WRIGHT
              UNITED STATES DISTRICT COURT JUDGE

              (JURY TRIAL PROCEEDINGS - VOLUME XVII)
```

       Proceedings reported by certified court reporter;
    transcript produced with computer.

```
 1    APPEARANCES:
      For the Plaintiff:        Robins Kaplan, LLP
 2                              MICHAEL A. COLLYARD, ESQ.
                                DAVID E. MARDER, ESQ.
 3                              PETER C. IHRIG, ESQ.
                                MORGIA D. HOLMES, ESQ.
 4                              MICHAEL D. REIF, ESQ.
                                800 LaSalle Avenue
 5                              Suite 2800
                                Minneapolis, Minnesota 55402
 6
                                Anthony, Ostlund, Louwagie,
 7                              Dressen, Boylan, P.A.
                                JOSEPH W. ANTHONY, ESQ.
 8                              JOSEPH R. RICHIE, ESQ.
                                RYAN M. LAWRENCE, ESQ.
 9                              90 South Seventh Street
                                Suite 3600
10                              Minneapolis, Minnesota 55402

11    For the Defendant:        Stinson, LLP
                                KEITH S. MOHEBAN, ESQ.
12                              ADINE S. MOMOH, ESQ.
                                50 South Sixth Street
13                              Suite 2600
                                Minneapolis, Minnesota 55402
14
                                Debevoise & Plimpton, LLP
15                              JOHN GLEESON, ESQ.
                                MICHAEL SCHAPER, ESQ.
16                              SUSAN REAGAN GITTES, ESQ.
                                MORGAN A. DAVIS, ESQ.
17                              919 Third Avenue
                                New York, New York 10022
18
                                Mayer Brown, LLP
19                              JOSHUA D. YOUNT, ESQ.
                                71 South Wacker Drive
20                              Chicago, Illinois 60606

21                              Mayer Brown, LLP
                                RICHARD A. SPEHR, ESQ.
22                              GINA PARLOVECCHIO, ESQ.
                                1221 Avenue of the Americas
23                              New York, New York 10020

24    Court Reporter:           LORI A. SIMPSON, RMR-CRR
                                316 North Robert Street
25                              St. Paul, Minnesota 55101
```

**I N D E X**

PAGE

JURY QUESTION 3820
VERDICT 3824

**P R O C E E D I N G S**

**IN OPEN COURT**

**(JURY NOT PRESENT)**

THE COURT: So we received a message from the jury this morning. And so on Tuesday, November 8th, at approximately 9:00 a.m. the jury asked:

"Judge Wright, good morning. May we please have transcripts for Ted Martens testimony and Karl Jareks testimony. Please and thanks. The Jury."

And my proposed response to the jury is:

"At the start of the trial the Court provided you with the following preliminary instruction," and then quoting, "'At the end of trial you must make your decision based on what you recall of the evidence. You will not have a written copy of the testimony to refer to. Because of this, you have to pay close attention to the testimony and other evidence as it is presented here in the courtroom. If you wish, however, you may take notes to help you remember what witnesses said.'"

And so that is the answer that I plan to give. Do either of the parties wish to be heard?

MR. MOHEBAN: Yes, Your Honor. Good morning. Keith Moheban for BMO Harris Bank.

THE COURT: Good morning.

MR. MOHEBAN: Judge, I think this jury is doing

1    what we want them to do.  They are in their third day of
2    deliberation.  They're asking lots of questions.  They're
3    studying the evidence.  And their request for the
4    transcripts is consistent with a jury doing what we would
5    expect them to do and what we want to encourage them to do.
6              The transcripts are evidence.  They're entitled to
7    consider that.  And I think we can take into account this
8    was a long trial.  There were 20-plus witnesses.  We went
9    over 13 days of testimony.
10             So although there are some cases where it's easy
11   to remember everything, this may not be one of them.  Plus,
12   they had nearly a week off from the last testimony before
13   they heard closings.  So we're talking about testimony they
14   heard ten days to two weeks ago.
15             So I don't think we want this to be a memory test
16   for the jury.  I know your instruction made clear that they
17   should take notes.  Until they deliberate, they don't always
18   know what was important.  They may remember things
19   differently.
20             So it's certainly consistent with having the jury
21   decide things on the evidence to grant the request and give
22   them the transcripts.  And to the extent that that would
23   require redaction or removal of sidebars, we would be
24   willing to take the laboring oar of preparing a draft for
25   that.

1           Alternatively, if the Court determines that giving
2     the entire transcript is inconsistent with your prior
3     instruction, your prior instruction does not preclude the
4     notion of a read-back or providing them targeted portions of
5     testimony.  We don't know exactly what their request is.  We
6     do know they've asked for testimony from both sides, sort of
7     the counterpart witnesses that were provided by both sides.
8           So an alternative to giving them the entire
9     transcripts, which we favor, would be to ask them is there
10    some particular testimony and we could have a read-back of
11    that portion of the testimony, again, so this isn't a
12    guessing game for the jury.
13          It's not a memory test and they will then be
14    allowed to make a decision based on the actual evidence and
15    not, you know, what are now sort of long-ago memories of
16    what was said in this courtroom, you know, weeks ago.
17          Thank you.
18          THE COURT:  Thank you, Counsel.
19          MR. MARDER:  Good morning, Your Honor.  David
20    Marder appearing again on behalf of plaintiff.
21          THE COURT:  Good morning, Mr. Marder.
22          MR. MARDER:  Your Honor, the instruction that
23    appears at the bottom of the page and that appeared in the
24    jury instructions comes directly from the Eighth Circuit's
25    pattern jury instructions.

1    At the beginning of this trial the parties met and
2    conferred and both stipulated to this instruction and both
3    agreed at the outset that the jurors would not have a copy
4    of the transcript.
5    So based on the fact that this is the Eighth
6    Circuit's preferred language and based on the fact that the
7    parties have already agreed and stipulated to this
8    instruction that the jurors would not be receiving
9    transcripts, we think that your response, which refers the
10   jury to the agreed-upon instruction, is appropriate.
11   If Your Honor were inclined to give the
12   transcripts, which we don't think you should, we certainly
13   object to any targeted or redacted reading of the
14   transcripts back to the jury.  That would cause the jury to
15   focus on one portion of the transcript as opposed to all the
16   others, and we think that would certainly be inappropriate.
17   But setting that aside, Your Honor, I think it's
18   clear, based upon the stipulation of the parties and the
19   Eighth Circuit's preference on how to handle this, that the
20   jury should rely on its notes and its memory rather than on
21   any particular transcript.
22   THE COURT:  Thank you, Counsel.  I appreciate your
23   arguments.  It is the ruling of the Court that the
24   instruction will be given as I have presented to you.  It
25   will be presented to them in writing.

```
1              LAW CLERK:  All rise.
2              THE COURT:  Have a good morning.
3              MR. COLLYARD:  Thank you.
4         (Recess taken at 9:53 a.m.)
5                     *    *    *    *    *
6         (10:49 a.m.)
7                            IN OPEN COURT
8                          (JURY NOT PRESENT)
9              THE COURT:  Counsel, please note your appearances.
10             MR. COLLYARD:  Good morning, Your Honor.  Mike
11   Collyard on behalf of Plaintiff Douglas Kelley.
12             THE COURT:  Good morning, Mr. Collyard.
13             MR. GLEESON:  Good morning, Judge.  John Gleeson
14   on behalf of BMO Harris Bank.
15             THE COURT:  Thank you.  Good morning, Mr. Gleeson.
16             The jury has informed me that they have reached a
17   verdict.  We will retrieve the jury now.
18        (Pause)
19                            IN OPEN COURT
20                           (JURY PRESENT)
21             THE COURT:  Good morning.  Please be seated.
22             Members of the Jury, I understand you have reached
23   a verdict.  Is that correct?
24             THE JURY:  Yes.
25             THE COURT:  Who was elected as your foreperson?
```

1                    FOREPERSON:  Oh, me.
2                    THE COURT:  Thank you.  And, sir, is the verdict a
3     unanimous verdict?
4                    FOREPERSON:  Yes.
5                    THE COURT:  Okay.  Would you please provide the
6     CSO the verdict form.
7           (Document handed to the Court)
8                    THE COURT:  Thank you.
9           (Pause)
10                   THE COURT:  I will now read the verdict aloud.
11    Members of the Jury, please pay close attention.  After I
12    read the verdict, I will poll you and ask you if this is, in
13    fact, your verdict.
14                   We, the jury, in this case, unanimously make these
15    answers to the following questions:
16                   Count I, Minnesota Uniform Fiduciaries Act.  Do
17    you find in favor of plaintiff and against defendant on
18    Count I, which alleges a violation of the Minnesota Uniform
19    Fiduciaries Act?  And the answer is no.
20                   Count II.  Do you find in favor of plaintiff and
21    against defendant on Count II, which alleges breach of
22    fiduciary duty?  The answer:  No.
23                   Count III, Aiding and Abetting Fraud.  Do you find
24    in favor of plaintiff and against defendant on Count III,
25    which alleges aiding and abetting fraud?  Answer:  No.

1    Count IV, Aiding and Abetting Breach of Fiduciary
2    Duty.  Do you find in favor of plaintiff and against
3    defendant on Count IV, which alleges aiding and abetting
4    breach of fiduciary duty?  Answer:  Yes.
5         Then you're directed to answer Question Numbers 5
6    and 6 only if you answered "yes" to at least one of the
7    previous questions.  Having done so, if you answer -- I will
8    read your response.
9         Question Number 5.  What sum of money will fairly
10   and adequately compensate plaintiff for any harm arising
11   from any claim or claims on which you have found in favor of
12   plaintiff?  The amount:  484,209,716.
13        You may not award punitive damages against the
14   defendant unless you have first found against the defendant
15   on at least one of the plaintiff's claims by answering "yes"
16   to at least one of the first four questions.  And you have
17   provided an answer to Question 5.
18        If you answered no to all of the first four
19   questions and you have not provided an answer to Question 5,
20   do not answer Question Number 6.
21        Question Number 6.  We assess punitive damages
22   against defendant in the amount of $79,533,394.
23        We, the jury, have answered the foregoing
24   questions as indicated and return the same to the Court as
25   our verdict.

```
 1              I will now poll the jury, and I will start in the
 2     back row and I will -- you will be juror number 1 and then
 3     we will just go through.  Then to the front, and I will
 4     start on the left and we'll go through.  Okay?
 5              So juror number 1, is this your verdict?
 6              JUROR 5:  Yes.
 7              THE COURT:  Juror number 2?
 8              JUROR 7:  Yes.
 9              THE COURT:  Juror number 3?
10              JUROR 9:  Yes.
11              THE COURT:  Juror number 4?
12              JUROR 11:  Yes.
13              THE COURT:  Juror number 5?
14              JUROR 12:  Yes.
15              THE COURT:  Juror number 6?
16              JUROR 16:  Yes.
17              THE COURT:  Juror number 7?
18              JUROR 18:  Yes, Your Honor.
19              THE COURT:  Juror Number 8.
20              JUROR 25:  Yes.
21              THE COURT:  Juror number 9?
22              JUROR 27:  Yes.
23              THE COURT:  Juror number 10?
24              JUROR 28:  Yes.
25              THE COURT:  And juror number 11?
```

1  JUROR 10:  Yes.

2  THE COURT:  Very well.  Then, Members of the Jury,

3  you have performed your responsibilities for this Court and

4  I want to thank you here in open court for the time, the

5  care, the attention, and the hard work that you have done

6  throughout this proceeding.

7  As you well know better than I, the difficulty of

8  sitting and listening to lots of information, processing

9  that information without discussion, and then having an

10  opportunity when going back for your deliberations to

11  discuss that amount of information in a complex area and

12  render verdicts as you have done.

13  The jury service that you have performed is one of

14  the most important types of service that you can perform in

15  the United States under our Constitution, and you have done

16  so well and I thank you very much for your service.

17  All rise.

18  MR. MOHEBAN:  Your Honor, may I be heard?

19  THE COURT:  You may proceed.

20  MR. MOHEBAN:  My request --

21  THE COURT:  I have not given you permission.  You

22  will have permission outside of the presence of the jury.

23  (Jury excused)

24  **IN OPEN COURT**

25  **(JURY NOT PRESENT)**

1  THE COURT: You may be seated. You wish to be
2  heard?
3  MR. MOHEBAN: Yes. My request Is only that we
4  have an opportunity to review the verdict form before the
5  jury is discharged.
6  THE COURT: Okay. You wish to do so right now?
7  MR. MOHEBAN: Yes.
8  THE COURT: You may do so right now.
9  (Counsel review verdict form)
10  MR. MOHEBAN: Thank you.
11  THE COURT: You're welcome.
12  There being no additional matters before the Court
13  at this time --
14  MR. GLEESON: Judge, one request.
15  THE COURT: You may make your request.
16  MR. GLEESON: There are a couple of matters. We
17  would like just a -- maybe two weeks to brief before the
18  entry of judgment. One relates to you may recall in the in
19  limine -- in the decision on the in limine application
20  regarding offsets, that the Court said -- and this was
21  ECF 241, was your decision, page 11 -- to the extent that
22  there might be reductions based on collateral sources, that
23  could be the subject of a post-trial application.
24  That issue and the appropriateness of statutory
25  interest are a couple of issues, and I think that's all, but

1       we would like to -- a little opportunity to think about
2       whether there's any others.
3                    But before the entry of judgment, we would like to
4       be heard on those two issues at least and we ask two weeks
5       to have an opportunity to do that.  That's our application.
6                    MR. MARDER:  Your Honor, in the motion in limine
7       you indicated that the offsets were irrelevant.  And then as
8       an alternative point you said even if offsets weren't
9       irrelevant, then it's something that could be considered
10      later, but your primary position in the motion in limine was
11      that the offsets are irrelevant.  That's the position that
12      has been taken over and over again by both the Bankruptcy
13      Court and this Court.
14                   And to the extent the defendants want to brief
15      that issue, they can do it 28 days after the entry of
16      judgment in the context of a motion for a new trial or JMOL,
17      but in no place did you indicate in your prior decisions
18      that there would be some kind of post-verdict procedure
19      whereby we would subtract offsets.
20                   That's simply not what's said in the motion in
21      limine.  You said that as an alternative, even if you --
22      even if these were relevant, they wouldn't be included until
23      some kind of post-judgment proceeding.
24                   So we strongly object to any briefing.  There's
25      simply no need for that.

1   With respect to the two weeks for the prejudgment
2   interest, I think that's acceptable to us.  We think that
3   the judgment should incorporate prejudgment interest and the
4   parties probably should brief that so Your Honor could have
5   the benefit of our views on that.
6       But we strenuously object to any effort to try to
7   change this verdict that this jury worked so hard to render.
8       Thank you.
9       MR. GLEESON:  Just to be clear, Judge, what you
10  wrote was, "Moreover, to the extent that BMO Harris believes
11  that it may be entitled to a reduction based on collateral
12  source payments, the appropriate procedure is for BMO Harris
13  to seek a reduction after trial," and you cited the *Clark*
14  *vs. Burlington Northern* case of the Eighth Circuit.
15      So we do think it's an issue that the Court
16  expressly reserved post trial that influences the content of
17  the judgment.  It's not a post-judgment motion.
18      One other thing, Judge, that I will just point out
19  is the --
20      THE COURT:  Do you know what, Counsel?  I am going
21  to take a break right now.  We will take a 15-minute break
22  and we will resume.  I am going to dismiss the jury.
23      (Recess taken at 11:04 a.m.)
24                  *   *   *   *   *
25      (11:17 a.m.)

**IN OPEN COURT**

**(JURY NOT PRESENT)**

THE COURT: Please be seated. Does counsel wish to be heard? You will have five minutes. I have some other matters that need to be addressed.

MR. GLEESON: Just to complete the last thought, I already read to you the Court's invitation or at least the Court's acknowledgement that there might be a post-trial motion with regard to offsets. We asked for two weeks to do that. We ask for two weeks to address the appropriateness of statutory interest.

And just a reminder to the Court that in addition to what we suggest is the need for that work to be done, there are equitable defenses you reserved. We assume you need no more briefing on that.

THE COURT: I need no more briefing on that. Thank you, Counsel.

MR. GLEESON: Okay. And that's our request, and thank you to the Court.

THE COURT: You're welcome.

MR. MARDER: Your Honor, just very briefly. I went back to your decision on the motion in limine and it just confirmed my memory. You specifically say, "For these reasons, reducing the trustee's damages based on settlements the trustee negotiated with third parties would be improper

1  and would not accurately reflect BMO Harris's alleged
2  liability."  You then go on and say, moreover, this is --
3  the procedure would be to attack this post trial.
4         So it's very clear that that was an alternative
5  holding and that your primary holding was that offsets are
6  irrelevant.  You then simply said even if they weren't
7  irrelevant, this isn't the time to address that.
8         Secondly, Your Honor, I'm unaware of any procedure
9  that would allow them to attack this verdict before
10 judgment.  If they're talking about a remitter motion, we're
11 looking at Rule 59(e), motion to alter or amend judgment.
12 If they're looking at a JMOL, that's also post judgment.
13 There is no procedure that I'm aware of in the federal rules
14 that allows them to attack this verdict before the judgment
15 even issues.
16        So we would strongly object to any briefing on
17 offsets, and we do agree that we should have two weeks to
18 address the prejudgment interest.
19        THE COURT:  Thank you.  Okay.  We are in recess.
20    (Court adjourned at 11:19 a.m.)
21              *     *     *
22        I, Lori A. Simpson, certify that the foregoing is a
   correct transcript from the record of proceedings in the
23 above-entitled matter.
24        Certified by:  *s/ Lori A. Simpson*
25                       Lori A. Simpson, RMR-CRR