UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Douglas A. Kelley, *in his capacity as the Trustee of the BMO Litigation Trust*,

Plaintiff,

v.

BMO Harris Bank N.A., *as successor to M&I Marshall and Ilsley Bank*,

Defendant.

Case No. 19-cv-1756 (WMW)

**ORDER**

---

This matter is before the Court on the joint motion of Plaintiff Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust (hereinafter, Kelley or the Trustee), and Defendant BMO Harris Bank N.A. (BMO Harris) for continued sealing of certain pretrial documents filed under temporary seal. (Dkt. 165.)

"A document may be filed under seal in a civil case only as provided by statute or rule, or with leave of court." L.R. 5.6(a)(1). There is a common law right of access to judicial records, which includes the public's "right to access documents that are submitted to the Court and that form the basis for judicial decisions." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 960 F. Supp. 2d 1011, 1013 (D. Minn. 2013) (citing *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013)). The common law right of access applies to judicial records in civil proceedings. *IDT Corp.*, 709 F.3d at 1222. "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings and 'to keep a watchful

eye on the workings of public agencies.' " *Id.* (internal citation omitted) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The public's right of access "also provides a measure of accountability to the public at large, which pays for the courts." *Id.* Because a district court has supervisory power over its records, the decision to seal is within the court's discretion. *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990).

The public's right of access "is not absolute, but requires a weighing of competing interests." *Id.* Specifically, a district court "must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp.*, 709 F.3d at 1223. The weight that a court gives to the presumption of access "must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts." *Id.* at 1224 (internal quotation marks omitted). Even when the "weight of the presumption [of public access] is low" because it does not implicate the district court's exercise of judicial power, it must nonetheless be overcome by some "countervailing reason." *See id.* (internal quotation marks omitted).

Here, the parties agree that the following documents, identified by docket entry number, should be unsealed in their entirety: 113-1, 113-2, 113-5, 113-6, 113-7, 113-8, 113-9, 113-10, 113-12, 115, 115-1, 122-3, 122-4, 129 and 133-1. As such, the Court

grants the parties' joint motion as to these documents and will direct the Clerk of Court to unseal these documents.

The parties disagree as to whether the following eight documents, identified by docket entry number, should be unsealed: 111, 113-3, 113-4, 113-11, 122, 122-1, 122-2 and 126. These documents include the memoranda in support of and in opposition to the Trustee's motion to exclude expert opinion testimony, the expert reports of the parties' banking experts, redacted portions of deposition transcripts and a letter from the Federal Reserve Bank of Chicago. BMO Harris argues that these documents contain information protected by the bank examination privilege. The Trustee disagrees, arguing that these documents should be unsealed in their entirety.

The bank examination privilege arises from federal banking regulations. *See* 12 C.F.R. §§ 21.11(k), 208.62(j). "The bank examination privilege is a qualified privilege [that] shields **from discovery** agency opinions or recommendations . . . ." *Rockwood Bank v. Gaia*, 170 F.3d 833, 839 n.4 (8th Cir. 1999) (emphasis in original) (citing *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992)). This privilege "accords agency opinions and recommendations and banks' responses thereto *protection from disclosure*." *In re Bankers Tr. Co.*, 61 F.3d 465, 471 (6th Cir. 1995) (emphasis added). The bank examination privilege belongs to the relevant regulatory agency, which has the burden of establishing its applicability to particular documents. *See Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993). Notably, this privileged is qualified, and it "protects only agency

3

opinions and recommendations from disclosure; purely factual material falls outside the privilege." *Id.*  Even when the bank examination privilege applies, "the privilege may be overridden as to protection of deliberative material if good cause is shown." *In re Bankers Tr. Co.*, 61 F.3d at 471.

As this Court addressed in its October 14, 2022 Order, the bank examination privilege is a *discovery* privilege that has no apparent application after discovery has ended. *See, e.g.*, 12 C.F.R. § 208.62(j) (prohibiting production of information in response to subpoena or request for disclosure); *Rockwood Bank*, 170 F.3d at 839 n.4 (observing that bank examination privilege "shields **from discovery** agency opinions and recommendations" (emphasis in original)); *In re Bankers Tr. Co.*, 61 F.3d at 471 (describing bank examination privilege as "protection from disclosure"); *In re Subpoena*, 967 F.2d at 634 (addressing "the discovery of bank examination information").  BMO Harris has not identified any legal authority suggesting that the bank examination privilege governs the treatment of documents *after* a court has ordered the disclosure of those documents in discovery.  Moreover, although the privilege belongs to the relevant regulatory agency, no federal agency has asserted the privilege in this Court with respect to the sealing of pretrial documents.  Indeed, neither BMO Harris nor any federal agency has presented any evidence in support of the asserted privilege.  As this Court previously observed, BMO Harris and federal regulatory agencies had the opportunity to establish the applicability of the bank examination privilege during discovery.  The bankruptcy

court rejected those arguments, and the bankruptcy court's discovery rulings were not appealed.[1]

As addressed above, the common law right of access to judicial records includes the public's "right to access documents that are submitted to the Court and that form the basis for judicial decisions." *Aviva Sports*, 960 F. Supp. 2d at 1013 (citing *IDT Corp.*, 709 F.3d at 1222). The documents that BMO Harris seeks to keep sealed were submitted to the Court in support of or opposition to disputed pretrial issues. And much of this information was admitted in evidence at trial in open court. The fact that certain information might have been privileged from discovery at one time does not establish that the information must remain sealed *after* having been disclosed in discovery pursuant to a court order and relied on by the parties, the Court and the jury in public judicial proceedings. Accordingly, BMO Harris's reliance on the bank examination privilege is both untimely and misplaced.

BMO Harris asserts, in the alternative, that portions of one document—namely, a report prepared by the Trustee's banking expert—must remain sealed pursuant to the Suspicious Activity Report (SAR) privilege. The SAR privilege, like the bank

---

[1] The bank examination privilege does not protect factual material, and the privilege "may be overridden as to [the] protection of deliberative material if good cause is shown." *In re Bankers Tr. Co.*, 61 F.3d at 471. When addressing this good-cause standard, district courts consider, among other factors, the availability of other evidence, the seriousness of the litigation and issues involved, the role of the government in the litigation and the possibility of future timidity by government employees if disclosure occurs. *Id.* at 472. The bankruptcy court addressed these factors when it ordered BMO Harris to produce purportedly privileged documents during discovery in 2017 and found that each of these factors supported overriding the privilege in this case.

examination privilege, is a *discovery* privilege. *See* 12 C.F.R. § 21.11(k)(1)(i) (providing that "any national bank that is subpoenaed or otherwise requested to disclose a SAR, or any information that would reveal the existence of a SAR, shall *decline to produce* the SAR or such information" (emphasis added)). And the SAR privilege does not apply to the "underlying facts, transactions, and documents upon which a SAR is based." 12 C.F.R. § 21.11(k)(1)(ii)(2); *accord Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214, 1217 (M.D. Fla. 2013) (observing that "the SAR privilege does not shield from discovery reports, memoranda, or underlying transactional documents generated by a bank's internal investigation procedures"); *United States v. Holihan*, 248 F. Supp. 2d 179, 187 (W.D.N.Y. 2003) ("[A]ny supporting documentation which would not reveal either the fact that an SAR was filed or its contents cannot be shielded from otherwise appropriate discovery based solely on its connection to an SAR."); *Gregory v. Bank One, Ind., N.A.*, 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002) ("The Rule's requirement of confidentiality applies only to the SARs themselves and the information contained therein, but not to their supporting documentation.").

For the reasons addressed above with respect to the bank examination privilege, BMO Harris has not established that the SAR privilege requires the continued sealing of a report prepared by the Trustee's banking expert, who testified about the contents of her report during trial in open court. Moreover, BMO Harris has not demonstrated that the SAR privilege even applies to an expert report. The SAR privilege prohibits a national bank or its employees from disclosing SAR information. *See* 12 C.F.R. § 21.11(k)(1)(i).

6

BMO Harris identifies no legal authority suggesting that the SAR privilege also governs the Trustee's disclosure of a report prepared by his banking expert.  BMO Harris's opportunity to assert the SAR privilege was during discovery, which ended several years ago.  Any disclosure that might have been governed by the SAR privilege has already occurred.  The SAR privilege has no apparent relevance to whether documents must remain sealed after having been disclosed in discovery and relied on by the parties, the Court and the jury in public judicial proceedings.  Accordingly, BMO Harris's reliance on the SAR privilege is both untimely and misplaced.

Because BMO Harris identifies no legal basis for continued sealing, the Court denies BMO Harris's request for the continued sealing of the following documents: 111, 113-3, 113-4, 113-11, 122, 122-1, 122-2 and 126.  As such, the Court will direct the Clerk of Court to unseal these documents.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. The parties' joint motion for continued sealing, (Dkt. 165), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

2. Unless a timely motion for further consideration is filed pursuant to Local Rule 5.6(d)(3), the Clerk of Court shall unseal the following documents, identified by docket filing number, 28 days after the date of this Order: 111, 113-1, 113-2, 113-3,

7

113-4, 113-5, 113-6, 113-7, 113-8, 113-9, 113-10, 113-11, 113-12, 115, 115-1, 122, 122-1, 122-2, 122-3, 122-4, 126, 129 and 133-1.

Dated:  December 15, 2022                                  s/Wilhelmina M. Wright
                                                                                                             Wilhelmina M. Wright
                                                                                                             United States District Judge