UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Douglas A. Kelley, in his capacity as the
Trustee of the BMO Litigation Trust,

      Plaintiff,

v.

BMO Harris Bank N.A., as successor to
M&I Marshall and Ilsley Bank,

      Defendant.

Case No.: 0:19-cv-01756-WMW

Hon. Wilhelmina M. Wright

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
BMO HARRIS BANK N.A.'S MOTION FOR A NEW TRIAL ON COUNT IV OR,
IN THE ALTERNATIVE, FOR A CONDITIONAL REMITTITUR**

Plaintiff's opposition (Doc. 427) ("Opp.") fails to rebut the grounds for relief detailed in Defendant's opening brief (Doc. 404) ("Br.").[1]

**Verdict Against Great Weight of Evidence.** To avoid duplicative briefing, BMO incorporates its Rule 50(b) motion reply. Doc. 440.

**Damages.** The jury's award of compensatory damages, which is based on Plaintiff's legally flawed damages theories, cannot stand.

Legally, damages must be measured not by PCI's indebtedness—the theory the jury necessarily adopted—but by insiders' fraudulent depletion of PCI assets, which cannot be more than $78.1 million. Doc. 440 at 4. And the *relevant* fiduciary duty here was to preserve PCI's assets, which Minnesota law limits to a prohibition against self-dealing or preferential treatment. *Id.* at 5.

Moreover, as BMO explained (Br. 8), at trial Plaintiff advanced the deepening-insolvency damages theory that Minnesota law rejects. Plaintiff has *no response* other than that the jury decided in his favor (Opp. 10)—which only underscores that BMO was prejudiced. The Court should grant a new trial or remit compensatory damages to no more than $78.1 million.

Additionally, Plaintiff fails to identify any basis in the record for punitive damages, Doc. 440 at 5-6, and his due-process analysis fails to engage with BMO's point that once

---

[1] Although BMO disputes all of the arguments in Plaintiff's opposition, this reply brief focuses on select issues. BMO does not waive any arguments in its prior briefing and incorporates those arguments by reference.

1

compensatory damages are appropriately remitted to no more than $78.1 million, an $80 million punitive-damages award is clearly unconstitutional.

**Evidentiary and Instructional Errors.** Multiple errors, taken independently or together, warrant a new trial. Plaintiff ignores cumulative prejudice from the following errors and others addressed in BMO's opening brief:

*Actual Knowledge.* "[K]nowledge may be shown by circumstantial evidence," but "the requirement is *actual* knowledge and the circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed." *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715 (8th Cir. 2019) (citation omitted). Here, the jury was repeatedly instructed that knowledge may be shown by circumstantial evidence, but *never* instructed that the requirement is actual knowledge. Plaintiff's only response to *Zayed* is to suggest this Court ignore it. Opp. 21-22 n.68. And Plaintiff cannot explain away the striking similarities between the trial record in this case and the record the *Zayed* Court held warranted summary judgment *for the defendant*.

*Collective Knowledge.* Plaintiff quotes snippets from cases discussing what a corporation "knew" (Opp. 25), but the law is that scienter may be imputed to a corporation only if held by an individual employee, not collectively. *See, e.g.*, *Zayed*, 913 F.3d at 716 (granting summary judgment on Minnesota aiding-and-abetting-breach-of-fiduciary-duty claim because evidence did not show "anyone at Associated Bank actually knew about the Ponzi scheme"). That proposition is well established, and Plaintiff's cases do not contradict it.

2

Here, as BMO explained (Br. 16-17), Plaintiff presented *only* a collective-knowledge case, never contending to the jury that any individual bank employee had the requisite scienter. Plaintiff's response fails to identify any such contention, and wrongly asks the Court to ignore Plaintiff's closing argument in determining whether BMO was prejudiced.

***Willful Blindness.*** Plaintiff's suggestion that BMO waived this argument by not objecting during closing is astonishing. At the charge conference, Plaintiff's counsel sought guidance regarding Plaintiff's intent to argue willful blindness in closing "just so there's no objections in our closing argument." Tr. 3660:12-15; *see* Tr. 3660:20-21 ("I just don't want to draw an objection and interrupt, so I thought we might want to raise that now . . ."). BMO made clear that, absent a ruling from the Court, it *would* object to *any* such argument during Plaintiff's closing, Tr. 3662:1-3663:3, and the Court overruled BMO's objection, Tr. 3662:18-3663:7. BMO did not waive anything by not interrupting Plaintiff's closing to ask the Court to reconsider.

Plaintiff's closing argument makes clear that Plaintiff's entire scienter case rested on a concept of "willful blindness" that is satisfied by any individual regulatory-compliance failure. *See also* Opp. 31-32. That is legally incorrect because it fails to "give willful blindness an appropriately limited scope that surpasses recklessness and negligence." *Global-Tech Appliances v. SEB*, 563 U.S. 754, 769 (2011).

***Substantial Assistance.*** Plaintiff's only attempt to defend the substantial-assistance instruction relies on *Richard P. Anderson v. U.S. Bank*, and is wrong for the reasons given in BMO's Rule 50(b) reply brief, which BMO incorporates here. *See* Doc. 440 at 2-3.

3

Because substantial assistance is an element that Plaintiff must prove, Plaintiff is also wrong (Opp. 32) that instructing the jury about knowledge vitiates the need for an accurate substantial-assistance instruction. And Plaintiff's misplaced argument about sufficiency of the evidence (Opp. 33-34) serves only to highlight the failure to correctly instruct the jury that legally, substantial assistance must be wrongful (not just "non-routine" customer service).

*Affirmative Defenses.* Plaintiff's arguments are addressed in BMO's prior submissions, including its opposition to Plaintiff's Rule 50(b) motion, which BMO incorporates here. Doc. 428.

*Kelley's Testimony.* Plaintiff's testimony was improper and prejudicial. He characterizes it as "cumulative of extensive expert testimony," Opp. 43, effectively conceding that he testified as an undisclosed expert. Moreover, Plaintiff's "experience with SARs and Ponzi schemes," Opp. 41, *as a lawyer and prosecutor*—based on which he opined about what BMO should have done and what "caused [purported] losses to PCI," Tr. 1951:6-7—is not "industry experience." Plaintiff cites no decision involving remotely similar circumstances, and offers only a brief non-substantive response to *Peoples*, the sole analogous case.

*The FBI-Investigation Evidence.* Plaintiff's whole argument is premised on a misrepresentation of BMO's offer of proof, which explains that the FBI subpoenaed from M&I "*any and all* records for [the PCI account] and/or any accounts in the name of [PCI]." Doc. 308 at 4 (emphasis added). The Court should reject Plaintiff's bizarre contentions (Opp. 48-49) that eliciting evidence of the FBI's subsequent inaction would

4

have been "speculative" or that Ghiglieri's "opinion" about what the FBI *would have done* in a "hypothetical" situation "couldn't have [been] countered" by evidence about what the FBI *did* do with all relevant records in its possession.

***Plaintiff's Counsel's Numerous Prejudicial Statements.*** Plaintiff does not try to defend his counsel's indefensible statements during voir dire, instead arguing that they were not prejudicial. But the false statements that Plaintiff sought to recover funds for charities and teachers' unions occurred when questioning prospective jurors about being fair even though they would not hear from those entities during trial, and therefore were especially prejudicial. Tr. 57:23-59:3. Moreover, Plaintiff ignores the *cumulative* prejudice from his counsel's statements and the other errors BMO identified.

| | |
|---|---|
| Dated: January 18, 2023 | Respectfully submitted, |
| | /s/ Donald B. Verrilli, Jr. |
| John Gleeson (*pro hac vice*)<br>Michael Schaper (*pro hac vice*)<br>Susan Reagan Gittes (*pro hac vice*)<br>Morgan Davis (*pro hac vice*)<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 909-6389<br>jgleeson@debevoise.com<br>mschaper@debevoise.com<br>srgittes@debevoise.com<br>mdavis@debevoise.com | Donald B. Verrilli, Jr. (*pro hac vice*)<br>Elaine J. Goldenberg (*pro hac vice*)<br>Brendan B. Gants (*pro hac vice*)<br>MUNGER TOLLES & OLSON LLP<br>601 Massachusetts Ave. NW<br>Suite 500 E<br>Washington, DC 20001<br>Telephone: (202) 220-1100<br>donald.verrilli@mto.com<br>elaine.goldenberg@mto.com<br>brendan.gants@mto.com |
| Lucia Nale (*pro hac vice*)<br>Joshua D. Yount (*pro hac vice*)<br>Thomas V. Panoff (*pro hac vice*)<br>Christopher S. Comstock (*pro hac vice*)<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 782-0600<br>lnale@mayerbrown.com<br>jdyount@mayerbrown.com<br>tpanoff@mayerbrown.com<br>ccomstock@mayerbrown.com | Keith S. Moheban (#216380)<br>Adine S. Momoh (#390085)<br>STINSON LLP<br>50 South Sixth Street, Suite 2600<br>Minneapolis, MN 55402<br>Telephone: (612) 335-1500<br>keith.moheban@stinson.com<br>adine.momoh@stinson.com<br><br>**ATTORNEYS FOR BMO HARRIS BANK N.A., AS SUCCESSOR TO M&I MARSHALL & ILSLEY BANK** |
| Richard A. Spehr (*pro hac vice*)<br>Gina M. Parlovecchio (*pro hac vice*)<br>MAYER BROWN LLP<br>1221 Avenue of the Americas<br>New York, NY 10020-1001<br>Telephone: (212) 506-2578<br>rspehr@mayerbrown.com<br>gparlovecchio@mayerbrown.com | |