# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust, | Case No.: 0:19-cv-01756-WMW |
| | Hon. Wilhelmina M. Wright |
| Plaintiff, | |
| vs. | **Plaintiff Douglas A. Kelley's Reply Memorandum of Law in Support of His Motion to Amend Judgment to Add Prejudgment and Postjudgment Interest** |
| BMO Harris Bank N.A., as successor to M&I Marshall and Ilsley Bank, | |
| Defendant. | |

## Introduction

Plaintiff's motion to amend the judgment to include prejudgment and postjudgment interest should be granted. Minnesota's mandatory 10% prejudgment interest applies because Plaintiff won a verdict against BMO based on Minnesota law. It's that simple and no authority holds otherwise.

BMO doesn't question Plaintiff's calculations. Nor does BMO dispute that Minnesota's mandatory 10% prejudgment interest applies if Minnesota law governs the award. It does.

Plaintiff's request for 10% prejudgment interest is consistent with the Eighth Circuit's decision in *Kelley v. Boosalis*.[1] *Boosalis* applied the federal law of prejudgment interest *only* because the federal bankruptcy code (11 U.S.C. § 550) "provide[d] the entire basis" for the Trustee's recovery once a fraudulent transfer had been avoided through one of the federal-law provisions listed in Section 550(a). But here the sole basis for Plaintiff's recovery is the state law of aiding and abetting a breach of fiduciary duty, which has *nothing* to do with Section 550 or any other federal law.

BMO asks this Court to misapply *Boosalis*. BMO would have the Court conclude that the federal law of prejudgment interest governs because federal statutes create a bankruptcy estate, enable the appointment of a trustee, and

---

[1] 974 F.3d 884 (8th Cir. 2020).

provide subject-matter jurisdiction over claims "related to" a bankruptcy. But if the Eighth Circuit had intended such a wide-reaching holding, with such a strange rationale, one would expect to find some statement in *Boosalis* indicating that a bankruptcy trustee's claims in federal court will always be subject to the federal law of prejudgment interest, even if grounded in state law. But there's not a word to that effect in *Boosalis*.

If the Court agrees that Minnesota law applies, the only thing left to do is tally the 10% interest over the entire period from the filing of the complaint until judgment is finalized. The mandatory nature of statutory prejudgment interest under Minnesota law automatically forecloses BMO's purported equitable arguments for denying or reducing prejudgment interest.

Plaintiff respectfully requests the Court amend its judgment to include $483,679,075.22 in pre-verdict interest, post-verdict interest at the 10% Minnesota rate ($286,964.98 per day) from November 9, 2022 until final, appealable judgment is entered, and postjudgment interest at the rate provided by 28 U.S.C. § 1961(a), computed daily and compounding annually, from final judgment until BMO pays the judgment.

**Argument**

I.  **Under *Boosalis*, state law governs Plaintiff's request for prejudgment interest on Plaintiff's state-law claim.**

The test for determining whether state or federal law controls the award of prejudgment interest is simple: state law applies when the cause of action arises from state law, and federal law applies "when federal law creates the cause of action asserted."[2] This is the test applied in *Boosalis*, where the court held that the trustee's request for prejudgment interest was governed by federal law because the trustee asserted fraudulent-transfer claims under two federal statutes: Bankruptcy Code Sections 544 and 550.[3] The novel, narrow issue addressed in *Boosalis*, that "divided other courts," was which law applied when one of these federal statutes—Section 544—incorporated state law.[4] The court concluded that the fraudulent-transfer recovery claim was a federal law claim, despite Section 544's incorporation of state law, because the federal statute, Section 550 "provide[d] the entire basis for the Trustee to recover."[5]

---

[2] *Boosalis*, 974 F.3d at 901 (quoting *Gunn v. Minton*, 568 U.S. 251, 257 (2013)); *see also Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995).

[3] 974 F.3d at 901 (8th Cir. 2020) (citing *Mansker*).

[4] *See id*.

[5] *Id.* at 902 (quoting *In re DBSI, Inc.*, 869 F.3d 1004, 1015 (9th Cir. 2017)).

The Court's task in this case is much easier. Unlike *Boosalis*, Plaintiff prevailed on a purely state-law cause of action—aiding and abetting breach of fiduciary duty—not a federal statute incorporating Minnesota law. BMO ignores this distinction by falsely claiming the *Boosalis* trustee "alleged solely a violation of state law" and that this case is "no different than *Boosalis*."[6] This grossly distorts *Boosalis* and ignores the reality that, as the Eighth Circuit observed in finding that federal law governed the award of prejudgment interest, the trustee's cause of action in *Boosalis* was based on two federal statutes. Here, because Plaintiff's cause of action arises solely from Minnesota law—*not* federal statutes incorporating Minnesota law—*Boosalis* is distinguishable, and Minnesota law governs the award of prejudgment interest.[7]

### A.   In determining whether a claim is state or federal, courts look to the cause of action itself, not the extraneous factors cited by BMO.

BMO distorts *Boosalis* beyond recognition, inviting an erroneous holding that Trustee's state-law claim is actually a federal claim because federal statutes

---

[6] BMO Mem. 5, 8.

[7] This is what BMO disclosed its stockholders—to whom BMO owes fiduciary duties of care and candor—when it advised them the damages award in this case (including prejudgment interest) would be approximately $1.049 billion. BMO doesn't dispute that its disclosure applied Minnesota's 10% prejudgment interest rate. BMO's only response is that the disclosure isn't a binding admission. But whether or not it's binding, BMO's disclosure to its stockholders shows that BMO actually believes Minnesota's 10% rate will apply.

govern Trustee's appointment and duties. BMO claims, for example, that without federal law, Plaintiff "would have no standing" and "would have no right to bring suit or recover on any claims against BMO."[8] But the Eighth Circuit's focus in *Boosalis* was squarely on the *cause of action*, not the fact that the plaintiff's standing or authority was derived from his appointment as trustee under federal law.

In determining the trustee's cause of action was federal, the Eighth Circuit noted that fraudulent transfer claims have two parts: avoidance under Section 544 and recovery under Section 550. While the trustee's avoidance power under Section 544 utilized state law, the court observed that "Section 544(b)(1) says nothing about recovery," while "[Section] 550 provides the entire basis for the trustee to recover," and "as the source of recovery, § 550 was *the source* for the award of prejudgment interest."[9] This conclusion was "underscored by § 550(f), which places a separate statute of limitations on recovery actions."[10] The court went on to conclude that, despite its incorporation of state law, avoidance under

---

[8] *Id.* 7.

[9] *Boosalis*, 974 F.3d at 902 (emphasis added).

[10] *Id.*

Section 544 was also a federal cause of action.[11] The point is clear: the determinative factor is whether federal or state law creates the cause of action and, if more than one, the claim providing the source of recovery.

BMO argues that Plaintiff could not have brought his claim but for the infrastructure created by the Bankruptcy Code, observing that various Code provisions created the bankruptcy estate, provided for Plaintiff's appointment as Trustee, and gave him standing to sue BMO. But the holding in *Boosalis* wasn't based on this rationale, and the statutes BMO cites—11 U.S.C. §§ 323, 541(a), 1104, 1106(a), and 1123(b)(3)—were never mentioned in *Boosalis*. Instead, that opinion explicitly stated that the basis for its decision was that the *Boosalis* trustee's *claims* under Sections 544 and 550 were federal—a holding that BMO's reading would render superfluous, indeed meaningless.

The Court should reject BMO's attempt to reinterpret *Boosalis*'s explicit and specific holding and convert it into a sweeping rule the Eighth Circuit never adopted. The *Boosalis* opinion was clear that application of federal law governs

---

[11] As support, the court quoted a Ninth Circuit opinion referring to a Section 544 claim as "a *federal* cause of action." *Id.* (*citing In re DBSI*, 869 F.3d at 1015) (emphasis in original). The court also cited a Supreme Court opinion finding that Pennsylvania courts erred in applying a state prejudgment interest statute to a federal cause of action because prejudgment interest goes to the measure of damages and, as such, "is inseparably connected with *the right of action*." *Id.* at 903 (*citing Monessen Sw. Ry. v. Morgan,* 484 U.S. 330, 335 (1988)) (emphasis added).

the award of prejudgment interest only when "federal law creates the cause of action asserted."[12]

**B. Contrary to BMO's arguments, the existence of 28 U.S.C. § 1334(b) subject-matter jurisdiction doesn't prevent the application of state prejudgment interest law to state-law claims.**

BMO contends that federal law controls the award of prejudgment interest because Plaintiff's claims "are not based on diversity or supplemental jurisdiction, but are instead brought under 28 U.S.C. § 1334(b)."[13] The premise of BMO's argument is mistaken: diversity jurisdiction also exists in this case because BMO is a citizen of Illinois, where its main office is located,[14] Plaintiff is a citizen of Minnesota,[15] and the amount in controversy exceeded $75,000. Regardless, *Boosalis* didn't announce any broad bar against applying state

---

[12] *Id.* at 903 (quotation omitted).

[13] BMO Mem. 9.

[14] *See Buffets, Inc. v. Leischow*, 732 F.3d 889, 897 (8th Cir. 2013); *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 706-710 (8th Cir. 2011) (National Bank is a citizen of the state where its home office is located). Not only is there diversity jurisdiction here, it's also appropriate to find diversity at this juncture (and on appeal). *Buffets*, 732 F.3d at 897 & n.5 (adopting BMO's argument for finding diversity jurisdiction for the first time on appeal based on the fact that BMO is a citizen of Illinois for diversity purposes because "BMO's main office is in Illinois," and that its "earlier presence in the action was consistent with complete diversity of citizenship at the time of judgment").

[15] *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) ("[W]hen a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes").

prejudgment interest law where diversity or supplemental jurisdiction isn't pleaded, and the state-law nature of Plaintiff's claim doesn't hinge on whether 28 U.S.C. § 1332 or Section 1334(b) was used to invoke this Court's jurisdiction over it. *Boosalis* never even mentioned Section 1334(b), let alone used it to justify applying federal prejudgment interest law.

Instead, *Boosalis* observed that because jurisdiction was "based on a federal question, not on diversity or supplemental jurisdiction," there was no basis to apply state law other than potentially through Section 544(b).[16] It focused on the "novel question" of whether Section 544's incorporation of state law provided a basis for state law to apply to prejudgment interest.[17] Since the court concluded that the avoidance claim under Section 544 and recovery claim under Section 550 were federal causes of action, no basis remained for the trial court to apply state prejudgment interest law, making it an improper "expansion of the *Erie* doctrine."[18]

In contrast, the basis for applying state prejudgment interest law here is the Plaintiff's state-law cause of action. The existence of federal subject-matter jurisdiction under 28 U.S.C. § 1334(b) doesn't "federalize" that underlying state-

---

[16] *Boosalis*, 974 F.3d at 902.

[17] *Id*.

[18] *Id.* at 902-03.

law claim into a federal cause of action. Like supplemental jurisdiction, Section 1334(b) creates federal subject matter jurisdiction over claims, even between non-diverse parties, when they are "related to" a bankruptcy case. Section 1334(b) "jurisdiction extends not only to questions of federal law, but also to many state law disputes."[19] When Section 1334(b) confers jurisdiction over certain state-law causes of action, "*Erie* made clear that state law provides the rules of decision for the merits of state law claims in bankruptcy court."[20] When state law provides the basis for the recovery, state prejudgment interest law applies.[21]

While Section 1334(b) jurisdiction also existed in *Boosalis*, the Eighth Circuit determined that the trustee's recovery claims were federal in nature, not

---

[19] *In re Coudert Bros.*, 673 F.3d 180, 187 (2d Cir. 2012).

[20] *Id.*; *accord Nuveen Mun. Trust ex rel. High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 n.11 (3d Cir. 2012) ("Where a claim that derives from state law is before a federal court based on 'related to' jurisdiction, that court also must apply state law.").

[21] *See, e.g., In re TS Emp't, Inc.*, 641 B.R. 753, 765, 768 (Bankr. S.D.N.Y. 2022) (applying state prejudgment interest law where state-law claim was asserted in action based on federal subject-matter jurisdiction under Section 1334(b)); *In re Louis Frey Co., Inc.*, No. 03-15297(SMB), 2006 WL 2090083, at *22 (Bankr. S.D.N.Y. July 28, 2006) (same); *In re Total Transp., Inc.*, 98 B.R. 954, 956 (Bankr. D. Minn. 1989) (same).

state-law causes of action.[22] Unlike here, the Eighth Circuit therefore held that there was no justification for applying state prejudgment interest law in *Boosalis*.

Finally, BMO's assertion that the *Boosalis* trustee didn't plead federal-question jurisdiction under 28 U.S.C. § 1331 is irrelevant. First, the Eighth Circuit stated in *Boosalis* that "it is undisputed that the district court's jurisdiction was based on a federal question."[23] Second, focusing on jurisdictional provisions instead of the nature of the underlying claims misses the point of *Boosalis*: without a state-law cause of action, there is no footing to support application of state prejudgment interest law. Unlike *Boosalis*, Plaintiff here prevailed on a purely state-law cause of action, requiring application of state prejudgment interest law.

### C.   No precedent supports BMO's position that state prejudgment interest law never applies to state-law claims asserted in bankruptcy cases.

*Boosalis* didn't hold that federal law governs prejudgment interest on every state-law claim brought by a bankruptcy trustee or on every state-law claim subject to 28 U.S.C. § 1334(b) jurisdiction because it is "related to" a bankruptcy

---

[22] Again, the court concluded both parts of the *Boosalis* trustee's fraudulent conveyance claim—avoidance under Section 544 and recovery under Section 550—were federal causes of action. *See Boosalis*, 974 F.3d at 902-03.

[23] *Id.* at 902.

case. No such rule exists, and to adopt one would violate the *Erie* doctrine[24] because "[p]rejudgment interest is a substantive matter of state law for the purposes of *Erie*."[25] BMO nevertheless would have courts apply federal law to the award of prejudgment interest in every case brought by a bankruptcy trustee whose appointment and duties were governed by the Bankruptcy Code. BMO would also have courts apply federal prejudgment interest law in every case where "related to" jurisdiction existed under Section 1334(b). BMO is demonstrably wrong, as many courts have applied state law to prejudgment interest awards in both types of cases.[26] In contrast, BMO cannot cite a single case applying either of its proposed standards.

---

[24] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[25] *Schwan's Sales Enter., Inc. v. SIG Pack Inc.*, 476 F.3d 594, 596 (8th Cir. 2007).

[26] Plaintiff cited three cases in which a federal court applied state prejudgment interest law to a state-law claim brought by a bankruptcy trustee based on "related to" jurisdiction under Section 1334(b). In response, BMO says those cases aren't binding and don't specifically address the arguments raised in its opposition. But because BMO's arguments have no basis in established law, courts cannot be expected to have addressed them. Further, Plaintiff's cases weren't an anomaly—others exist. *See, e.g., In re Polaroid Corp.*, No. 08-46617, 2016 WL 11409313, at *6 (Bankr. D. Minn. May 23, 2016) (where trustee brought adversary proceeding claiming breach of contract under Massachusetts law, awarding contractual interest rate as provided for in Massachusetts prejudgment interest statute); *In re Polo Builders, Inc.*, 388 B.R. 338, 360 (Bankr. N.D. Ill. 2008) (in trustee's adversary proceeding for breach of contract, awarding prejudgment interest pursuant to state statute). Similarly, federal courts have applied state prejudgment interest law to state-law claims brought by trustees for failed securities brokers appointed under the Securities Investor Protection Act, 11

*Boosalis* was clear that the determinative factor is whether the *cause of action* is state or federal. Here, as Plaintiff's aiding-and-abetting-breach-of-fiduciary claim arises under Minnesota law, Minnesota law governs the award of prejudgment interest.

## II. Even if federal law governs, the Court should award prejudgment interest to Plaintiff at the same 10% prejudgment interest rate.

Even if the Court applied federal common law, it should award prejudgment interest at the Minnesota statutory rate of 10%.

### A. Prejudgment interest is warranted under federal common law.

The Supreme Court has "repeatedly stated that prejudgment interest 'is an element of [plaintiff's] complete compensation.'"[27] Under federal common law, "generally prejudgment interest should be awarded, absent exceptional circumstances."[28] "The purpose of awarding prejudgment interest is to

---

U.S.C. § 741, et. seq. *See, e.g., In re Sunpoint Sec., Inc.*, 377 B.R. 513, 572 (Bankr. E.D. Tex. 2007) (SIPA trustee entitled to prejudgment interest pursuant to state statutory rate where recovery in adversary proceeding based on state law negligence claim).

[27] *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) (quoting *West Virginia v. United States*, 479 U.S. 305, 310, and n. 2 (1987)).

[28] *U.S. ex rel. Bernard v. Casino Magic Corp.*, 384 F.3d 510, 516 (8th Cir. 2004) (citation omitted); *see also, e.g., Rivera v. Benefit Tr. Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991) ("[P]rejudgment interest should be *presumptively* available to victims of federal law violations." (quotation omitted). Exceptional circumstances "include the claimant's bad faith, the claimant's assertion of frivolous claims, and the claimant's repeated delay tactics." *Rivera*, 921 F.2d at

compensate the prevailing party for its true money damages, to encourage

settlements, and to deter parties from benefitting from unfairly delaying

litigation."[29] An award of prejudgment interest "lies within the sound discretion

of the district court,"[30] and the Court may assess the equities.[31]

The goals of prejudgment interest support an award here. Without

interest, Plaintiff will not be fully compensated for his injury.[32] The bankruptcy

estate has been without the use of nearly half a billion dollars for more than a

decade. Moreover, the jury awarded damages on the 2008 value of the funds, and

$484 million "today is not a full substitute for the same sum that should have

been paid years ago."[33] Over the same period, BMO has had the benefit of the

---

696. No such exceptional circumstances exist here, and BMO doesn't argue
otherwise.

[29] *Casino Magic*, 384 F.3d at 516.

[30] *EEOC v. Convergys Customer Mgmt. Grp., Inc.*, No. 4:04-CV-846 CAS, 2006 WL
2345541, at *5 (E.D. Mo. July 7, 2006), *aff'd sub nom. E.E.O.C. v. Convergys Customer
Mgmt. Grp., Inc.*, 491 F.3d 790 (8th Cir. 2007).

[31] *Id.* (quoting *Cargill, Inc. v. Taylor Towing Serv., Inc.*, 642 F.2d 239, 242 (8th Cir.
1981)).

[32] *Kansas v. Colorado*, 533 U.S. 1, 10 (2001) ("Our cases since 1933 have consistently
acknowledged that a monetary award does not fully compensate for an injury
unless it includes an interest component.").

[33] *Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d
1279, 1331 (7th Cir. 1992) ("Prejudgment interest therefore is an ordinary part of
any award under federal law.").

time-value of those funds. Indeed, if invested in common investment options available to BMO and public-market investors generally, the time value of this damage award likely resulted in benefits to BMO that far exceed BMO's liability for prejudgment interest. Finally, BMO extended the delay of final judgment through its "continuous bringing of motions," "scorched earth" litigation tactics, and general "history of delay in this case."[34] BMO chose this course of action instead of meaningful settlement negotiations. Without an interest award, BMO will unfairly benefit from its machinations, and Plaintiff will not be made whole.

BMO offers three incorrect arguments for denying prejudgment interest under federal law. First, BMO contends prejudgment interest is appropriate "only" when damages are reasonably ascertainable.[35] Although the Eighth Circuit has stated that prejudgment interest should be awarded when the amount of liability is reasonably capable of ascertainment,[36] it has also recognized that ascertainability is one of several factors the Court may consider.[37]

---

[34] Sept. 27, 2017 Tr., ECF 24, at 86:7-8, 21-25; Apr. 5, 2018 Tr., ECF 31, at 119:20.

[35] BMO Mem. 11.

[36] *See Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986).

[37] *See E.E.O.C. v. Rath Packing Co.*, 787 F.2d 318, 334 (8th Cir. 1986) (affirming denial of interest, but weighing various "factors," including *inter alia* uncertainty of backpay liability); *Gen. Facilities, Inc. v. Nat'l Marine Serv., Inc.*, 664 F.2d 672, 675 (8th Cir. 1981) (within court's discretion to consider "factors" such as lost profits being less susceptible of exact measurement); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1237 (10th Cir. 2000) (liquidated

14

This latter approach comports with the Supreme Court's holding that the unliquidated nature of damages shouldn't preclude an award of prejudgment interest.[38] Given that the goals of prejudgment interest are met here, ascertainability shouldn't be dispositive.

Second, BMO contends that interest is inappropriate because BMO didn't have use of the funds during the pendency of the action.[39] BMO is wrong. As an initial matter, the primary consideration is whether Plaintiff was deprived of the use of the funds,[40] not whether BMO was able to use the funds. Even so, BMO *has*

---

nature of damages not dispositive); *R.L. Coolsaet Const. Co. v. Loc. 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 661 (7th Cir. 1999) (inability to calculate damages with absolute precision not a bar); *In re Neponset River Paper Co.*, 219 B.R. 918, 920 (Bankr. D. Mass. 1998), *aff'd*, 231 B.R. 829 (B.A.P. 1st Cir. 1999) (ascertainability is "a factor in the court's equitable balancing, but not necessarily a controlling one"); *cf. Nodaway Valley Bank v. Cont'l Cas. Co.*, 916 F.2d 1362, 1368 (8th Cir. 1990) (although interest on unliquidated damages generally unavailable under Missouri law, citing federal law to find award comported with equities and reflected prejudgment interest goals).

[38] *Kansas*, 533 U.S. at 10 ("[N]umerous courts and commentators have rejected the distinction [between liquidated and unliquidated damages] for failing to acknowledge the compensatory nature of interest awards."); *see also Osborn v. Griffin*, 865 F.3d 417, 458 (6th Cir. 2017) (applying Kentucky law but summarizing modern trend in federal and state courts to permit interest on unliquidated claims).

[39] BMO Mem. 12, 13.

[40] *W. Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages.").

had over a decade to use and invest the $484 million it owes to Plaintiff.[41]

BMO claims that the damages "represent" funds that passed through, but weren't held by, BMO. This is of no consequence. BMO's logic would preclude interest on awards for property damage if the defendant doesn't possess or use the underlying property. Yet courts regularly award prejudgment interest as to such damages, precisely because, like here, defendants have had use of the *damages amounts* owed.[42]

BMO attempts to strengthen its "use" argument by arguing *Kerr v. Charles*

---

[41] The compensatory damages awarded in this case would've increased to nearly $1.2 billion if invested in a conservative, diversified portfolio of 60% U.S. large capitalization stocks (represented by the S&P 500 Index) and 40% U.S. government and investment-grade bonds (represented by the Bloomberg USAgg Index) from the date of the lawsuit's commencement. If invested in the stock of BMO's own parent company (with dividends reinvested), the damages would've grown to more than $1.2 billion. BMO also unquestionably benefitted from using these funds over the past decade to, for example, loan $476 million to build the BMO Tower in Chicago (https://riversideid.com/news/50-story-office-tower-to-begin-construction-next-to-union-station-after-getting-476-million-loan), and buy 22.5 million shares of its own stock (https://capitalmarkets.bmo.com/en/news-insights/news-releases/bmo-financial-group-announces-intention-repurchase-225-million-its-common-shares).

[42] *See, e.g., Gen. Facilities, Inc. v. Nat'l Marine Serv., Inc.*, 664 F.2d 672, 674 (8th Cir. 1981) (affirming interest award for property damage and for expenses incurred while property shut down); *Architectural Contractors, Inc. v. Schilli Transp. Servs., Inc.*, No. 5:13-CV-05179, 2014 WL 7369254, at *1-2 (W.D. Ark. Dec. 29, 2014) ("[T]he Court has determined that **Schilli has had use** of $6,375.76 which rightfully was owed to Plaintiffs as of May 23, 2013." (emphasis added)).

*F. Vatterott & Co.*[43] and *White v. Martin*[44] require unjust enrichment for prejudgment interest. *Kerr* and *White*, however, hinged on the ERISA-specific application of 29 U.S.C.A. § 1132(a)(1)(B), which *Kerr* held included equitable restitution but not compensatory relief.[45] As *Kerr* explained, the former "focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands."[46] The courts thus focused on unjust enrichment in determining compliance with the statute. These cases are inapposite here, where prejudgment interest is part of the compensatory award. The only other case cited by BMO, *Stroh*, merely suggests that, where a defendant has had the use of the funds and thereby has been unjustly enriched, that consideration weighs in favor of an award of prejudgment interest.[47] But unjust enrichment isn't a requirement of an award.

Finally, BMO argues that the jury's award "more than adequately

---

[43] 184 F.3d 938, 946 (8th Cir. 1999).

[44] 290 F. Supp. 2d 986, 989 (D. Minn. 2003).

[45] *Kerr*, 184 F.3d at 943.

[46] *Id.* at 944.

[47] 783 F.2d at 752. One case *Stroh* cites is an ERISA case. *See Short v. Cent. States, Se. & Sw. Areas Pension Fund*, 729 F.2d 567, 576 (8th Cir. 1984). The other, *United States v. Motor Vessel Gopher State*, 614 F.2d 1186, 1190 (8th Cir. 1980), doesn't mention unjust enrichment.

17

compensates Plaintiff." BMO's arguments about the supposed excessiveness of the damage award have been fully addressed in the new trial and remittitur briefing.[48] They are *not* a proper basis for denying prejudgment interest.

### B. The Court should exercise its discretion to award prejudgment interest at Minnesota's 10% statutory rate.

Under federal law, the Court possesses broad discretion to determine the appropriate rate of prejudgment interest.[49] The Court's "determination is to be guided by the purpose such awards serve: to compensate the judgment holder for the use of its money between the date of injury and the date of judgment."[50] In making this determination, "[c]ourts often use the statutory interest rate of the state in which they sit."[51]

---

[48] ECF 427 at 6-19.

[49] *See, e.g., Sunteck Transp. Co., LLC v. King's Express, Inc.*, No. 18-CV-3017 (ECT/LIB), 2019 WL 1238833, at *1 (D. Minn. Mar. 18, 2019). Other circuits agree. *See Frey v. Coleman*, 903 F.3d 671, 682–83 (7th Cir. 2018) (noting it is "not alone" in offering courts option to determine rate more likely to make plaintiff whole, including consideration of state statutory rate; collecting authority from Fourth Sixth, Tenth, and Eleventh Circuits).

[50] *Sunteck*, 2019 WL 1238833 at *1 (citation omitted).

[51] *Id.* (citing *Glob. Traffic Techs., LLC v. Emtrac Sys., Inc.*, No. Civ. 10-4110 ADM/JJG, 2014 WL 1663420, at *16 (D. Minn. Apr. 25, 2014), *aff'd in part, rev'd in part and remanded sub nom. Glob. Traffic Techs. LLC v. Morgan*, 620 Fed. App'x 895 (Fed. Cir. 2015)); *see also, e.g., Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 313 F.3d 1087, 1092–93 (8th Cir. 2002); *MVP Logistics, LLC v. FDG Express, LLC*, No. 22-CV-0686 (WMW/TNL), 2022 WL 7420182, at *4 (D. Minn. Oct. 13, 2022) (Wright, J.); *Iota Phi Lambda Sorority, Inc. v. Contenta Glob. Cap. Grp., LLC*, No. 19-CV-532 (SRN/DTS), 2019 WL 4687115, at *24–25 (D. Minn. Sept. 26, 2019); *Procter &*

Minnesota's statutory rate of 10% should apply here to compensate Plaintiff for the inability to use $484 million over many years. Given the various considerations discussed above, this rate is necessary to adequately compensate Plaintiff and deter dilatory litigation tactics. It's particularly appropriate in light of an "obviously calculated strategy"[52] by BMO to prolong this litigation through its "scorched earth" tactics and its "continuous bringing of motions."[53]

BMO incorrectly contends that "28 U.S.C. § 1961 [s]ets [t]he [r]ate [f]or [p]rejudgment [i]nterest."[54] To the contrary, courts aren't required to use the federal postjudgment interest rate for prejudgment interest.[55] Instead, courts often exercise their discretion to apply the state rate,[56] which, as discussed, is appropriate here to make Plaintiff whole. BMO's proposed rate—awarding a

---

*Gamble Mfg. Co. v. Ass'n of Emps. of St. Louis Plant*, No. 4:18 CV 1026 RWS, 2019 WL 4750364, at *5–6 (E.D. Mo. Sept. 30, 2019).

[52] *Wages v. Stuart Mgmt. Corp.*, No. 12-CV-2905 (PAM/SER), 2014 WL 12617418, at *1 (D. Minn. Aug. 21, 2014) (11% rate appropriate; noting defendant's "obviously calculated strategy to prolong discovery. . . , a strategy that required two motions to compel").

[53] *See* Pl.'s Mem. 10-11.

[54] BMO Mem. 14.

[55] *See, e.g.*, *Monohon v. BNSF Ry. Co.*, No. 4:14-CV-00305, 2022 WL 2128838, at *9 (S.D. Iowa June 14, 2022); *Hite v. Vermeer Mfg. Co.*, 361 F. Supp. 2d 935, 949 (S.D. Iowa 2005), *aff'd*, 446 F.3d 858 (8th Cir. 2006).

[56] *See* n.51 *supra*.

mere $9.3 million by BMO's math—couldn't possibly make Plaintiff whole after the estate was deprived of nearly half a billion dollars for more than a decade. Even BMO doesn't explain why this rate would more appropriately compensate Plaintiff.

Even if the Court were to find that 28 U.S.C. § 1961's postjudgment interest rate necessarily dictated the prejudgment interest rate here (which it doesn't), that rate is determined as of the "calendar week preceding the date of the judgment."[57] BMO's calculation selectively incorporates the rate as of the week before the complaint was filed, which contradicts the statute's plain language and conflicts with relevant case law. For example, *Mansker* used 28 U.S.C. § 1961 for both pre and postjudgment interest, but applied the same rate to both.[58] BMO cites only one case, *In re Living Hope*, but that case found interest could accrue from the earlier of the initial demand for turnover or from the date the complaint was filed.[59] It didn't hold that the *rate* at the time the complaint was filed should govern.

---

[57] 28 U.S.C. § 1961(a).

[58] *See Mansker v*, 54 F.3d at 1331.

[59] *In re Living Hope Sw. Med. SVCS, LLC*, 450 B.R. 139, 158 (Bankr. W.D. Ark. 2011), *aff'd sub nom. In re Living Hope Sw. Med. Servs., LLC*, No. 4:06-BK-71484, 2012 WL 1078345 (W.D. Ark. Mar. 30, 2012), *aff'd,* 509 F. App'x 578 (8th Cir. 2013).

III.   **No time periods should be excluded from the prejudgment interest calculation.**

There is no justification for reducing the pre-verdict interest period due to the pandemic or the purported 44-month "stay." BMO's arguments for reducing this period are both factually and legally incorrect. BMO's factual basis is misleading and inadequate. Most important, under Minnesota law there can be no reductions because pre-verdict interest from complaint through verdict is mandatory[60] under Minnesota law (which is why BMO doesn't even argue for reductions under Minnesota law). And, contrary to BMO's arguments, there is also no basis for reducing the pre-verdict interest period under federal law.

A.   **Interest for the entire pre-verdict period is mandatory under Minnesota law.**

Statutory prejudgment interest is mandatory under Minnesota law and, therefore, cannot be reduced by eliminating periods of relative inaction (as BMO claims). Minn. Stat. § 549.09 subdiv. 1(b) requires that pre-verdict interest "shall be" awarded from "commencement of the action." The Minnesota Legislature has determined that "'shall' is mandatory" when "used in Minnesota Statutes or any legislative act[.]"[61] Because "Minn. Stat. § 549.09 is a statutory mandate,"

---

[60] BMO doesn't even argue for reductions under Minnesota law.

[61] Minn. Stat. § 645.44 subdivs. 1, 16; *see also Redleaf v. Redleaf*, 807 N.W.2d 731, 733 (Minn. Ct. App. 2011) (citing § 645.44 and holding that the meaning of "shall" in § 549.09 "is unambiguous," and mandates that the district Court use the rate provided in the statute).

"[p]rinciples of equity do not factor in to interpreting unambiguous statutory language."[62]

Section 549.09's prejudgment interest is not discretionary, and it would be error to reduce it. In *Tate v. Scanlan International, Inc.*, the Minnesota Court of Appeals reversed the trial court's decision to reduce the pre-verdict interest period because plaintiff requested a trial date continuance.[63] It held, "the language of the statute is mandatory and there is no basis in the case law developed around the statute to support such a reduction."[64] Indeed, the appellate court observed that awarding interest for the entire pre-verdict period actually supports, and doesn't "thwart," the Section 549.09's purposes, one of which is to encourage settlements.[65]

The Eighth Circuit has also recognized Section 549.09's "mandatory nature," which "compels the computation of preverdict interest from the date

---

[62] *Cmty. First Bank v. First United Funding, LLC*, No. A17-2076, 2018 WL 4558213, at *4 (Minn. Ct. App. Sept. 24, 2018).

[63] 403 N.W.2d 666, 674 (Minn. Ct. App. 1987).

[64] *Id.*

[65] *Id.*

suit was filed[.]"[66] This recognition led the Eighth Circuit in both *Capella* and

*Marvin* to reverse the district court's denials of the pre-verdict interest required

by Section 549.09.[67]

Enforcing the full pre-verdict interest period here would serve the

purposes of prejudgment interest under Minnesota law: "(1) compensation of the

plaintiff for the loss of use of money, and, by implication, deprivation of any gain

to the defendant resulting from the use of money rightfully belonging to the

plaintiff; and (2) promotion of settlement."[68] An award satisfies a compensatory

purpose because Plaintiff clearly didn't have use of the compensatory damages

awarded by the jury for the entire pre-verdict period, while BMO did. And,

despite having every opportunity to try to settle this case before, during, and

after the "stay" and the pandemic, BMO never made any reasonable effort to do

so. This is especially important here because Minnesota's legislature has

determined that the only way to reduce the pre-verdict interest period is to

engage in meaningful settlement negotiations by making a written settlement

---

[66] *Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.,* 617 F.3d 1040, 1052 (8th Cir. 2010) (citing *Marvin Lumber, Cedar Co. v. PPG Indus. Inc.,* 401 F.3d 901, 919 (8th Cir. 2005)).

[67] *Id.* at 1052-53; *Marvin,* 401 F.3d at 919.

[68] *Johnson v. Kromhout,* 444 N.W.2d 569, 571 (Minn. Ct. App. 1989).

offer.[69] Prejudgment interest over the entire pre-verdict period is the legislatively prescribed consequence of a party's refusal to engage in meaningful settlement negotiations.

Pre-verdict interest from complaint to verdict is mandatory under Section 549.09. Even if the Court had discretion to shorten that period, doing so would run counter to Section 549.09's purposes, and exercising such discretion would be inappropriate.

**B.    Federal law does *not* support reducing the pre-verdict interest period.**

BMO misstates facts and relies on dated opinions from outside this district to argue for reducing the pre-verdict interest period. But recent cases support enforcing the full pre-verdict interest period.

**1.    The purposes of prejudgment interest under federal law support enforcing the full pre-verdict interest period.**

Like Minnesota law, prejudgment interest under federal law serves three primary purposes: to compensate the plaintiff for its true damages, to promote settlement, and to discourage parties from benefiting by delaying litigation.[70] BMO made the strategic decision to not make good-faith settlement offers throughout this entire case, BMO (not Plaintiff) made numerous attempts to

---

[69] Minn. Stat. § 549.09 subdiv. 1(b); *see also Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 356 F.3d 850, 859 (8th Cir. 2004).

[70] *Casino Magic*, 384 F.3d at 516.

delay this case, BMO (not Plaintiff) chose to intentionally delay disclosing that it found dozens of back up tapes until discovery was closed and was sanctioned for its delays, BMO (not Plaintiff) chose to intentionally destroy tens of millions of pages of documents that it never told anyone about and that caused further delay during the case, and Plaintiff bore the "true cost" of the damages incurred by being deprived of the compensatory damages awarded by the jury for the entire pre-verdict period.

### 2. The pandemic doesn't justify reducing the pre-verdict interest period.

BMO misrepresents the pandemic's impact on the *trial* in this case. BMO insists that trial was delayed from April 2020 through June 2022, but the earliest trial date ever set for this case was January 18, 2022 (and was cancelled after less than two weeks).[71] The pandemic couldn't have delayed a trial date that hadn't even been scheduled (or that stood for less than two weeks).

BMO's date range is also seemingly random: BMO doesn't explain why April 1, 2020, or June 1, 2022, are the appropriate bookends. Indeed, civil jury trials were only suspended in this District from April 15, 2020, through May 3, 2021.[72] BMO has the burden of justifying any deviation it seeks from the

---

[71] ECF 87, 93.

[72] *See* Dist. of Minn. General Order No. 9, 28.

presumptive pre-verdict interest period, and BMO hasn't offered any evidence or argument to meet that burden.[73]

BMO also consistently tried to delay trial throughout the pandemic by seeking to stay the case, reopen discovery, schedule evidentiary hearings, and engage in additional briefing. BMO filed at least eight such requests that would have delayed trial so they could be completed.[74] And six of those requests were filed between April 2020 and June 2022,[75] the period during which BMO claims trial was delayed by the pandemic. This case was being actively litigated during the pandemic, and not delayed. Moreover, all these motions were denied (many several times). BMO did not seek "to move the case forward" during the

---

[73] *See Sec. & Exch. Comm'n v. Jacobs*, No. 1:13 CV 1289, 2014 WL 12768507, at *7 (N.D. Ohio Dec. 3, 2014) (Defendant failed to offer rebuttal evidence to defeat presumption that prejudgment interest applies).

[74] *See* ECF 41 (Mot. to Stay), 71 (Request for Reconsideration), 73 (Request to reopen discovery), 79 (Status report containing request to reopen discovery and request for 1-2 day evidentiary hearing), 81 (reiterating requests to reopen discovery and for evidentiary hearing), 83 (renewing request to reopen discovery and for evidentiary hearing), 91 (again requesting to reopen discovery and to hold evidentiary hearing), 106 (reiterating requests to reopen discovery and for evidentiary hearing).

[75] *See* ECF 73 (Request to reopen discovery), 79 (Status report requesting to reopen discovery and 1-2 day evidentiary hearing), 81 (reiterating requests to reopen discovery and evidentiary hearing), 83 (renewing request to reopen discovery and evidentiary hearing), 91 (again requesting to reopen discovery and hold evidentiary hearing), 106 (reiterating requests to reopen discovery and for evidentiary hearing).

pandemic as it claims now,[76] but rather did everything it could to delay trial. Having consistently sought delay throughout the pandemic, BMO's self-serving complaints of prejudice carry no weight.

BMO's discovery misconduct also delayed this case's transfer from Bankruptcy Court to District Court. For example, BMO brought, and lost, so many baseless discovery motions that Judge Sanberg was "absolutely appalled at BMO's continuous bringing of motions," and remarked that she had "never seen anything like this in [her] entire life."[77] Judge Sanberg also found that BMO engaged in "scorched earth" discovery tactics meant to increase costs.[78] And BMO concealed its backup tape destruction from Plaintiff for years, ultimately requiring an evidentiary hearing and months of discovery so that Plaintiff could unearth the full extent of BMO's spoliation. BMO also refused to have this trial held in Bankruptcy Court, which delayed trial.[79] If not for BMO's discovery misconduct and calculated delay tactics at the Bankruptcy Court, this case would have likely been tried at the District Court well before the pandemic even started.

_____

[76] BMO Mem. 17.

[77] Sept. 27, 2017 Tr., ECF 24, at 86:7-8, 24-25.

[78] *Id.* at 21-24.

[79] *See* Bankr. Adv. Proc. 12-4288 ECF 29 (August 9, 2016 "Consent" where BMO answers "no" to question seeking consent to hold trial in Bankruptcy Court).

BMO also ignores the wealth of authority addressing the pandemic's effect on prejudgment interest. At least five recent opinions (none of which BMO mentions) have rejected reductions to the prejudgment interest period due to the pandemic.[80] BMO ignores these cases, instead clinging to decades-old, inapposite cases that don't address the pandemic at all, including one case decided under South Dakota law (not federal law).[81]

BMO's reduction request is precluded by Eighth Circuit authority (which, to fit the pattern, BMO also ignores), holding that delays in bringing a case to trial don't reduce the prejudgment interest period unless they're caused by the party seeking prejudgment interest.[82] Since BMO doesn't argue that Plaintiff is at

---

[80] *See Ewing v. Carnival Corp.*, No. 19-20264-CIV, 2022 WL 17846578, at *2-3 (S.D. Fla. Dec. 22, 2022); *Zivkovic v. Laura Christy, LLC*, No. 1:17-CV-553-GHW, 2022 WL 1684268, at *1-2 (S.D.N.Y. May 26, 2022); *Paragon Asset Co. Ltd. v. Gulf Copper & Mfg. Corp.*, No. 1:17-CV-203, 2022 WL 3445744, at *42 (S.D. Tex. Aug. 17, 2022); *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. CV 17-1390-RGA, 2022 WL 3973499, at *5 (D. Del. Aug. 31, 2022); *Treadway v. Otero*, No. 2:19-CV-00244, 2022 WL 17729256, at *6 (S.D. Tex. June 9, 2022); *Tercero v. Texas Southmost Coll. Dist.*, No. 1:16-CV-282, 2022 WL 292955, at *3 (S.D. Tex. Feb. 1, 2022), *aff'd*, No. 22-40004, 2022 WL 5101903 (5th Cir. Oct. 4, 2022).

[81] *See* BMO Mem. 16-17.

[82] *United States v. Am. Com. Barge Line Co.*, 988 F.2d 860, 864 (8th Cir. 1993) (finding the district court's denial of prejudgment interest was an abuse of discretion and remanding for further findings consistent with the principle that "If prejudgment interest is to be denied. . . the denial should be limited to the period of time attributable to [Plaintiff]-caused delays in the trial setting.")

fault for any delays associated with the pandemic, those delays cannot justify reducing the pre-verdict interest period under federal law.

### 3. The early discovery stay also doesn't justify reducing the pre-verdict interest period.

BMO's request to remove January 2013 through September 2016 from the pre-verdict interest period should also be denied. Again, the Eighth Circuit has held that litigation delays can't reduce the prejudgment interest period unless they were caused by the party seeking prejudgment interest.[83] BMO doesn't argue that Plaintiff was responsible for the stay. And the cases BMO cites to support its argument are from outside this district, including one that relies on South Dakota law, not federal law.[84] There's simply no justification for using the stay to shrink the pre-verdict interest period.

## IV. Plaintiff is entitled to post-verdict, prejudgment interest through the date of the amended judgment.

In his opening memorandum, Plaintiff explained that under Minnesota law,[85] as a component of statutory prejudgment interest, he is entitled to $286,964.98 per day in post-verdict interest from the date of the verdict until the

---

[83] *Id.*

[84] BMO Mem. 16-17.

[85] *See* Minn. Stat. § 549.09 subdiv. 1(a).

judgment becomes final.[86] As Plaintiff explained, the November 9 judgment

wasn't final because it clarified that the award of $563,743,110.00 "does not

include prejudgment interest, postjudgment interest, or costs,"[87] and judgments

that leave open the determination of prejudgment interest aren't considered to be

final judgments.[88] As in *Dieser* and in *ResCap*, discussed in Plaintiff's opening

memorandum, by stating that prejudgment interest was not yet "included" in

the award, the Court indicated that "the amount of prejudgment interest was yet

to be determined."[89]

BMO cannot credibly dispute that prejudgment interest is part of damages,

or that a judgment that doesn't fully quantify damages by resolving prejudgment

interest isn't final.[90] Instead, BMO suggests that the November 9 judgment

doesn't leave prejudgment interest unresolved, either because Plaintiff never

requested prejudgment interest or because the judgment actually resolved the

---

[86] Pl.'s Mem.

[87] ECF 352.

[88] *See Dieser v. Cont'l Cas. Co.*, 440 F.3d 920, 924 (8th Cir. 2006); *ResCap Liquidating Trust v. Primary Residential Mortg., Inc.*, 2021 WL 1668013, *44-45 (D. Minn. Apr. 28, 2021) (relying on *Dieser* and awarding prejudgment interest through date of final judgment).

[89] *Id.*

[90] *See Osterneck*, 489 U.S. at 175–76.

issue of prejudgment interest in BMO's favor. These arguments are without merit.

Plaintiff requested prejudgment interest in his complaint,[91] and at the conclusion of the trial, Plaintiff's counsel requested "that the judgment should incorporate prejudgment interest and the parties probably should brief that so Your Honor could have the benefit of our views on that."[92] Underscoring that prejudgment interest was an unresolved issue to be decided by the Court, both parties requested supplemental briefing for the Court to determine "the appropriateness of statutory [prejudgment] interest."[93] The language of the Court's judgment issued the next day merely indicates that prejudgment interest and other items remain unresolved. Like a sticker price that "does not include fees and taxes" indicates that more will be added to the final price, the Court's listing of what the judgment "does not include" expressly indicates that those items are yet to be resolved and added to the final amount of Plaintiff's recovery.[94]

---

[91] Am. Compl., ECF 3-11, at 54.

[92] Tr.3831:2-5.

[93] Tr.3832:9-11, 3833:17-18.

[94] Although BMO argues that an unresolved bill of costs does not prevent the judgment from being final (BMO Mem. 21), prejudgment interest is different

Even when a judgment is recorded on a separate document, the touchstone of finality is "some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as the court is concerned, is the end of the case."[95] Especially given the parties' discussion on the previous day, the notation on the November 9 judgment that prejudgment interest isn't included is hardly an unequivocal manifestation of the Court's belief that prejudgment interest has been resolved, with nothing left for the Court to decide.

BMO's argument also overlooks that Plaintiff's Rule 59(e) motion for prejudgment interest "suspends the finality of the original judgment," which doesn't "become final" until the Court disposes of that motion.[96] For this reason, federal appellate courts have held that when a judgment is amended to include prejudgment interest, it is appropriate for "such interest to be calculated through the date of the . . . amendment to the judgment."[97] This is particularly so when

---

because, unlike costs, prejudgment interest is a form of damages, a substantive claim.

[95] *Goodwin v. United States*, 67 F.3d 149, 151 (8th Cir. 1995).

[96] *See Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020).

[97] *See Northland Ins. Co. v. Lincoln Gen. Ins. Co.*, 153 Fed. Appx. 93, 98 (3d Cir. 2005) (affirming Rule 59(e) order awarding prejudgment interest through the date of Rule 59(e) order granting prejudgment interest issues one year after the district court had entered judgment; because "[a] Rule 59(e) motion in effect, suspends the finality of the initial judgment until the District Court either grants or denies the motion" (cleaned up)); *see also Scotts Co. v. Cent. Garden & Pet Co.*,

32

the prejudgment interest rate "is substantially higher than the postjudgment-interest rate," because depriving a prevailing party of that higher rate during the period when the judgment is being amended and finalized "grants an unjustified benefit to . . . the losing party."[98]

BMO cites a single inapposite decision, *Marshall v. Perez-Arzuaga*,[99] for the proposition that "[f]ederal courts *routinely hold* that prejudgment interest ceases to run, and post-judgment interest begins to run, upon entry of judgment, even when post-judgment motions are filed."[100] Prejudgment interest wasn't even at issue in *Marshall*, which held that a defendant's unsuccessful motions for judgment as a matter of law and for a new trial do not toll commencement of postjudgment interest because, in those circumstances, "equity strongly favors awarding the plaintiff post-judgment interest during the pendency of the motions because the defendant, a judgment debtor, had possession and control of the funds during that period."[101]

---

403 F.3d 781, 793 (6th Cir. 2005) (reversing district court's refusal to award prejudgment interest calculated through the date of the amended judgment).

[98] *Scotts Co.*, 403 F.3d at 793.

[99] 866 F.2d 521, 524 (1st Cir. 1989).

[100] BMO Mem. 23 (emphasis added).

[101] *Marshall*, 866 F.2d at 524.

When prejudgment interest is at issue, especially when its rate is higher than postjudgment interest, BMO has it backwards: what "federal courts routinely hold," when a judgment is amended to include an award of prejudgment interest, is that such prejudgment interest runs through the date of the amended judgment.[102] BMO hasn't identified a single case holding otherwise. The Court should follow that example here, and award Plaintiff $286,964.98 in daily prejudgment, post-verdict interest until the date of the amended judgment incorporating prejudgment interest.

---

[102] *See Northland*, 153 Fed. Appx. at 98; *Scotts Co.*, 403 F.3d at 793; *see also Wilson v. Schlumberger Tech. Corp.*, Civ. No. 17-cv-00281-RBJ, 2021 WL 2311667, at *7 (D. Colo. June 7, 2021) (granting Rule 59(e) motion to add prejudgment interest, and ordering "that prejudgment interest will run from the date of [plaintiff's] last pay stub until the date of this Amended Final Judgment"); *E2Interactive, Inc. v. Blackhawk Network, Inc.*, No. 09-cv-629-slc, 2012 WL 1300379, at *2 (W.D. Wis. Dec. 6, 2012) (granting Rule 59(e) motion to add prejudgment interest and awarding prejudgment interest "from August 25, 2009 through the date of this order"); *Wrench LLC v. Taco Bell Corp.*, 290 F. Supp. 2d 821, 826 (W.D. Mich. 2003) (granting motion to amend judgment to include prejudgment interest and concluding "that prejudgment interest should be awarded through the date of the amended judgment"); *In re Partitions Plus of Wilmington*, Bankr. No. 04–06776–8–JRL, 2008 WL 1924035, at *3 (Bankr. E.D.N.C. Apr. 30, 2008) ("The trustee's motion to alter or amend the judgment is granted. The clerk is directed to enter an amended judgment to reflect an award of prejudgment interest in favor of the trustee from May 16, 2006, until the date of the amended judgment entered pursuant to this order.").

## Conclusion

As a prevailing party on a Minnesota-law claim, Plaintiff is entitled to 10% prejudgment interest. BMO hasn't provided a sufficient basis to deny or reduce the interest requested. Plaintiff respectfully requests his motion be granted in its entirety.

Respectfully submitted,

Dated:  January 18, 2023           By: */s/ Michael A. Collyard*
　　　　　　　　　　　　　　　　　Michael A. Collyard (#302569)
　　　　　　　　　　　　　　　　　David E. Marder (*admitted pro hac vice*)
　　　　　　　　　　　　　　　　　Peter C. Ihrig (#0390392)
　　　　　　　　　　　　　　　　　Morgia D. Holmes (*admitted pro hac vice*)
　　　　　　　　　　　　　　　　　ROBINS KAPLAN LLP
　　　　　　　　　　　　　　　　　800 LaSalle Avenue, Suite 2800
　　　　　　　　　　　　　　　　　Minneapolis, MN 55402–2015
　　　　　　　　　　　　　　　　　Telephone: 612.349.8500
　　　　　　　　　　　　　　　　　Facsimile: 612.339.4181
　　　　　　　　　　　　　　　　　mcollyard@robinskaplan.com
　　　　　　　　　　　　　　　　　dmarder@robinskaplan.com
　　　　　　　　　　　　　　　　　pihrig@robinskaplan.com
　　　　　　　　　　　　　　　　　mholmes@robinskaplan.com

　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*