UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Douglas A. Kelley, *in his capacity as the Trustee of the BMO Litigation Trust*, | Case No. 19-cv-1756 (WMW) |
| Plaintiff, | |
| v. | **ORDER** |
| BMO Harris Bank N.A., *as successor to M&I Marshall and Ilsley Bank*, | |
| Defendant. | |

---

After a 17-day trial on the breach of fiduciary duty and fraud claims brought by Plaintiff Douglas A. Kelley in his capacity as the Trustee of the BMO Litigation Trust (hereinafter, Kelley or the Trustee), against Defendant BMO Harris Bank N.A. (BMO Harris), the jury found for the Trustee on one of his four claims and awarded him more than $480 million in compensatory damages and nearly $80 million in punitive damages. (Dkt. 340.)  The Trustee now asks the Court to award pre- and post-judgment interest on the verdict, (Dkt. 382), and he seeks judgment as a matter of law on one of BMO Harris's affirmative defenses, (Dkt. 388).  BMO Harris moves for judgment as a matter of law in its favor, (Dkt. 397), on the basis of ostensibly erroneous legal and evidentiary rulings. BMO Harris also moves for a new trial or conditional remittitur of the damages award, (Dkt. 402).

**BACKGROUND**

The full factual background of this litigation is set forth in previous orders and will not be repeated here.  Briefly, this matter arises from a Ponzi scheme orchestrated by Thomas Petters and his associates Deanna Coleman and Robert White between 1994 and 2008.  Petters, Coleman, and White used Petters Company, Inc. (PCI), as the conduit for obtaining billions of dollars from investors through fraud, false pretenses and misrepresentations.  These funds were wired into and out of PCI's depository account at BMO Harris's predecessor bank, M&I Marshall and Ilsley Bank (M&I), for whose conduct BMO Harris is legally responsible.  The Trustee's claims relate to M&I's handling of PCI's account, contending that M&I was complicit in Petters's scheme because M&I did not alert authorities to irregularities in PCI's deposits and withdrawals that M&I knew or should have known about.  The Trustee initially filed his claims against BMO Harris in PCI's bankruptcy proceeding in 2012.  When the bankruptcy concluded, the claims were transferred to this Court for trial.

The jury heard evidence on four claims against BMO Harris: violation of the Minnesota Uniform Fiduciaries Act, breach of fiduciary duties to PCI, aiding and abetting fraud against PCI and aiding and abetting the breach of fiduciary duties owed to PCI.  The jury found for BMO Harris on the first three claims.  But the jury found in favor of the Trustee on the fourth claim, that BMO Harris aided and abetted the breach of fiduciary duties, and awarded the Trustee compensatory and punitive damages of more than $550 million.

An additional background matter is relevant to the instant motions. In the discovery process in the underlying bankruptcy case from which this matter arose, BMO Harris destroyed email backup tapes containing tens of thousands of documents, despite knowing that those tapes were subject to a litigation hold. The bankruptcy court ultimately imposed spoliation sanctions on BMO Harris, including requiring an adverse-inference instruction that BMO Harris intentionally destroyed evidence that it knew was harmful to its case. This Court later ruled that the adverse inference was permissive, not mandatory, and allowed the parties to present evidence to the jury regarding BMO Harris's conduct. The jury was instructed that it could, but was not required to, find that the spoliated evidence would have been detrimental to BMO Harris. (Dkt. 349 at Instr. 9.)

## ANALYSIS

### I.     Plaintiff's Motion to Alter or Amend Judgment

The Trustee seeks to amend or alter the judgment under Rule 59(e), Fed. R. Civ. P., to add pre- and post-judgment interest. According to the Trustee, the Court should award prejudgment interest under Minnesota law. BMO Harris objects to any award of prejudgment interest, arguing that if the Court considers awarding prejudgment interest, it should apply federal law to the Trustee's request. The parties agree that federal law governs the award of post-judgment interest and that such interest in mandatory.[1]

---

[1]     The Trustee initially asked that any post-judgment interest award be calculated from the date all post-trial motions are finally determined, not the date of the verdict. He concedes, however, that recent authority from the Eighth Circuit Court of Appeals forecloses that argument, so that any award of post-judgment interest must be calculated from the date of the verdict. *Rescap Liquidating Tr. v. Primary Residential Mortg., Inc.*, 59 F.4th 905, 923 (8th Cir. 2023).

In the usual case, "[m]otions under Rule 59(e) 'serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence' and 'cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.'" *Ryan v. Ryan*, 889 F.3d 499, 507 (8th Cir. 2018) (quoting *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)).   However, motions to amend the judgment to add prejudgment interest are appropriately raised under Rule 59(e), because "prejudgment interest 'is an element of [plaintiff's] complete compensation.'" *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) (alteration in the original) (quoting *West Virginia v. United States*, 479 U.S. 305, 310, and n. 2 (1987)); *see also Cont'l Indem. Co. v. IPFS of New York, LLC*, 7 F.4th 713, 718-19 (8th Cir. 2021) (holding that whether to grant a Rule 59(e) motion seeking prejudgment interest is within district court's discretion).

### A.      Post-judgment Interest

Federal law makes the award of post-judgment interest mandatory: "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).   The rate of post-judgment interest is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." *Id.*   The Trustee contends, and BMO Harris does not dispute, that the applicable rate is 4.74 percent. The Court, therefore, directs the Clerk to add post-judgment interest of 4.74 percent to the judgment, calculated from the date of the verdict to the date of this Order.

B.      Pre-judgment Interest

Although BMO Harris contends that federal law should apply to the Trustee's request for prejudgment interest, the "general view" is that "prejudgment interest is a substantive remedy governed by state law when state-law claims are brought in federal court." *Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2015 WL 1746375, at \*21 (D. Minn. Apr. 13, 2015) (quoting *Tobin v. Liberty Mut. Ins. Co.,* 553 F.3d 121, 146 (1st Cir. 2009)).  Indeed, in federal cases arising under state law, "[t]he award of prejudgment interest  . . . is determined by referring to the law of the state in which the cause of action arose." *Kisco Co. v. Verson Allsteel Press Co.*, 738 F.2d 290, 296 (8th Cir. 1984).

 This is true even though the Trustee initially brought his claims in bankruptcy court, and the Eighth Circuit's ruling in *Kelley as Trustee for PCI Liquidating Trust v. Boosalis*, 974 F.3d 884 (8th Cir. 2020), on which BMO Harris relies heavily, is not to the contrary.  In *Boosalis*, the Trustee sought to void pre-bankruptcy transfers to certain of PCI's creditors under federal bankruptcy law, which allows a trustee to void pre-bankruptcy transfers if they are "voidable under applicable law." *Id.* at 888 (quoting 11 U.S.C. § 544, subd. 1(b)).  The Trustee alleged that the transfers in *Boosalis* violated the Minnesota Uniform Fraudulent Transfers Act (MUFTA). *Id.*

The district court entered summary judgment for the Trustee and, as relevant here, ordered the creditors to pay prejudgment interest pursuant to Minnesota law on the damage award.  The Eighth Circuit reversed the determination that Minnesota law governed the award of prejudgment interest, finding that the Trustee's underlying cause of action—a so-

called "avoidance action" under § 544—is a federal cause of action, even though it requires the application of a state statute.[2]  *Id.* at 901-02.

But the Trustee's causes of action are not avoidance actions under § 544, nor does federal law provide the Trustee with a right to recovery in this case.  The Trustee is not seeking to void any transfers to BMO Harris.  Rather, the Trustee is seeking to recover on PCI's behalf for BMO Harris's allegedly tortious conduct.  Thus, the Trustee's fraud and breach-of-duty claims arise wholly under state law.  That those claims were initially brought in PCI's federal bankruptcy matter as an adversary proceeding and are therefore properly subject to the Court's jurisdiction under 28 U.S.C. § 1334 does not change the claims' underlying state-law character.  The claims are state-law causes of action, and Minnesota law, therefore, governs the award of prejudgment interest.  *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 (8th Cir. 2003).

The parties also dispute whether the award of prejudgment interest is permissive or mandatory.  Under federal law a district court has the discretion to deny or reduce prejudgment interest if "exceptional or unusual circumstances exist making the award of interest inequitable."  *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986).  The Minnesota prejudgment interest statute, on the other hand, provides that "[t]he prevailing party shall receive interest on any judgment or award from the time of commencement of the action  . . . until the time of verdict."  Minn. Stat.§ 549.09, subd.

---

[2]    The *Boosalis* court specifically held that, because 11 U.S.C. § 550(a)(1) provides the basis for a trustee's recovery in an avoidance action, that section is the source of the recovery after the transfer has been avoided, rendering the cause of action federal.  *Id.* at 902.

1(b).  Thus, "the statutory award of interest is mandatory and . . . not subject to an equitable reduction."  *Tate v. Scanlan Int'l, Inc.*, 403 N.W.2d 666, 674 (Minn. Ct. App. 1987); *see also Orcutt v. Crews*, No. A22-0548, 2022 WL 17409900, at *4 (Minn. Ct. App. Dec. 5, 2022) (noting that prejudgment interest under § 549.09, subd. 1(b) is "mandatory, not discretionary").

In support of its argument that the award of prejudgment interest is permissive, BMO Harris relies solely on decisions interpreting the award of such interest under federal law, not state law.  Those authorities do not control here, because the award of prejudgment interest is a matter of Minnesota, not federal, law.  Minnesota requires the award of prejudgment interest without any equitable reduction, and the Trustee is entitled to prejudgment interest of 10 percent[3] on the amount of the verdict from the date he filed this lawsuit until the date of the verdict.

## II.    Trustee's Motion for Judgment as a Matter of Law

The Trustee seeks judgment as a matter of law as to BMO's twenty-third affirmative defense, which asserts that the Trustee's claims are barred by consent and ratification.  The Court previously concluded that it was appropriate for the jury to determine whether BMO Harris had established its consent-and-ratification defense.  The Trustee now contends that it was error to submit the issue to the jury and that he is entitled to judgment as a matter of law on the defense.  He concedes that the motion is brought "solely to preserve [the Trustee's] rights on appeal" and any ruling on the issue will have no effect on the verdict

---

[3]      There is no dispute that Minnesota's prejudgment interest rate is 10 percent.

or the amount of damages.  BMO Harris opposes the motion, arguing that the Court should grant judgment in its favor on this defense.

Judgment as a matter of law is appropriate "when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"  *Miller v. City of Springfield*, 146 F.3d 612, 614 (8th Cir.1998). ! (quoting Fed. R. Civ. P. 50(a)(1)).  The Court should not grant a motion for judgment as a matter of law "unless no reasonable juror, taking all reasonable inferences in the light most favorable to the opposing party, the nonmovant, could find against the moving party."  *In re RFC & ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 804, 818 (D. Minn. 2019).

In reviewing a motion for judgment as a matter of law, the Court must

(1)    resolve direct factual conflicts in favor of the nonmovant,

(2)    assume as true all facts supporting the nonmovant which the evidence tended to prove,

(3)    give the nonmovant the benefit of all reasonable inferences, and

(4)    deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 933-34 (8th Cir. 2010) (quoting *Larson ex rel. Larson v. Miller,* 76 F.3d 1446, 1452 (8th Cir. 1996)).

The Trustee's motion calls for an advisory opinion.  The Trustee asks for no relief other than the judgment itself, admitting that he brings the request for judgment as a matter of law only for purposes of appeal.  But he does not specify what effect a ruling on his motion would have on any potential appellate issues.  The Trustee does not argue, for example, that the outcome of the case would be different had the Court agreed with the

Trustee initially and declined to submit the consent-and-ratification defense to the jury. Essentially, the Trustee seeks a declaratory judgment that BMO Harris's consent-and-ratification-defense fails. Such a declaration, however, is no longer ripe.

"Article III limits courts to deciding actual 'Cases' and 'Controversies,' thereby prohibiting them from issuing advisory opinions." *Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005) (quoting U.S. Const. art. III, § 2). A request for a declaratory judgment is not ripe if there is no injury underlying the request. *County of Mille Lacs v. Benjamin,* 361 F.3d 460, 464 (8th Cir. 2004). A ripe claim requires an injury that is "certainly impending." *Pennsylvania v. West Virginia,* 262 U.S. 553, 593 (1923). The Trustee has identified no injury that is "certainly impending" that would render a determination on the consent-and-ratification issue ripe at this stage of the litigation. Absent any indication of how the ruling the Trustee seeks would have a concrete effect on this case—or, put another way, how the Court's ruling on the issue would remedy some injury the Trustee is suffering—the motion may be denied on this basis alone.

Even if ripe, however, the Trustee has not established that the Court erred in submitting the consent-and-ratification defense to the jury. The Trustee raises two arguments as to why the defense should not have been submitted to the jury. First, the Trustee contends that the appointment of a receiver "cleansed" PCI of any liability for a defense based on the wrongdoing of PCI's officers. Second, the Trustee argues that BMO Harris did not offer any evidence as to an essential element of the consent-and-ratification defense—that PCI had full knowledge of the facts related to the fraudulent activity— because, as the Court instructed the jury, PCI "cannot be charged with full knowledge of

9

the material facts related to an otherwise unauthorized act based on the knowledge of someone acting to defraud" PCI.  (Dkt. 349 at Instr. 21.)  According to the Trustee, the only evidence of PCI's knowledge brought out at trial was the knowledge of Petters and his co-conspirators, all of whom were acting to defraud PCI.  For its part, BMO Harris contends that the Court erred in determining that PCI could not be charged with the knowledge of Petters and the other officers who were defrauding investors.  According to BMO Harris, the facts elicited at trial established PCI's knowledge and the Court should grant BMO Harris judgment as a matter of law that PCI ratified or consented to the fraudulent activity.  Such a ruling would necessarily set aside the verdict, because as the Court instructed, if BMO Harris proved its consent-and-ratification defense as to any claim, the jury was required to find for BMO Harris on  that claim.  *Id.*

### A.    Availability of defenses

The general rule is that a bankruptcy trustee stands in the shoes of the debtor entity the bankruptcy trustee represents, so that any cause of action the trustee brings is "subject to any equitable or legal defenses that could have been raised against the debtor." *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 836 (8th Cir. 2005).  But for an entity in receivership, certain equitable defenses brought under Minnesota law are not available against a trustee/receiver, even if the defenses would otherwise be available against the entity.  *See German-Am. Fin. Corp. v. Merchants & Mfrs. State Bank of Minneapolis*, 225 N.W. 891, 893 (Minn. 1929); *Magnusson v. Am. Allied Ins. Co.*, 189 N.W.2d 28, 33 (Minn. 1971) (declining to apply *in pari delicto* defense against an insolvent debtor).

The Trustee asks the Court to extrapolate from these decisions that other defenses similar to the equitable defense of *in pari delicto* also are unavailable against an entity that is in receivership.  The Trustee acknowledges, however, that there is no direct authority for his position that the receivership "cleansed" PCI of responsibility for the actions of its officers for purposes of an affirmative defense of consent and ratification.

The Court addressed the law related to the *in pari delicto* defense at length in a previous order and will not repeat that analysis here.  (Dkt. 70 at 12-14.)  In determining that BMO Harris could not raise the *in pari delicto* defense against PCI, the Court noted that such an equitable defense was one that Minnesota courts consistently found could not be raised against a receiver.  *See, e.g.*, *Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1129 (D. Minn. 2012) ("[W]hen a receiver has been appointed for a corporation, the wrongdoer (the corporation) is removed from the picture and, hence, *in pari delicto* does not apply.").

The Trustee argues that there is no reason to distinguish between the *in pari delicto* defense and the consent-and-ratification defense, because both seek to assign responsibility for corporate officers' wrongdoing to the corporation itself.  But the Trustee ignores that the *in pari delicto* defense is an equitable defense that a Court must resolve, while the defense of consent and ratification is a matter for the jury to determine.  *See Chem. Sales Co. v. Diamond Chem. Co.*, 766 F.2d 364, 369 (8th Cir. 1985) (finding that "the jury should have been explicitly instructed on the defense of implied consent or ratification").

 This distinction matters.  As with the standard for granting a motion for judgment as a matter of law, the Court should not remove matters from the jury's consideration

11

"unless no reasonable juror, taking all reasonable inferences in the light most favorable to [BMO Harris] could find against the [Trustee]."  *In re RFC & ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 804, 818 (D. Minn. 2019).  Given the dearth of authority that the consent-and-ratification defense cannot apply against a Trustee or receiver in a case such as this, and that the determination of the defense is a matter for the jury, the Court properly submitted the issue to the jury.

### B.      Facts supporting the defense

The Trustee also argues that BMO Harris failed to adduce any facts from which the jury could have determined that BMO Harris's consent-and-ratification defense applied, making judgment as a matter of law appropriate on the defense.

In opposing the Trustee's motion, BMO Harris does not point to specific facts from which the jury, as instructed, could have found that PCI had knowledge of the fraudulent actions of Petters and the other company officers.  Rather, BMO Harris asserts that the Court erroneously instructed the jury that the knowledge of Petters and his accomplices could not be imputed to PCI.  According to BMO Harris, because PCI itself was a fraudulent entity that existed only to commit fraud, the knowledge of company officers can be imputed to the company.  In addition, BMO Harris argues that the "sole-actor" doctrine required the jury to impute Petters's knowledge to PCI.

As addressed in the Court's order on BMO Harris's motion to exclude expert witnesses, BMO Harris has not identified any Eighth Circuit or Minnesota legal authority for its argument that the Court's consent-and-ratification instruction was erroneous.  (Dkt. 214 at 48-50.)  And binding Eighth Circuit decisions contradict the authority on which

BMO Harris relies.  *See Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*, 48 F.4th 896, 899 (8th Cir. 2022) (noting that PCI would have a "cause of action against [a lender] for helping Petters himself perpetuate the fraud") (emphasis omitted).  PCI was both a victim and a perpetrator of Petters's scheme; as such, Petters's knowledge of the fraudulent scheme cannot be attributed to PCI.  *See Steigerwalt v. Woodhead Co.*, 244 N.W. 412, 424 (Minn. 1932).

Nor is BMO Harris's "sole-actor" theory tenable in this situation.  Under that theory, when the person committing the fraud is the sole agent of the entity used to commit that fraud, the knowledge of that sole actor must be attributed to the entity.  *See Sussel Co. v. First Fed. Sav. & Loan Ass'n of St. Paul*, 238 N.W.2d 625, 628 (Minn. 1976) (discussing exception to the "rule that the knowledge of an agent engaged in an independent fraudulent act on his own account is not the knowledge of the principal . . . where the agent . . . is the sole representative of the principal").  BMO Harris contends that Petters was the sole actor in the scheme.  Relying on *Grassmueck*, BMO Harris asserts that the involvement of other PCI employees in the scheme does not preclude application of the "sole actor" exception. *See* 402 F.3d at 841 ("[T]he sole actor doctrine does not require that the agent whose knowledge is to be imputed literally act alone; the doctrine still applies if the 'sole actor' uses subordinates in perpetrating a fraud.").

But as the Trustee points out, *Grassmueck* did not involve Minnesota agency law and relied primarily on New York law in reaching its conclusions.  The *Grassmueck* court had no occasion to opine on how a Minnesota court would view the sole-actor doctrine. And no Minnesota court has applied the sole-actor doctrine in a situation akin to this one,

where the entity's agent was perpetrating a fraud with the assistance of others. It is evident from the Minnesota Supreme Court's use of the words "sole representative" that the doctrine applies in Minnesota only where the fraudulent agent is truly acting alone. *See Sussel*, 238 N.W.2d at 628.

BMO Harris is not entitled to judgment as a matter of law on its consent-and-ratification defense. But judgment in the Trustee's favor is also not warranted. As addressed above, the Trustee has not established that a determination of consent and ratification at this stage of the litigation is a ripe issue. And there was evidence from which a reasonable jury could have determined that PCI consented to or ratified the fraud of Petters and the other officers, even without imputing those individuals' knowledge to PCI.

Accordingly, the Trustee's motion for judgment as a matter of law on the consent-and-ratification defense is denied.

## III.    BMO Harris's Motion for Judgment as a Matter of Law

BMO Harris renews the motion for judgment as a matter of law it made at the close of the Trustee's evidence and at the end of the case. BMO Harris contends that judgment is warranted in its favor on four issues: the aiding-and-abetting breach of fiduciary duties claim (Count IV), the jury's award of compensatory damages, the jury's award of punitive damages and BMO Harris's affirmative defenses of acquiescence, waiver, and the statute of limitations.[4]

---

[4]    BMO Harris raises four additional defenses in its motion. The Court previously granted judgment as a matter of law to the Trustee on BMO Harris's defenses of *in pari delicto*, UCC preemption, and the contractual limitations period. (Dkt. 335 at 3, 5.) Although the Court warned BMO Harris against continuing to press defenses that have

Judgment as a matter of law is appropriate "when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Miller v. City of Springfield*, 146 F.3d 612, 614 (8th Cir.1998). (quoting Fed. R. Civ. P. 50(a)(1)).  The Court should not grant a motion for judgment as a matter of law "unless no reasonable juror, taking all reasonable inferences in the light most favorable to the opposing party, the nonmovant, could find against the moving party." *In re RFC & ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 804, 818 (D. Minn. 2019).

## A.    Count IV

As the Court instructed the jury, the Trustee's claim of aiding and abetting a breach of fiduciary duty required proof of four elements:

> First, that Tom Petters, Deanna Coleman or Robert White breached a fiduciary duty they owed to PCI;

> Second, that M&I knew that the conduct of Tom Petters, Deanna Coleman or Robert White constituted a breach of fiduciary duty to PCI;

> Third, that M&I substantially assisted or encouraged Tom Petters, Deanna Coleman or Robert White in committing their breach of a fiduciary duty owed to PCI; and

> Fourth, that M&I's substantial assistance or encouragement was a proximate cause of PCI's harm.

---

been repeatedly rejected, BMO Harris contends that it is required to raise these issues again to preserve its appellate rights.  By mentioning these defenses in its motion, BMO Harris has sufficiently preserved the issues for appeal.  The Court stands by its prior rulings and will not further address BMO Harris's motion as to these three defenses.  In addition, in the previous section the Court rejected BMO Harris's contention that judgment as a matter of law was appropriate on the consent-and-ratification defense, and no further analysis of that defense is necessary.

(Dkt. 349 at Instr. 18.)  BMO Harris argues in this motion that the Trustee's evidence was insufficient as a matter of law to prove the final three elements.  BMO Harris also asserts that the jury's determination in Count I that BMO Harris did not breach the Minnesota Uniform Fiduciaries Act is irreconcilable with its determination on the aiding-and-abetting breach of fiduciary duty claim in Count IV, because Count I required proof of the same fiduciary duty as Count IV and a less-stringent standard of scienter and assistance.

### 1.  Actual knowledge

BMO Harris first contends that there was insufficient evidence that any particular employee of M&I had the knowledge required to support the Trustee's claim for aiding and abetting breach of fiduciary duty.  *See Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715 (8th Cir. 2019) ("Under Minnesota law, the scienter (knowledge requirement) for aiding and abetting is 'actual knowledge.'") (quotation omitted).  According to BMO Harris, the facts here are akin to *Zayed* and it was error for the Court to stray from the *Zayed* court's holding that "sloppy banking" or "red flags"—which BMO Harris argues is the same as what the evidence established here—are insufficient to establish knowledge for an aiding and abetting claim. *Zayed*, 913. F.3d at 716.

*Zayed*, as this case, involved an entity used to facilitate a Ponzi scheme and claims of aiding and abetting on the part of the entity's bank.  In *Zayed*, however, only one employee of the bank allegedly assisted the entity's furtherance of the scheme, and that employee's involvement with the entity was brief.  *Id.* at 715.  As the Court of Appeals noted, the allegations against this sole banker were that he should have known from otherwise innocuous facts—the use of a domestic entity when a foreign entity was also

involved, opening a checking/money-market account rather than a fiduciary account and opening an account without proof that the entity was registered in Minnesota—that the entity was a Ponzi scheme. *Id.* at 716-17. But there was no evidence that the banker ever suspected that the entity's banking transactions were in any way fraudulent, and these otherwise neutral facts were insufficient evidence of actual knowledge to support an aiding-and-abetting claim. *Id.* at 717.

The evidence here did not present innocuous facts that the Trustee argued should have caused M&I to take notice. There was ample evidence in the record from which the jury could have determined that M&I had actual knowledge of Petters's scheme.[5] This case is far from the unwarranted inferences about which the *Zayed* court was concerned.

In addition, BMO Harris relies heavily on *Zayed*'s holding that proof of actual knowledge is required. But that holding does not mean that an aiding-and-abetting claim can succeed only where the tortfeasor admits in her testimony or in evidence submitted to the jury that she knew something illegal or untoward was occurring. Actual knowledge merely means knowledge. Knowledge may be established either directly or circumstantially. "Circumstantial evidence is defined as evidence based on inference and not on personal knowledge or observation." *State v. Barker*, 888 N.W.2d 348, 354 (Minn. Ct. App. 2016) (quotation omitted). And "knowledge is generally established through

---

[5]    BMO Harris's repeated insistence that the Trustee in his testimony "admitted" that M&I employees did not have the requisite knowledge is not well taken. As the Trustee points out, BMO Harris made this argument to the jury; the verdict demonstrates the jury's rejection of the argument. Moreover, the testimony to which BMO Harris points is simply not a sweeping admission or any concession about M&I's knowledge.

circumstantial evidence," *United States v. Benitez*, 531 F.3d 711, 716 (8th Cir. 2008), as the *Zayed* decision recognized. *Zayed*, 913 F.3d at 715.

To establish M&I's knowledge circumstantially, the Trustee was required to present evidence from which the inference of that knowledge could be drawn. Such circumstantial evidence includes evidence of willful blindness to obvious badges of fraud, and *Zayed*'s statements regarding actual knowledge are not to the contrary. *See, e.g.*, *United States v. Hansen*, 791 F.3d 863, 868 (8th Cir. 2015) (observing that "the concept of willful blindness is a limited exception to the requirement of actual knowledge" such that a criminal defendant charged with fraud can be convicted "even if [the defendant] lacked actual knowledge of the fraud, [if] a reasonable juror could have found [the defendant] was willfully blind to the truth"). The *Zayed* court did not determine that willful blindness can never establish knowledge for an aiding-and-abetting claim. Rather, the *Zayed* court concluded that the facts in that case did not establish any knowledge at all, whether through willful blindness, direct evidence, or otherwise.

Finally, even if BMO Harris is correct that the adverse-inference instruction, standing alone, does not constitute sufficient evidence of actual knowledge, that instruction, together with the evidence regarding specific M&I employees' actions and multiple episodes of inaction when presented with of evidence of the scheme, constitute sufficient evidence from which a reasonable jury could have found the knowledge element of the claim satisfied.

### 2.    Substantial assistance

The jury was instructed that,

> "knowledge and substantial assistance are evaluated in tandem. Therefore, the stronger the evidence of a person's or entity's general awareness of breach of fiduciary duty, the less evidence of that person's or entity's substantial assistance is required. Similarly, the stronger the evidence of substantial assistance, the less evidence of general awareness is required."

(Dkt. 349 at Instr. 19.) Although BMO Harris attacks the sufficiency of the Trustee's evidence of M&I's substantial assistance, the jury could have determined that there was such clear evidence of M&I's knowledge that only a small amount of evidence of M&I's substantial assistance was required. And the adverse-inference instruction allowed the jury to infer that there would have been evidence in the record reflecting both knowledge and substantial assistance but for BMO Harris's destruction of that evidence. Viewing the evidence in the light most favorable to the Trustee, as is required on a motion for judgment as a matter of law, a reasonable jury could find sufficient evidence of M&I's substantial assistance. BMO Harris's motion on this point, therefore, fails.

### 3.    Proximate cause

Next, BMO Harris contends that the evidence regarding causation was insufficient, arguing that any alleged aiding and abetting on the part of M&I did not cause PCI any damage. According to BMO Harris, because PCI was never able to pay its creditors, any assistance M&I provided to those using PCI as an instrumentality of fraud did not have any effect on PCI's ability to pay its creditors. Consequently, BMO Harris maintains, M&I's actions caused no harm. BMO Harris also argues that because M&I had no role in causing PCI to incur the debts for which the Trustee sought to recover, M&I cannot be responsible

for those debts.  Moreover, BMO Harris asserts, because PCI also used the services of other banks, those banks could have processed the ostensibly "routine" transactions that M&I processed.  And if M&I had blown the whistle on the fraud, PCI would have merely switched its banking activities to another bank.  Finally, BMO Harris contends that the only cause of the harm to PCI is the misdeeds of Petters and his accomplices, not any conduct of M&I.

BMO Harris acknowledges the principle of Minnesota law that "[t]here may be more than one substantial factor—in other words, more than one proximate cause—that contributes to an injury."  *Staub as Tr. of Weeks v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 621 (Minn. 2021).  BMO Harris's motion regarding causation, however, is directly contrary to this settled point of law.  Addressing BMO Harris's last argument first, while it is certainly true that Petters, Coleman, and White are responsible for the harm to PCI, there was sufficient evidence from which the jury could conclude that that BMO Harris "substantially assist[ed] or encourage[d] the primary tort-feasor in the achievement of the breach."  *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999).  Given this evidence, the jury's verdict must stand.

BMO Harris's other causation arguments are similarly without merit.  That other banks might have been willing to assist PCI if M&I refused to do so does not absolve M&I of its role in the scheme.  The Trustee was not required to provide direct evidence that M&I played a prominent role in Petters's crimes. The claim at issue is aiding and abetting, not the breach itself.  Finally, BMO Harris's arguments regarding PCI's insolvency are contrary to logic.  A tortfeasor who causes damage to an already damaged entity must be

responsible for the additional damages the tortfeasor caused. Here, the Trustee claimed that, had M&I performed its duties correctly, PCI's losses would have been far less than they were. The jury was entitled to credit the Trustee's evidence and find that a proximate cause of the harm to PCI was M&I's aiding and abetting.

### 4.    Irreconcilable verdict

The introduction to BMO Harris's motion contends that the jury's determination that BMO Harris did not breach any fiduciary duties but that BMO Harris aided and abetted the breach of those duties constitutes an irreconcilable verdict. However, BMO Harris's memorandum does not mention this contention, nor does BMO Harris provide any legal analysis or authority to support it. The Court likewise will not address this contention further. To the extent BMO Harris's motion relies on the argument that the verdict is not reconcilable, this aspect of the motion is denied.

### B.    Compensatory damages

BMO Harris raises a host of challenges to the compensatory damages award. Most of the challenges repeat legal theories that both this Court and the bankruptcy court have repeatedly rejected. BMO Harris contends that the damages award must be offset by amounts the Trustee has recovered in other matters. This argument is contrary to Minnesota's collateral-source rule. *Swanson v. Brewster*, 784 N.W.2d 264, 268 (Minn. 2010). BMO Harris argues that PCI was not harmed and that there is no causal connection between M&I's conduct and PCI's damages. Those arguments are addressed above, in addition to having been rejected in multiple prior orders. BMO Harris asserts that there was no factual basis for any damages. But BMO Harris provided damages estimates to the

jury.  That the jury's verdict exceeded BMO Harris's preferred damages amount does not mean the jury had no basis for its damages award.  Moreover, the jury was entitled to credit whatever testimony it found credible.

BMO Harris contends that any damages amount must be limited to the amount of self-dealing of Petters and his associates because the only duty officers of an insolvent corporation owe to the corporation is not to engage in self-dealing.  The fiduciary duties at issue in this case are not as narrow as BMO Harris argues, however, because "the nature and extent of the performance of fiduciary duties by directors and officers of insolvent corporations do not change."  *In re Sec. Asset Cap. Corp.*, 390 B.R. 636, 642 (Bankr. D. Minn. 2008).  BMO Harris insists that *In re Security Asset Capital Corp.* supports its position, pointing to the Bankruptcy Court's statement that an insolvent corporation's officers' breach of fiduciary duties is "practically limited to their self-dealing to the detriment of their corporations."  *Id.*  But this statement does not purport to describe all fiduciary duties that an insolvent corporation's officers owe.  Rather, this statement describes the interplay of the business judgment rule and corporate officers' fiduciary duties.  There is no business-judgment-rule at issue here.  And even if the business judgment of Petters, Coleman, and White were somehow at issue, "the principles upon which [the business judgment rule] is founded—care, loyalty and independence—must first be satisfied" *before* the business-judgment-rule can absolve an officer of liability. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 180 (Del. 1986). Insolvency does not change officers' duties to the corporation and to its creditors.

Moreover, the evidence established that the self-dealing of PCI's officers was not as limited as BMO Harris argues.  Indeed, if the jury viewed the evidence of self-dealing expansively, that self-dealing could more than support the compensatory damages award. The Court has repeatedly held that the proper "measure of damages sustained by a defrauded corporation may be derived by measuring the loss of money loaned to the corporation by creditors that the corporation was unable to repay as a result of the fraud," not the amount of the officers' self-dealing.  (Dkt. 214 at 46 (citing *Greenpond S., LLC v. Gen. Elec. Cap. Corp.*, 886 N.W.2d 649, 657 (Minn. Ct. App. 2016)).   BMO Harris continues to rely on decisions from other jurisdictions that the Court has previously found inapposite.  BMO Harris has provided no new authority in support of its contentions.  For the reasons addressed above and in prior orders, BMO Harris's motion to set aside the compensatory damages award is denied.

### C.   Punitive damages

BMO Harris moves for judgment as a matter of law on the punitive-damages award for two reasons:  the facts do not support a finding that M&I employees acted with the requisite state of mind, and the facts do not support imposition of liability on M&I for acts of its agents.  Neither contention has merit.

According to BMO Harris, M&I's training materials show that employees were trained to recognize and try to prevent Ponzi schemes.  Such training, BMO Harris argues, precludes a finding that M&I "acted with deliberate disregard for the rights or safety of others," as required for an award of punitive damages.  (Dkt. 349 at Instr. 25.)  BMO Harris argues that the only evidence of M&I's state of mind was evidence of its employees'

constructive knowledge of the Ponzi scheme, insisting that proof of actual knowledge is required.

Again, however, the adverse-inference instruction is sufficient to allow the jury to conclude that the destroyed emails would have established M&I's deliberate disregard. And the existence of training materials does not absolve an entity from its employees' actions that are not in accord with those materials. *See, e.g.*, *MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 931 (8th Cir. 2004) ("[W]here an employer discriminates in contravention of its own policies, the existence of those policies does not allow the employer to escape punitive damages.").

BMO Harris offers no legal authority to support its position that constructive knowledge cannot support a finding of deliberate disregard. Rather, the authority on which BMO Harris relies states the obvious principle that negligence—couched as "incompeten[ce]" or "careless[ness]"—cannot support a claim for punitive damages. *Kapps v. Biosense Webster, Inc.*, 813, F. Supp. 2d 1128, 1166-67 (D. Minn. 2011). *Accord Ba Lam v. Cnty. of Ramsey*, No. A08-0035, 2009 WL 173523, at *3 (Minn. Ct. App. Jan. 27, 2009) (actions that are merely "incompetent or inept" do not support a claim for punitive damages). If the jury credited the Trustee's evidence of M&I employees' actions and inactions in the face of signs that PCI was a Ponzi scheme, the jury was entitled to determine that such actions and inactions go beyond incompetence or carelessness and rise to the level of deliberate indifference. BMO Harris's motion on this basis is denied.

Nor is BMO Harris entitled to judgment on the punitive-damages award on its theory that none of the M&I employees involved were "employed in a managerial capacity

with authority to establish policy and make planning-level decisions" for M&I. (Dkt. 349 at Instr. 26.) The requirement that an agent be a management-level employee does not mean that only the actions of a company's chief executive officer can give rise to punitive damages against the company. Rather, "[t]o determine managerial capacity, the critical inquiry regards the degree of discretion the employee possesses in making decisions that ultimately will determine corporate policy." *Tennant Co. v. Advance Mach. Co.*, 355 N.W.2d 720, 724 (Minn. Ct. App. 1984). In *Tennant*, for example, a company's sales representative committed illegal acts for which a jury imposed punitive damages. *Id.* at 722. Noting that the employee both trained other employees and "carried out the illegal activity with a manager's title"—in that case, "West Coast Sales Manager"—the *Tennant* court concluded that punitive damages were appropriately assessed against the company. *Id.* at 724.

The Trustee proffered evidence at trial that managerial-level employees of M&I knew or should have known of the Ponzi scheme long before M&I alerted the authorities about the scheme. The jury was entitled to credit this evidence. And even if the Trustee's evidence was lacking, the jury could have inferred that the destroyed documents established the requisite managerial-level knowledge on the part of M&I. The punitive damages award stands.

### D. Affirmative defenses

The Court specifically reserved ruling on several of BMO Harris's affirmative defenses until the conclusion of trial but granted judgment as a matter of law on other defenses. (Dkt. 335 at 3-6.) As addressed above, BMO Harris persists in pressing many

of the affirmative defenses the Court has previously rejected, contending that it is required to do so to preserve its appeal rights.  But having received a decision on an issue, BMO Harris has not waived that issue by failing to ask the Court to reconsider its decision.  BMO Harris's request for judgment as a matter of law on those defenses—*in pari delicto*, UCC preemption, and the contractual limitations period—is denied without further discussion. In addition, in ruling on the Trustee's motion for judgment as a matter of law, the Court determined that judgment was not appropriate for either party on BMO Harris's consent-and-ratification defense.  The Court will not address that defense again in this section.

What remains for consideration are BMO's defenses of acquiescence, waiver, and the statute of limitations.

### 1.    Acquiescence and waiver

The defenses of acquiescence and waiver, similar to the defense of consent and ratification, "generally require the element of full knowledge of the party against whom the [defenses] are to be applied."  *In re RFC & ResCap Liquidating Tr. Litig.*, No. 13-CV-3520 JRT/HB, 2015 WL 2451254, at *8 (D. Minn. May 21, 2015); *see also Anderson v. First Nat'l Bank of Pine City*, 228 N.W.2d 257, 259 (Minn. 1975) (defining ratification as "when one, having full knowledge of all the material facts, confirms, approves, or sanctions, by affirmative act or acquiescence, the originally unauthorized act of another"); *Montgomery Ward & Co. v. Cnty. of Hennepin*, 450 N.W.2d 299, 304 (Minn. 1990) ("A waiver is a voluntary and intentional relinquishment or abandonment of a known right.").

As in its arguments regarding consent and ratification, BMO Harris contends that the knowledge of Petters, Coleman and White must be imputed to PCI.  BMO Harris again

relies in part on the "sole actor" theory for this contention.  But the Court rejected that theory and will not repeat that analysis here.  And to the extent BMO Harris's acquiescence and waiver defenses depend on a finding that PCI as a whole must be charged with knowing what Petters and his accomplices knew, the evidence at trial was insufficient to support BMO Harris's assertion that every employee of PCI knew about the fraudulent activities. Judgment as a matter of law on these affirmative defenses, therefore, is not appropriate.

### 2.    Statute of limitations

Under Minnesota law, any cause of action for breach of fiduciary duty must be brought within six years of the alleged breach.  Minn. Stat. § 541.05, subd. 1(1).  BMO Harris argued to the jury that the Trustee's claims were untimely because PCI's causes of action accrued before November 2006 but the Trustee did not file this lawsuit until November 2012.  The jury was instructed that its verdict "must be for BMO and against Plaintiff on any counts" for which BMO Harris proved its statute-of-limitations defense. (Dkt. 349 at Instr. 20.)  In finding for the Trustee on one count, the jury rejected BMO Harris's statute-of-limitations argument.  BMO Harris argues that the jury's verdict is erroneous because the evidence established that the claim at issue accrued more than six years before the Trustee filed the complaint.  BMO Harris also asserts that the Trustee cannot avoid the statute of limitations by proving fraudulent concealment for two reasons—because the Trustee stands in PCI's shoes and PCI knew about the fraud, and because there was no evidence that M&I concealed anything.

The Court instructed the jury, consistent with Minnesota law, that the Trustee's claims "accrued when the relevant facts supporting each element came into existence,

including damages." *Id.*  BMO Harris may believe that each element of the claims arose before November 2006, but the jury found otherwise, and the evidence supports the jury's determination.  Moreover, as addressed multiple times in this Order, the adverse-inference instruction allowed the jury to infer that the destroyed documents contained evidence that was harmful to BMO Harris's defenses, including the statute-of-limitations defense.  BMO Harris's reliance on a lack of evidence of fraudulent concealment, therefore, is unavailing.  The jury could have determined that the destroyed emails contained evidence of fraudulent concealment and rejected BMO Harris's defense on this basis alone.

Because a reasonable jury could have made the decision that this jury made, judgment as a matter of law on BMO Harris's statute-of-limitations defense is not warranted.

## IV.   BMO Harris's Motion for New Trial or Remittitur

BMO Harris contends that if the Court does not otherwise grant judgment as a matter of law on the Trustee's claim for aiding and abetting the breach of fiduciary duties, a new trial is warranted.  BMO Harris also argues that a remittitur of both the compensatory and punitive damages awards is warranted.

### A.   New trial

Following a jury trial, on the motion of any party, a district court may grant a new trial on all or some of the issues.  *See* Fed. R. Civ. P. 59(a)(1)(A).  But "a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because [the judge feels] that other results are more reasonable." *King v. Davis*, 980 F.2d 1236, 1237 (8th Cir. 1992).  The

"trial judge may not usurp the functions of a jury." *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992). A new trial is warranted only when "the verdict was so contrary to the evidence as to amount to a miscarriage of justice." *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996).

BMO Harris offers eight separate reasons why it believes a new trial is warranted. In addition, BMO Harris contends, as it did in its motion for judgment as a matter of law, that the jury's verdict is against the great weight of the evidence. BMO Harris does not present any new argument on this point, however. Having rejected the contention above, the Court addresses only the arguments that specifically pertain to the motion for a new trial.

### 1.   Actual knowledge

In the motion for judgment as a matter of law, BMO Harris argued that there was insufficient evidence of M&I's knowledge to support the Trustee's claim for aiding and abetting breach of fiduciary duty. In this motion, BMO Harris contends that the Court erred by failing to instruct the jury correctly on the knowledge requirement and by allowing the Trustee to argue about willful blindness in his summation.

When determining whether erroneous jury instructions warrant a new trial, the question is "whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Brown v. Sandals Resorts Int'l*, 284 F.3d 949, 953 (8th Cir. 2002). "[J]ury instructions do not need to be technically perfect or even a model of clarity." *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010) (quoting *Brown*, 284

F.3d at 953). "The test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Westborough Mall, Inc. v. City of Cape Girardeau, Mo.*, 794 F.2d 330, 335 (8th Cir. 1986) (quotation omitted). Even if an instruction is erroneous, a new trial is required "only where the error affects the substantial rights of the parties." *Brown*, 284 F.3d at 953.

BMO Harris challenges the instruction defining knowledge for purposes of aiding and abetting. Specifically, BMO Harris argues that the description of knowledge as "general awareness of breach of fiduciary duty" in that instruction was erroneous. (Dkt. 349 at Instr. 19.) Relying wholly on *Zayed*, BMO Harris asserts that the use of "general awareness" in this instruction conveyed to the jury that actual knowledge was not required.

But as discussed previously, *Zayed* does not stand for the proposition that direct evidence of knowledge is required. The Court's instruction that the jury could find that M&I aided and abetted a breach of fiduciary duty only if it found that "M&I knew that the conduct of Tom Petters, Deanna Coleman or Robert White constituted a breach of fiduciary duty to PCI," (Dkt. 349 at Instr. 18), is correct. And the statement explaining that "the stronger the evidence of a person's or entity's general awareness of breach of fiduciary duty, the less evidence of that person's or entity's substantial assistance is required," (Dkt. 349. at Instr. 19), similarly does not misstate the law. *See In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1495 (8th Cir. 1997) (finding that, for an aiding and abetting claim, "the stronger the evidence of [the defendant's] general awareness of the alleged tortious activity, the less evidence of [the defendant's] substantial

30

assistance is required, and the stronger the evidence of substantial assistance, the less evidence of general awareness is required.").  BMO Harris's motion for a new trial on this basis is denied.

BMO Harris also argues that the instructions erroneously failed to require the jury to find that any single M&I employee had knowledge of a breach of fiduciary duty, which ostensibly allowed the jury improperly to aggregate the knowledge of various M&I employees to determine that M&I had the requisite knowledge.  But Minnesota courts consistently describe the knowledge at issue in an aiding-and-abetting claim as the corporate entity's knowledge, not the knowledge of any single employee.  *See, e.g.*, *Park Midway Bank, N.A. v. R.O.A., Inc.*, No. A11-2092, 2012 WL 3263866, at *5 (Minn. Ct. App. Aug. 13, 2012) (noting that summary judgment on an aiding-and-abetting breach of fiduciary duty claim against a bank was appropriate when the plaintiffs "failed to point to specific facts in the record demonstrating that [the bank] had actual knowledge" of the breach); *Siler v. Principal Fin. Sec., Inc.*, No. C1-00-576, 2000 WL 1809048, at *6 (Minn. Ct. App. Dec. 12, 2000) (granting motion to dismiss aiding-and-abetting claim where the plaintiff did not allege that the financial organization, not any individual employee, "knew its actions were aiding and abetting [the] tort").

BMO Harris insists that *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390 (8th Cir. 2017), stands for the proposition that an aiding-and-abetting claim may not aggregate employees' knowledge.  *Aguilar* describes actual knowledge in the context of a breach of the Missouri Uniform Fiduciaries Law, noting that Missouri courts have found that such knowledge may not be established by merely "piecing together all the facts known by different employees

of the bank." *Id.* at 407.  But this single comment did not apply to *Aguilar*'s facts, which did not involve any such "piecing together."  In *Aguilar*, there was no evidence that any bank employee knew any facts that should have put them on notice of the breaches of fiduciary duties.  And in discussing the aiding-and-abetting knowledge requirement, the *Aguilar* court repeatedly referred to the bank's "actual knowledge" or the bank's "understanding" of the facts and did not mention the knowledge or understanding of any individual employee. *Id.  Aguilar* simply does not stand for the proposition for which BMO Harris cites it.

The Court did not err in declining to give BMO Harris's requested instruction on individual knowledge.  And even if BMO Harris is correct that a single employee must possess the requisite knowledge, there was sufficient evidence from which the jury could conclude that multiple M&I employees each possessed that knowledge.  Indeed, the adverse-inference instruction alone could have allowed the jury to conclude that M&I employees knew of the breaches.  Consequently, the alleged error did not affect BMO Harris's substantial rights and BMO Harris's motion on this basis is denied.

Finally, BMO Harris contends that it was erroneous to allow the Trustee to argue to the jury that it could find knowledge from M&I's willful blindness, and to allow the Trustee to argue a broader definition of willful blindness than the law supports.  BMO Harris contends that the Court's failure to give a willful-blindness instruction—an instruction to which BMO Harris objected—compounded the error by allowing the jury to be confused regarding the standards for willful blindness.

The Court instructed the jury that it must find that M&I bank "knew that the conduct of" Petters and his accomplices "constituted a fraud." (Dkt. 349 at Inst. 16.) "[T]he element of knowledge may be inferred from deliberate acts amounting to willful blindness to the existence of a fact or acts constituting conscious purpose to avoid enlightenment." *Mattingly v. United States*, 924 F.2d 785, 792 (8th Cir. 1991). As addressed with respect to BMO Harris's motion for judgment as a matter of law, although willful blindness is not a substitute for actual knowledge, willful blindness can allow the jury to infer from other evidence that the defendant had that knowledge. None of the statements the Trustee made in closing arguments misstated this point or could have confused the jury as to what the jury was required to find. BMO Harris's motion is therefore denied.

### 2.     Substantial assistance

BMO Harris next argues that the Court's instructions erroneously failed to require the jury to find an element of "blameworthiness" in conjunction with M&I's substantial assistance. The jury was instructed that, for purposes of the aiding-and-abetting claim, "[s]ubstantial assistance' is an affirmative step that is a substantial factor in bringing about an end result." (Dkt. 349 at Inst. 19.) According to BMO Harris, this instruction allowed the jury to conclude that M&I's provision of routine professional services to PCI could be substantial assistance, contravening *Zayed*, 913 F.3d at 720, and *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999) (noting that, in cases asserting aiding and abetting liability against professionals such as lawyers, "substantial assistance" means more than "the provision of routine professional services").

But the jury was also instructed that to determine that M&I provided substantial assistance, the jury must find that M&I knew that the conduct of Petters and the other fraudsters was wrongful.  Thus, absent some finding of blame, the jury could not have found for the Trustee on the aiding-and-abetting claim.  Moreover, to the extent that BMO Harris argues that the evidence established only the provision of "routine professional services," BMO Harris misstates the record.  The Trustee proffered evidence that M&I's assistance to PCI went beyond "routine professional services."  And the jury was entitled to infer that the documents BMO Harris destroyed would have provided additional evidentiary support for the substantial-assistance element.   BMO Harris's motion on this point is denied.

### 3.    Affirmative defenses

The arguments BMO Harris raises in this motion challenging the jury instructions on its affirmative defenses of consent and ratification and the statute of limitations are the same arguments the Court rejected in ruling on BMO Harris's motion for judgment as a matter of law on these affirmative defenses.  The Court will not repeat that analysis here. BMO Harris's contention that the jury instructions did not correctly reflect Minnesota law on these affirmative defenses also is rejected, and this aspect of the motion is denied.

### 4.    Investor-complicity evidence

Next, BMO Harris argues that it was erroneous to preclude BMO Harris from offering evidence that certain investors in PCI were complicit in the fraudulent activities. In the order on the parties' motions in limine, the Court observed that, had BMO Harris wished to challenge the amounts PCI owed to its creditors as fraudulently obtained through

those creditors' complicity, BMO Harris should have objected during the bankruptcy proceedings. (Dkt. 241 at 6.) The same holds true with BMO Harris's current challenge.

The contentions BMO Harris raises regarding the Trustee's supposed flouting of the Court's ruling on investor complicity—which prohibited evidence that investors were complicit or were innocent—also were raised in BMO Harris's mid-trial brief on the issue. The Court, having rejected those arguments, will not revisit that decision here. BMO Harris's motion on this basis is denied.

## 5.     Trustee's testimony

BMO Harris next contends that a new trial is warranted because the Trustee offered impermissible opinion testimony. In support of this contention, BMO Harris points to testimony in which the Trustee stated his opinion as to what he believed M&I should have done in the case. BMO Harris also relies on the fact that the parties discussed this issue at length during the trial, and although the Court initially proposed a curative instruction, after further argument the Court determined that no curative instruction was necessary.

BMO Harris likens these circumstances to those in *United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001). In *Peoples*, an investigating FBI agent testified repeatedly regarding what she believed certain recorded conversations were actually conveying. As but one of many examples, "[i]n response to conversations [among co-conspirators] that related to the burglary of [the victim's] house, [the agent] testified, 'I believe [the defendant] was there to actually murder [the victim] at the time.'" *Id.* at 640.

The Eighth Circuit reversed the defendant's conviction, noting that the Federal Rules of Evidence require that witnesses have personal knowledge of the matters testified

to.  *Id.* at 641 (citing Fed. R. Evid. 602).  And although law-enforcement officers often are qualified to give expert testimony regarding slang or other terms in recorded conversations that might be unfamiliar to the jury, the testimony of the agent strayed far beyond that permissible scope.  *Id.*

The Trustee's testimony here is not akin to the testimony found impermissible in *Peoples*.  The challenged testimony, even if improper, was three pages of a trial transcript that spanned more than 3,800 pages, and was not the repeated impermissible opinion testimony the *Peoples* court rejected.  And taken as a whole, the testimony was not improper.  BMO Harris has not established that a new trial is warranted on this ground.

### 6.    Proposed jury instructions

Parties may file requests for jury instructions after the close of evidence "on issues that could not reasonably have been anticipated by an earlier time that the court set for requests."  Fed. R. Civ. P. 51(a)(2)(A).  On June 6, 2022, the Court informed the parties that their proposed jury instructions were due 21 days before the pretrial hearing, which was held on October 12, 2022.  BMO Harris submitted proposed jury instructions in accordance with that order.  During the trial, BMO Harris requested to submit additional instructions, specifically on the issues of damages and spoliation.  The Court declined to allow BMO Harris to submit those additional instructions.

BMO Harris argues that the Court erred in failing to give six new jury instructions that BMO Harris proposed at the close of the case.  None of these instructions involved "issues that could not reasonably have been anticipated by" the date the Court set for the submission of jury instructions, however.  As the Trustee points out, at least one of the

proposed instructions—regarding the filing of Suspicious Activity Reports (SAR)—seems calculated to mislead the jury to believe that M&I in fact filed one or more SARs, when M&I did not do so.  Moreover, the contention that BMO Harris did not know before trial that M&I's compliance policies would be at issue is specious.

The Court did not err in declining to allow BMO Harris to offer new jury instructions months after the deadline to do so.  BMO Harris's motion on this point is denied.

### 7.    Evidence of FBI's investigation

BMO Harris contends that the Trustee's causation argument hinged on the Trustee's argument that, if M&I had notified the bank of the irregularities in PCI's banking transactions, the FBI would have investigated and shut down PCI much earlier.  But, BMO Harris argues, the FBI did investigate PCI in 2003 and did not shut down PCI.  Citing no legal authority for the proposition, BMO Harris asserts that it was prejudicial error to refuse BMO Harris's request to admit evidence regarding the FBI's investigation of PCI's M&I accounts in 2003.

BMO Harris is correct that evidence of a law-enforcement investigation is not always hearsay.  *United States v. Davis*, 154 F.3d 772, 778-79 (8th Cir. 1998).  But hearsay is not the only consideration the Court must evaluate in determining the admissibility of evidence.  Rule 403 requires the Court to determine whether the prejudicial effect of evidence outweighs its probative value, and to decide whether certain evidence should not be presented to the jury because of the risk that the admission of such evidence would confuse the issues or waste the jury's time.  Fed. R. Evid. 403.  Here, admission of evidence

of previous FBI investigations posed the risk that the case would devolve into a mini-trial on this collateral issue. *See White v. McKinley*, 605 F.3d 525, 537 (8th Cir. 2010) (affirming trial court's exclusion of evidence regarding an investigation when "admittance of the evidence would have created a mini-trial" on an issue collateral to the proceedings). BMO Harris is not entitled to a new trial on this ground.

### 8. Other errors

Finally, BMO Harris contends that the cumulative effect of other errors means that the jury's verdict was a result of improper prejudice against BMO Harris. BMO Harris points to a single comment in the Trustee's opening statement, two allegedly prejudicial statements during voir dire, and two statements in the Trustee's summation that were ostensibly a "flagrant appeal to prejudice against banks." Relying on *Morrissey v. Welsh Company*, 821 F.2d 1294, 1304 (8th Cir. 1987), BMO Harris contends that these five statements, and the Court's refusal to bifurcate the punitive-damages portion of the trial,[6] combined to prejudice the jury against big banks with out-of-state counsel.

*Morrissey* was a wrongful-death action involving the death of a 22-year-old woman. In his opening statement and closing argument, the attorney for the young woman's parents repeatedly made statements that "were plainly unwarranted." *Id.* at 1303. Indeed, the attorney "made numerous appeals for sympathy" in both his opening and closing,

---

[6] The Court will not revisit its ruling that bifurcation of this already-lengthy trial would be "unduly burdensome and time consuming" for all involved and would not unduly prejudice BMO Harris. (Dkt. 214 at 57-58 (quoting *Kociemba v. G.D. Searle & Co.*, 683 F. Supp. 1577, 1579 (D. Minn. 1988)).

repeatedly injecting "improper and prejudicial argument" into his comments to the jury, to which the trial court sustained multiple objections. *Id.* at 1304.

The Trustee's comments at issue here are far from those found improper in *Morrissey*. And even if any of the challenged comments could be viewed as improper, the five statements to which BMO Harris points, in the context of a month-long trial, simply are not the type of "plainly unwarranted and clearly injurious" statements that necessitate a new trial. *Id.* at 1303. BMO Harris's motion for a new trial on this basis is denied.

### B.    Remittitur

Whether to grant a remittitur of damages is a matter committed to the sound discretion of the district court. *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1210 (8th Cir. 1999). "Federal law governs whether remittitur is appropriate, but we 'refer to the law of the forum state when determining the inadequacy or excessiveness of a jury verdict.'" *Tedder v. Am. Railcar Indus., Inc.*, 739 F.3d 1104, 1111 (8th Cir. 2014) (citation omitted) (quoting *Vanskike v. Union Pac. R. Co.,* 725 F.2d 1146, 1150 (8th Cir. 1984)). Minnesota law provides for a remittitur "when excessive damages appear to have been given under the influence of prejudice or passion." *Genzel v. Halvorson*, 80 N.W.2d 854, 856 (Minn. 1957). BMO Harris seeks a conditional remittitur in the alternative to a new trial. Having determined that a new trial is not warranted, the Court will assess whether BMO Harris is entitled to a remittitur of the amount of compensatory or punitive damages the jury awarded.

### 1.    Compensatory damages

BMO Harris asks the Court to reduce the compensatory-damage award to "no more than $78.1 million."  (Dkt. 404 at 5.)  According to BMO Harris, $78.1 million is the "maximum possible amount to which [the Trustee] could possibly be entitled."  *Id.*

BMO Harris's argument regarding compensatory damages is, yet again, another challenge to the Court's determination of the proper measure of damages.  As addressed previously, the Court has repeatedly found that the proper measure of damages is the amount PCI was unable to pay its creditors that was proximately caused by M&I's actions.  BMO Harris again argues that the proper measure of damages is the amount PCI's insiders were paid from PCI's accounts.  Having rejected this theory repeatedly, the Court declines to address it again here.

Nor is BMO Harris correct that the only fiduciary duty at issue was a duty not to self-deal.  The fiduciary duties Petters, Coleman, and White owed to PCI did not disappear when PCI became insolvent, and were not replaced by only the duty not to engage in self-dealing.

Finally, the jury's damages award is not untethered to the evidence presented.  BMO Harris may prefer that the jury believed BMO Harris's expert witness as to the appropriate measure of damages, but the decision whether to do so was solely the jury's province.  The Trustee claimed more than one billion dollars in damages.  The jury's award, which is approximately 25 percent of that amount, represents what the jury viewed as the appropriate damages for one of the Trustee's four claims.  As long as there is proof presented to the jury of "a reasonable basis upon which to approximate the amount" of damages, the damage award is left to the jury to determine.  *Children's Broad. Corp.*

*v. Walt Disney Co.*, 245 F.3d 1008, 1016 (8th Cir. 2001) (quoting *Leoni v. Bemis Co.,* 255 N.W.2d 824, 826 (Minn. 1977)).  There was sufficient evidence from which the jury could have determined its compensatory-damages award.  BMO Harris's motion for a remittitur of that award, therefore, is denied.

### 2.   Punitive damages

Under Minnesota law, when determining whether punitive damages are appropriate, a jury must "consider the gravity of the wrong and the need to deter the harmful conduct." *Bradley v. Hubbard Broad., Inc.*, 471 N.W.2d 670, 678 (Minn. Ct. App. 1991).  The jury was instructed that punitive damages were warranted only if the evidence "convince[s] you that BMO acted with deliberate disregard for the rights of others. You must have a firm belief, or be convinced there is a high probability, that BMO acted this way."  (Dkt. 349 at Instr. 25.)  Further, the Court instructed the jury regarding the standards for imposing punitive damages on a principal for its agent's actions and on the factors "which justly bear upon the purpose of punitive damages" under Minnesota law.  Minn. Stat. § 549.20, subd. 3.  Whether punitive damages are warranted in any particular case "is within the discretion of the jury," and  "[t]he weight and force to be given evidence relating to punitive damages is exclusively a jury question."  *Wilson v. City of Eagan*, 297 N.W.2d 146, 150 (Minn. 1980).

BMO Harris's first contention that the punitive-damages award is supported by "no evidence" is incorrect.  The adverse-inference sanction alone could support a determination that BMO Harris acted with the requisite deliberate disregard to support an award of punitive damages.  BMO Harris claims that the evidence established that M&I had policies

in place to deter and detect Ponzi schemes.  But the evidence also demonstrated that M&I's employees did not comply with those policies.  That evidence, together with the adverse-inference instruction, could lead a reasonable jury to impose punitive damages.

BMO Harris also asserts that the amount of the punitive-damages award is excessive. According to BMO Harris, the evidence established that M&I's profits from PCI were only $1.4 million, making a punitive-damage award of nearly $80 million "wildly out of step." (Dkt. 404 at 12.)  The jury was entitled to consider both BMO Harris's alleged profit and its financial condition when fashioning the jury's punitive-damages award, and a reasonable jury could have determined that an award of nearly $80 million was appropriate in light of the evidence presented on the relevant factors.

The final argument advanced by BMO Harris is that the punitive damages awarded violate BMO Harris's due-process rights because the award is "grossly excessive or arbitrary."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  When

> evaluating a punitive damages award's consistency with due process [the Court] consider[s] three criteria: (1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 440 (2001).  BMO Harris argues that its conduct was not reprehensible and that, if the Court reduces the compensatory damages award to the amount BMO Harris seeks, the punitive damages are clearly excessive.

The Court has declined to reduce the compensatory damages, however.   BMO Harris's argument that the punitive damages are excessive when compared to a reduced compensatory-damages award fails.   The punitive damages the jury awarded are not excessive in light of the compensatory-damages award.   One "indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559 580 (1996).   The jury awarded $79,533,392 in punitive damages, or slightly more than 16 percent of the compensatory-damages award of $484,209,716, which is a ratio of six to one.

Although "the constitutional line is [not] marked by a simple mathematical formula," *id.* at 582, when evaluating the propriety of punitive damages, a ratio provides a useful shorthand.   But the ratios found to be excessive involve punitive-damages awards that are far above the amount of compensatory damages.   *E.g.*, *Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 825-26 (8th Cir. 2004) (finding $18 million punitive-damages award violated due process when compensatory damages were $3.5 million and remitting punitive-damages award to $7 million).   No decision has determined that a negative ratio, where the punitive damages are a fraction of the compensatory-damages award, is excessive.   Indeed, even if the Court had reduced the compensatory damages as BMO Harris requested, a ratio of approximately one to one would not violate due process. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("Single-digit multipliers are more likely to comport with due process . . . than awards with ratios in range of 500 to 1.").

Nor is BMO Harris correct that the evidence could not support a jury determination that BMO Harris's conduct was sufficiently egregious to warrant a punitive-judgment sanction. The jury was instructed regarding the standards to use to determine whether punitive damages were appropriate, and the Court must assume that the jury followed those instructions. *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) (noting "the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions"). There was sufficient evidence presented from which the jury could have found that punitive damages were appropriate here. And even if BMO Harris were correct that the evidence of reprehensible conduct was lacking, the adverse-inference instruction permitted the jury to infer that the destroyed documents would contain evidence of that conduct. BMO Harris's challenge to the punitive-damages award fails.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT**

**IS HEREBY ORDERED**:

1. Plaintiff's motion for pre- and post-judgment interest, (Dkt. 382), is

**GRANTED** as addressed herein.

2. Plaintiff's motion for judgment as a matter of law, (Dkt. 388), is **DENIED**.

3. Defendant's motion for judgment as a matter of law, (Dkt. 397), is **DENIED**.

4. Defendant's motion for a new trial or conditional remittitur, (Dkt. 402), is

**DENIED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 23, 2023                           s/Wilhelmina M. Wright
                                                          Wilhelmina M. Wright
                                                          United States District Judge